1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

SAN JOSE DIVISION

11

12  MONIQUE RAQUEDAN, et al.,

13            Plaintiffs,

14        v.

15  VOLUME SERVICES, INC., et al.,

16            Defendants.

17

Case No. 18-CV-01139-LHK

**ORDER DENYING MOTION TO DISMISS**

Re: Dkt. No. 9

18        Plaintiffs Monique Raquedan and Ronald Martinez ("Plaintiffs") bring the instant putative

19  class action against Defendant Volume Services, Inc., d/b/a Centerplate ("Defendant") for causes

20  of action arising out of Defendant's alleged practice of acquiring credit and background reports on

21  prospective, current, and former employees without providing proper disclosures.  Before the

22  Court is Defendant's motion to dismiss Plaintiffs' complaint.  Having considered the submissions

23  of the parties, the relevant law, and the record in this case, the Court DENIES Defendant's motion

24  to dismiss.

25  **I.      BACKGROUND**

26      **A.  Prior Class Action Settlement in _Thompson_**

27        Because Defendant's motion to dismiss depends in large part on the preclusive effect of a

28

prior class action settlement on the instant action, the Court first provides the relevant details of that prior class action settlement. In February 2016, Gabriel Thompson brought a putative class action against Defendant and five of Defendant's corporate officers ("*Thompson*") in Santa Clara County Superior Court. *See* Thompson ECF No. 1-6.[1] The complaint in *Thompson* alleged that Mr. Thompson "was an employee of [Defendant] who worked during the course of the 49ers['] 2015–2016 season and Super Bowl 50 at Levi's Stadium," and that Mr. Thompson "ha[d] performed work for [Defendant] without receiving any compensation throughout the 49er's 2015– 2016 season but particularly during Super Bowl 50." *Id.* ¶¶ 7, 10. The *Thompson* complaint further alleged that Mr. Thompson "worked hours beyond eight (8) in a single work day that have not been compensated at the appropriate overtime rate," *id.* ¶ 13, and relatedly, that Defendant "fail[ed] to pay for . . . travel time and associated waiting time" and "for all hours [Mr. Thompson] was on the clock." *Id.* ¶ 42. Finally, the complaint asserted that while Mr. Thompson was employed by Defendant during the 2015–2016 NFL season, Defendant "neither authorized nor permitted [Mr. Thompson] to take rest breaks" because although Defendant had established "a meal period policy [that gave] relief for meal periods," Defendant had "failed to establish a rest break policy and [had] failed to establish any staffing plan which would allow employees to be relieved from their serving duties." *Id.* ¶¶ 58–59. Based on this alleged misconduct by Defendant, Mr. Thompson brought the following five class claims: (1) "failure to pay for each hour worked at the appropriate rate" in violation of various provisions of the California Labor Code, *id.* at 8; (2) "failure to authorize and permit rest breaks" in violation of California Labor Code § 226.7, *id.* at 10; (3) "failure to provide accurate itemized wage statements" in violation of California Labor Code § 226, *id.* at 11; (4) "failure to provide all wages due at separation" in violation of California Labor Code §§ 201–03, *id.* at 12; and (5) unfair competition in violation of the UCL. *Id.* at 14. Mr. Thompson sought to assert these class claims on behalf of a class composed of "[a]ll employees and former employees of Defendant who worked at Levi's Stadium during the 2015–

---

[1] "Thompson ECF No." denotes docket entries in Case No. 16-CV-1486-EJD, *Thompson v. Centerplate of Delaware, Inc. et al.*

2

2016 season." *Id.* at 5; *see also id.* at 6 (stating in support of numerosity that "[w]hile the precise number of class members has not been determined at this time, [Mr. Thompson] is informed and believes that Defendant employed approximately 3000 people during the course of the 2015–2016 NFL season").

In March 2016, Defendant removed the *Thompson* action from state court to federal court. *See* Thompson ECF No. 1. After both Defendant and Mr. Thompson declined magistrate judge jurisdiction on April 11, 2016, *see* Thompson ECF Nos. 8–9, *Thompson* was reassigned to United States District Judge Edward J. Davila on April 12, 2016. Thompson ECF No. 11.

On May 13, 2016, the *Thompson* parties filed a notice of settlement stating that "the Parties have reached a settlement in the above-captioned matter." Thompson ECF No. 13. Then, on September 1, 2016, the *Thompson* parties filed a joint motion for preliminary approval of class action settlement. Thompson ECF No. 20. In their joint motion for preliminary approval, the *Thompson* parties represented to Judge Davila that their settlement involved a settlement class composed of "all of Defendant's non-exempt workers that worked at the 2016 Super Bowl in Santa Clara, California," and that the settlement would pay each of those workers "5 hours of overtime pay." *Id.* at 1; *see also id.* at 3 ("The Settlement covers approximately 927 current and former non-exempt employees who worked during the 2016 Super Bowl.").

The *Thompson* parties also submitted their settlement agreement as an attachment to their joint preliminary approval motion. Thompson ECF No. 20-2. This settlement agreement contained, among other things, a "Release of Claims" provision. *See id.* at 3–4. This release stated, in relevant part, that all *Thompson* settlement class members would release "all claims, demands, rights, liabilities and causes of action that were or could have been asserted . . . based on any facts, transactions, events, policies, occurrences, acts, disclosures, statements, omissions, or failures to act pled or arising out of or reasonably related to the transactions and occurrences pled in the [*Thompson*] Complaint." *Id.*

On November 9, 2016, Judge Davila granted preliminary approval of the *Thompson* class action settlement. Thompson ECF No. 23. Thereafter, notice of the settlement was sent to all of

Defendant's employees who worked at Levi's Stadium during the 2016 Super Bowl. *See* Thompson ECF No. 20-5 (*Thompson* notice, stating that "[t]his law suit involves a Class defined as 'all of [Defendant's] non-exempt workers in California that worked at the 2016 Super Bowl in Santa Clara, California'" and that "[y]ou are receiving this Notice because you are one of the Class Members").

On February 17, 2017, the *Thompson* parties filed a joint motion for final approval of the class settlement. Thompson ECF No. 23. Like in their joint motion for preliminary approval, the *Thompson* parties represented to Judge Davila in their joint motion for final approval that their settlement involved a settlement class composed of "all of Defendant's non-exempt workers that worked at the 2016 Super Bowl in Santa Clara, California," and that the settlement would pay each of those workers "5 hours of overtime pay." *Id.* at 1.

On March 30, 2017, Judge Davila granted final approval of the *Thompson* class action settlement. Thompson ECF No. 25. In his final approval order, Judge Davila noted that "[Mr. Thompson] brought several wage-and-hour claims on behalf of food-service employees who worked during the 2016 Super Bowl," and that as a result of the *Thompson* settlement, each of these employees would receive "payment for five hours of work . . . at that employee's hourly overtime rate." *Id.* 1–2.

**B. The Instant Action**

Plaintiffs filed the instant putative class action on February 22, 2018. ECF No. 1 ("Compl."). In their complaint, Plaintiffs Raquedan and Martinez allege that they were "hired by Defendant[]" "on or about August 2014" and "July 24, 2014," respectively, as "hourly, non-exempt employee[s]" to work "at an entertainment venue in California." *Id.* ¶¶ 24–25. Plaintiffs further allege that when Plaintiffs applied for employment with Defendant, Defendant "performed [] background investigation[s] on Plaintiffs." *Id.* ¶ 26. Specifically, as relevant to the instant case, Plaintiffs allege, "upon information and belief, that in evaluating [Plaintiffs] for employment, Defendant[] procured or caused to be procured credit and background reports" in the form of "consumer report[s] and/or investigative consumer report[s]" as defined by 15 U.S.C. §§

1681a(d)(1)(B) & 1681a(e). *Id.* ¶ 36. However, Plaintiffs assert that Defendant failed to "provide legally compliant disclosure" forms before procuring those reports. *Id.* ¶ 27.

Plaintiffs allege that Defendant's disclosure forms failed to comply with the law in a number of ways. First, Plaintiffs allege that the disclosure forms were "embedded with extraneous information" and were not "clear and unambiguous." *Id.* ¶ 37. In particular, Plaintiffs assert that Defendant included in all of its disclosures "a liability release" that sought to "release[] all parties involved from any liability and responsibility for releasing information they have about the Plaintiffs to Defendant[]." *Id.* ¶ 44. Plaintiffs also allege that Defendant's improper inclusion of extraneous information in its disclosure forms was willful. *Id.* ¶ 43.

Second, Plaintiffs allege that Defendant's disclosure forms "fail[ed] to inform [Plaintiffs] of the right to have [Defendant] provide a complete and accurate disclosure of the nature and scope of the investigation requested" by Defendant. *Id.* ¶ 54.

Third, Plaintiffs allege that Defendant's disclosure forms failed to provide a legally compliant "summary of rights" because the disclosures did not notify Plaintiffs of (1) the right "to obtain a copy of a consumer report from each consumer reporting agency," *id.* ¶ 56; (2) "the frequency and circumstances under which a consumer is entitled to receive a consumer report without charge," *id.* ¶ 57; (3) the right "to dispute information in the file of a consumer," *id.* ¶ 58; (4) the right "to obtain a credit score from a consumer reporting from a consumer reporting agency and a description of how to obtain a credit score," *id.* ¶ 59; (5) "the method by which a consumer can contact, and obtain a consumer report from, a consumer reporting agency without charge," *id.* ¶ 60; or (6) "the method by which a consumer can contact, and obtain a consumer report from, a consumer reporting agency described in" 15 U.S.C. § 1681a(w). *Id.* ¶ 61.

Finally, Plaintiffs allege that Defendant's disclosures failed to "identify the specific basis under subdivision (a) of Section 1024.5 of the [California] Labor Code for use of the credit report," which "clearly violate[d] Section 1785.20.5(a) of the" Consumer Credit Reporting Agencies Act ("CCRAA"). *Id.* ¶ 85. Plaintiffs further allege that this omission was willful. *Id.* ¶ 87.

5

Based on these alleged violations, Plaintiffs assert five causes of action against Defendant, including: (1) "failure to provide proper disclosure in violation of the" Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681b(b)(2)(A), *id.* at 5–9; (2) "failure to give proper summary of rights in violation of the FCRA," 15 U.S.C. §§ 1681d(a)(1) & 1681g(c), *id.* at 9–12; (3) "failure to make proper disclosure in violation of" California's Investigative Consumer Reporting Agencies Act ("ICRAA"), Cal. Civ. Code § 1786 *et seq.*, *id.* at 12–15; (4) "failure to make proper disclosure in violation of the CCRAA," Cal. Civ. Code § 1785 *et seq.*, *id.* at 15–17; and (5) "unfair competition" in violation of California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq. Id.* at 17–19.

Plaintiffs seek to assert these causes of action on behalf of three proposed classes: (1) a "FCRA Class," which is comprised of "[a]ll of Defendant['s] current, former and prospective applicants for employment in the United States who applied for a job with Defendant[] at any time during the period for which a background check was performed beginning five years prior to the filing of this action and ending on the date that final judgment is entered in this action"; (2) an "ICRAA Class," which is comprised of "[a]ll of Defendant['s] current, former and prospective applicants for employment in California, at any time during the period beginning five years prior to the filing of this action and ending on the date that final judgment is entered in this action"; and (3) a "CCRAA Class," which is comprised of "[a]ll of Defendant['s] current, former and prospective applicants for employment in California, at any time during the period beginning seven years prior to the filing of this action and ending on the date that final judgment is entered in this action." *Id.* ¶ 16.

On March 20, 2018, Defendant filed the instant motion to dismiss Plaintiffs' complaint. ECF No. 9 ("Mot."). Plaintiffs filed an opposition on May 3, 2018, ECF No. 14 ("Opp."), and Defendant filed a reply on May 18, 2018. ECF No. 15 ("Reply").

## II. LEGAL STANDARD

### A. Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an

action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

Nonetheless, the Court is not required to "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 678. Furthermore, "'a plaintiff may plead [him]self out of court'" if he "plead[s] facts which establish that he cannot prevail on his . . . claim." *Weisbuch v. Cty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (quoting *Warzon v. Drew*, 60 F.3d 1234, 1239 (7th Cir. 1995)).

**B. Leave to Amend**

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely granted when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (ellipses omitted). However, a court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Case No. 18-CV-01139-LHK
ORDER DENYING MOTION TO DISMISS

## III. DISCUSSION

In its motion to dismiss, Defendant argues that Plaintiffs' complaint should be dismissed based on the following grounds: (1) Plaintiffs have failed to adequately plead any violations of law against Defendant, Mot. at 6–10; (2) Plaintiffs' claims "are barred by the doctrine of res judicata" based on the *Thompson* settlement, *id.* at 10–12; (3) Plaintiffs' claims "are barred by the release in *Thompson*," *id.* at 12–14; (4) because Plaintiffs' claims are barred, "Plaintiffs' claims are moot and this Court lacks subject matter jurisdiction," *id.* at 14; and (5) "Plaintiffs' failure to file a notice of pendency of other action or proceeding violates Local Rule 3-13." *Id.* at 15–16.

As an initial matter, the Court notes that Defendant's third argument—that Plaintiffs' claims are barred by the *Thompson* release—is duplicative of Defendant's second argument that Plaintiffs' claims are barred by res judicata. As the leading treatise on class actions explains, because "[t]he process by which a class action settlement is approved has the effect of turning the private settlement into a . . . judgment," the preclusive effect of a class action settlement "is always governed by the doctrine of preclusion and never by the settlement contract [and by extension, the release contained in the settlement contract] directly." William B. Rubenstein, 6 Newberg on Class Actions § 18:19 (5th ed.). In effect, this principle makes very little (if any) practical difference because "[t]he doctrine of claim preclusion in class actions" must still "take account of . . . settlement [contracts] approved as judgments." *Id.* But for purposes of analyzing the instant case, the principle that the preclusive effect of a class action settlement "is always governed by the doctrine of preclusion" renders Plaintiff's third argument—which is based exclusively on the settlement agreement in *Thompson*—superfluous. *Id.*

Accordingly, of Defendant's second and third arguments, the Court will address only Defendant's second argument, which is Defendant's res judicata argument. The Court will first address Defendant's res judicata argument. Then, the Court will discuss Defendant's jurisdictional argument. Next, the Court will address Defendant's argument that Plaintiffs have failed to adequately plead any causes of action against Defendant. Finally, the Court will address Defendant's argument regarding Plaintiffs' failure to file a notice of pendency of other action or

8

proceeding.

**A. Claim Preclusion**

Res judicata, or claim preclusion, applies when three requirements are satisfied: (1) the prior proceeding resulted in a final judgment on the merits; (2) the present action involves substantively the same claims or causes of action as the prior proceeding; and (3) the party to be precluded was a party or in privity with a party to the prior proceeding. *See Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 987 (9th Cir. 2005); *Boeken v. Philip Morris USA Inc.*, 48 Cal. 4th 788, 797 (2010). It is clear—and Plaintiffs do not dispute—that the prior proceeding on which Defendant's claim preclusion argument is based (*Thompson*) resulted in a final judgment on the merits in the form of a class action settlement that was approved by Judge Davila. Thompson ECF No. 25. Thus, the Court need only address the other two claim preclusion requirements. The Court first discusses whether Plaintiffs were parties to the *Thompson* settlement, and then discusses whether Plaintiffs' causes of action are substantively the same as those in *Thompson*.

**1. Same Parties**

Because Plaintiffs were not the class representatives in *Thompson*, Plaintiffs can be considered parties to the *Thompson* proceeding only if Plaintiffs were members of the *Thompson* settlement class. The parties appear to dispute what the settlement class in *Thompson* was. Defendant asserts that the settlement class in *Thompson* was comprised of "all [of Defendant's] employees who worked at Levi's Stadium for the period of February 16, 2012 through April 22, 2016." Mot. at 3. To support this assertion, Defendant points to a provision of the *Thompson* settlement agreement defining "Class Members" to include "any employee [of Defendant] that has a claim raised in the [*Thompson*] Complaint who worked during" February 16, 2012 through April 22, 2016. *Id.* (citing Thompson ECF No. 20-2 at 1). In contrast, Plaintiffs appear to argue that the *Thompson* settlement class was comprised only of the employees of Defendant who worked at Levi's Stadium during the 2016 Super Bowl. *See* Opp. at 1 ("Defendant Centerplate is trying to use a settlement which resolved a day's disputed wage and hour claims related to travel time for employees who worked at the 2016 Super Bowl to absolve itself for years of liability under the

Federal Fair Credit Reporting Act for background check related claims.").

The Court agrees with Plaintiffs. Although one portion of the *Thompson* settlement agreement appears to support Defendant's position, other portions support Plaintiffs' view. For example, the *Thompson* settlement agreement contains a provision defining the "Settlement Sum" as "the amount to be paid by Defendant, calculated by multiplying 5 hours of pay . . . for each employee of Defendant *that worked at the 2016 Super Bowl*." Thompson ECF No. 20-2 at 2 (emphasis added). Further, in jointly moving for both preliminary and final approval of the class settlement in *Thompson*, Defendant (along with the named plaintiff in *Thompson*) affirmatively represented to Judge Davila that the settlement class in *Thompson* was to be comprised of "all of Defendant's non-exempt workers in California that worked at the 2016 Super Bowl in Santa Clara, California." Thompson ECF No. 20 at 1; *accord* Thompson ECF No. 23 at 1; *see also* Thompson ECF No. 20 at 3 ("The Settlement covers approximately 927 current and former non-exempt employees [of Defendant] who worked during the 2016 Super Bowl."). In turn, Judge Davila stated in his order granting final approval of the *Thompson* settlement that "[Mr. Thompson] brought several wage-and-hour claims on behalf of food-service employees *who worked during the 2016 Super Bowl*," and that each of these specific employees—and only those employees— would receive "payment for five hours of work . . . at that employee's hourly overtime rate" under the *Thompson* settlement. Thompson ECF No. 25 at 1–2 (emphasis added). Finally, and most importantly, the *Thompson* notice was sent only to those employees of Defendant who worked at the 2016 Super Bowl. *See* Thompson ECF No. 20-5 (*Thompson* notice, stating that "[t]his law suit involves a Class defined as 'all of [Defendant's] non-exempt workers in California that worked at the 2016 Super Bowl in Santa Clara, California'" and that "[y]ou are receiving this Notice because you are one of the Class Members"). Thus, even if the *Thompson* settlement agreement defined the settlement class more broadly than just those employees of Defendant who worked at the 2016 Super Bowl, *Thompson* can only preclude claims asserted by the employees who worked at the 2016 Super Bowl because no other employees were sent notice of the settlement and given an opportunity to opt out or object. *See Brown v. Ticor Title Ins. Co.*, 982 F.2d 386, 390 (9th Cir.

10

1992) (stating that a "prior decision" can have "no preclusive effect" on a plaintiff in a later proceeding "if there was a denial of due process"); *Hanna v. Sanofi-Aventis U.S., LLC*, 2013 WL 1855748, *3 (W.D. Wash. Apr. 29, 2013) ("[F]or a class judgment to bind an absent class member, due process requires that the absent class members receive adequate notice." (citing *Richards v. Jefferson Cty.*, 517 U.S. 793, 799–802 (1996))).

As a result, Plaintiffs' causes of action in the instant action can be barred by res judicata based on the *Thompson* settlement only if Plaintiffs worked at the 2016 Super Bowl as employees of Defendant. In support of its assertion that Plaintiffs "were members of the *Thompson* class," Mot. at 3, Defendant states that both Plaintiffs "participated in the class recovery" in *Thompson*. *Id.* at 1. For their part, Plaintiffs do not dispute that they received notice of and payment from the *Thompson* settlement, nor do they contend that they did not work at the 2016 Super Bowl as employees of Defendant. Thus, Defendant has satisfied the "same party" component of its res judicata argument that Plaintiffs' claims should be dismissed as barred by the *Thompson* settlement.

### 2. Same Causes of Action

As discussed above, a prior proceeding can preclude causes of action brought in a later proceeding only if the causes of action in the later proceeding are substantively the same as those asserted in the prior proceeding. When the prior proceeding that is alleged to have preclusive effect is a class action settlement, this "same cause of action" inquiry looks first to the release contained in the prior proceeding's settlement agreement. Specifically, the preclusive effect of the prior class action settlement extends to all causes of action that were released by the prior proceeding's settlement agreement *so long as* those causes of action are "based on the identical factual predicate as that underlying the claims in the settled class action." *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) (internal quotation marks omitted); *see* 6 Newberg on Class Actions § 18:19 (5th ed.) ("For [class action] settlement judgments, courts . . . giv[e] preclusive effect to releases contained in settlements so long as the released conduct arises out of the 'identical factual predicate' as the claims at issue in the case." (citation omitted)). Thus, a release

11

in a prior proceeding's class action settlement agreement is invalid to the extent that it reaches beyond the "factual predicate" of the class claims asserted in the prior proceeding. *See Mata v. Manpower Inc.*, 2016 WL 948997, *7 (N.D. Cal. Mar. 14, 2016) ("Moreover, even if Manpower Inc. intended for the release to have a broader preclusive effect, such a release would have been invalid under Ninth Circuit law." (citing *Hesse*, 598 F.3d at 590)).

The *Thompson* settlement agreement released "all claims, demands, rights, liabilities and causes of action that were or could have been asserted . . . based on any facts, transactions, events, policies, occurrences, acts, disclosures, statements, omissions, or failures to act pled or arising out of or reasonably related to the transactions and occurrences pled in the [*Thompson*] Complaint." Thompson ECF No. 20-2 at 3–4. Even if the *Thompson* release attempts to reach claims not based on an identical factual predicate, Ninth Circuit law explicitly limits the release to claims based on the identical factual predicate. *Hesse*, 598 F.3d at 590.

Furthermore, contrary to Defendant's view, none of Plaintiffs' causes of actions are substantively the same as those asserted in *Thompson*. In other words, all of Plaintiffs' causes of action arise out of an entirely different factual predicate than the one underlying the claims in *Thompson*. In *Thompson*, the primary factual allegations in the complaint were that (1) the named plaintiff, Mr. Gabriel Thompson, "was an employee of [Defendant] who worked during the course of the 49ers['] 2015–2016 season and Super Bowl 50 at Levi's Stadium," Thompson ECF No. 1-6 ¶ 7; (2) Mr. Thompson "worked hours beyond eight (8) in a single work day that have not been compensated at the appropriate overtime rate," *id.* ¶ 13; (3) Defendant "fail[ed] to pay for . . . travel time and associated waiting time" and "for all hours [Mr. Thompson] was on the clock," which led Mr. Thompson to be under-compensated, or not compensated at all, for some of the hours that he worked for Defendant, *id.* ¶ 42; and (4) although Defendant had established "a meal period policy [that gave] relief for meal periods," Defendant had "failed to establish a rest break policy and [had] failed to establish any staffing plan which would allow employees to be relieved from their serving duties," and as a result Mr. Thompson was "neither authorized nor permitted to take rest breaks." *Id.* ¶¶ 58–59. Based on this alleged misconduct by Defendant, Mr. Thompson

12

brought the following five class claims: (1) "failure to pay for each hour worked at the appropriate rate" in violation of various provisions of the California Labor Code, *id.* at 8; (2) "failure to authorize and permit rest breaks" in violation of California Labor Code § 226.7, *id.* at 10; (3) "failure to provide accurate itemized wage statements" in violation of California Labor Code § 226, *id.* at 11; (4) "failure to provide all wages due at separation" in violation of California Labor Code §§ 201–03, *id.* at 12; and (5) unfair competition in violation of the UCL. *Id.* at 14.

In contrast, all of Plaintiffs' claims in the instant case are based on completely different alleged misconduct on the part of Defendant. Specifically, as discussed above, whereas the *Thompson* complaint alleged various wage and hour violations against Defendant, all of Plaintiffs' causes of action are based on Defendant's alleged failure to "provide legally compliant disclosure" forms before procuring "credit and background reports" on Defendant's prospective, current, and former employees. Compl. ¶¶ 27, 36. Plaintiffs allege that Defendant's disclosure forms were legally deficient in numerous ways, including (1) that the disclosures improperly included liability releases, *id.* ¶ 44; (2) that the disclosures unlawfully failed to inform the reader about his or her right to have Defendant provide a "complete and accurate disclosure of the nature and scope of the [background] investigation requested" by Defendant, *id.* ¶ 54; (3) that the disclosures failed to provide legally compliant summaries of rights, *id.* ¶¶ 56–61; and (4) that the disclosures failed to "identify the specific basis under subdivision (a) of Section 1024.5 of the [California] Labor Code for use of the credit report," which "clearly violate[d] Section 1785.20.5(a) of the" Consumer Credit Reporting Agencies Act ("CCRAA"). *Id.* ¶ 85.

Thus, by operation of the "*identical* factual predicate" rule, *Hesse*, 598 F.3d at 590 (emphasis added), none of Plaintiffs' causes of action are precluded by the *Thompson* settlement because none of Plaintiffs' causes of action are substantively the same as those asserted in *Thompson*. As a result, Defendant cannot prevail on its argument that Plaintiffs' claims "are barred by the doctrine of res judicata" based on the *Thompson* settlement. Mot. at 10–12.

### B. Lack of Subject Matter Jurisdiction

Defendant also argues that because "Plaintiffs' claims are barred by the [*Thompson*]

Case No. 18-CV-01139-LHK
ORDER DENYING MOTION TO DISMISS

judgment and the release, this Court lacks subject matter jurisdiction." Mot. at 14. Put another way, Defendant argues that because "all of the claims the Plaintiffs could bring against [Defendant] are covered and barred by the *Thompson* Judgment and Release, there is no live case or controversy and Plaintiffs have no standing to bring the claims alleged in the SAC." *Id.* Thus, Defendant's jurisdictional argument is premised on the notion that all of Plaintiffs' claims are "covered and barred by the *Thompson* Judgment and Release." *Id.* However, as the Court explained in detail above, *none* of Plaintiffs' causes of action in the instant case are barred by claim preclusion based on the settlement in *Thompson*. As a result, Defendant's jurisdictional argument necessarily fails.

## C. Insufficient Pleading

Defendant raises three arguments for why Plaintiffs have failed to adequately plead their causes of action against Defendant. First, Defendant argues that "Plaintiffs' complaint must be dismissed for failure to plead their dates of application or background check." Mot. at 6–7. Second, Defendant argues that Plaintiffs' first four causes of action should be dismissed because Plaintiffs only offer conclusory allegations to support those causes of action. Mot. at 8–9. Third, Defendant argues that Plaintiffs' first and third causes of action should be dismissed because the liability release that was allegedly included in Defendant's disclosure forms "did not constitute [unlawfully] extraneous information." *Id.* at 9–10. The Court addresses each of these arguments in turn.

### 1. Failure to Plead Dates

Defendant states that "while Plaintiffs Raquedan and Martinez claim [in their complaint] that they were hired in August 2014 and on July 24, 2014, respectively, they fail to assert [] the dates of their application[s] or background checks." Mot. at 7. According to Defendant, Plaintiffs' failure to plead the dates of their applications and background checks "makes it impossible for [Defendant] to determine whether [Plaintiffs] applied to [Defendant] or had a background check conducted on them during any period of time since the Judgment in *Thompson*," and therefore warrants dismissal of Plaintiffs' complaint. *Id.*

Defendant's argument assumes that Plaintiffs' claims are precluded by the settlement in *Thompson* to the extent that Plaintiffs' claims are based on alleged violations that occurred during the *Thompson* class period. In other words, Defendant assumes that Plaintiffs' claims can avoid being precluded by the *Thompson* settlement *only* if Plaintiffs either applied to Defendant or had their background checks conducted by Defendant *after* the *Thompson* judgment was entered. However, as explained in detail above, the *Thompson* settlement has no preclusive effect on Plaintiffs' claims in the instant case because none of Plaintiffs' claims are substantively the same as any of the causes of action that were asserted in *Thompson*. Consequently, Defendant's assumption about the timing of Plaintiffs' applications or background checks is incorrect. Because the *Thompson* settlement has no preclusive effect on any of Plaintiffs' causes of action, the timing of Plaintiffs' applications or background checks in relation to the *Thompson* judgment has absolutely no bearing on the viability of Plaintiffs' causes of action. As a result, Plaintiffs' "fail[ure] to assert [] the dates of their applications or alleged background checks" does not warrant dismissal of any of Plaintiffs' causes of action. Mot. at 7.

### 2. Conclusory Allegations

Defendant also asserts that Plaintiffs' first four causes of action should be dismissed because "Plaintiffs merely make conclusory allegations that [Defendant] violated each law, coupled with a recitation of the laws' requirements." Mot. at 8. For the reasons stated below, the Court disagrees with Defendant.

Plaintiffs' first and third causes of action assert violations of 15 U.S.C. § 1681b(b)(2)(A) and Cal. Civ. Code § 1786.16(a)(2), respectively. 15 U.S.C. § 1681b(b)(2) states that "a person may not procure a consumer report . . . for employment purposes with respect to any consumer" unless, in relevant part, "a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that *consists solely of the disclosure*, that a consumer report may be obtained for employment purposes." *Id.* § 1681b(b)(2)(A)(i) (emphasis added). Similarly, California Civil Code § 1786.16(a)(2) states that a person may not procure an investigative consumer report for

United States District Court
Northern District of California

employment purposes unless, in relevant part, "the person procuring or causing the report to be made provides a clear and conspicuous disclosure in writing to the consumer at any time before the report is procured or caused to be made in a document that *consists solely of the disclosure*, that . . . [a]n investigative consumer report may be obtained." *Id.* § 1786.16((a)(2)(B) (emphasis added). In their complaint, Plaintiffs allege "upon information and belief" that Defendant "procured or caused to be procured" consumer reports and investigative consumer reports in order to evaluate Plaintiffs (and other class members) for employment. Compl. ¶ 36. Further, Plaintiffs allege that the disclosure forms they received from Defendant before Defendant procured these reports were "embedded with extraneous information." *Id.* ¶ 37. Specifically, Plaintiffs allege that all of Defendant's disclosures included "a liability release" that sought to "release[] all parties involved from any liability and responsibility for releasing information they have about the Plaintiffs to Defendant[]." *Id.* ¶ 44. The Ninth Circuit has held that "including a liability waiver on the same document as [a] disclosure" violates 15 U.S.C. § 1681b(b)(2)(A)'s requirement that disclosures must be provided in documents "that consist[] solely of the disclosures." *Syed v. M-I, LLC*, 853 F.3d 492, 500 (9th Cir. 2017). Thus, accepting Plaintiffs' factual allegations as true—which the Court must do for purposes of ruling on a motion to dismiss, *see Manzarek*, 519 F.3d at 1031—Plaintiffs have adequately stated claims that Defendant violated 15 U.S.C. § 1681b(b)(2)(A) and California Civil Code § 1786.16(a)(2) by procuring consumer reports after providing disclosures that included liability releases.

Plaintiffs' second cause of action asserts that Defendant violated 15 U.S.C. §§ 1681d(a)(1). Section 1681d(a)(1) states that a person may not procure an investigative consumer report on any consumer unless the procuring person provides the consumer a disclosure that (1) informs the consumer of the consumer's "right to request" from the procuring person "a complete and accurate disclosure of the nature and scope of the investigation requested" by the procuring person; and (2) includes a "written summary of . . . rights" as set forth in 15 U.S.C. § 1681g(c). In turn, section 1681g(c) details a "summary of rights" that includes "description[s] of": (1) "the right of a consumer to obtain a copy of a consumer report . . . from each consumer reporting agency"; (2)

"the frequency and circumstances under which a consumer is entitled to receive a consumer report without charge under" 15 U.S.C. § 1681j; (3) "the right of a consumer to dispute information in the file of the consumer under" 15 U.S.C. § 1681i; (4) "the right of a consumer to obtain a credit score from a consumer reporting agency, and a description of how to obtain a credit score; (5) "the method by which a consumer can contact, and obtain a consumer report from, a consumer reporting agency without charge"; and (6) "the method by which a consumer can contact, and obtain a consumer report from, a consumer reporting agency described in" 15 U.S.C. § 1681a(w).

In the instant case, Plaintiffs allege that Defendant procured investigative consumer reports on Plaintiffs (and other class members) for employment purposes, but that Defendant's disclosure forms "fail[ed] to inform [Plaintiffs] of the right to have [Defendant] provide a complete and accurate disclosure of the nature and scope of the investigation requested" by Defendant. Compl. ¶ 54. Further, Plaintiffs specifically allege that Defendant's disclosures did not notify Plaintiffs of any of the six particular rights listed in 15 U.S.C. § 1681g(c). Thus, contrary to Defendant's view, the Court finds that Plaintiffs' allegations are sufficient to plausibly suggest that Defendant violated 15 U.S.C. §§ 1681d(a)(1) in numerous ways.

Finally, Plaintiff's fourth cause of action asserts a violation of California Civil Code § 1785.20.5(a). Section 1785.20.5(a) states that "[p]rior to requesting a consumer credit report for employment purposes, the user of the report shall provide written notice to the person involved." Importantly, section 1785.20.5(a) further states that this notice "shall inform the person that a report will be used, and shall identify the specific basis under subdivision (a) of Section 1024.5 of the Labor Code for use of the report." In turn, California Labor Code § 1024.5(a) forbids an employer or prospective employer from using a consumer credit report for employment purposes unless "the position of the person for whom the report is sought" falls within one of five specific categories. In support of their fourth cause of action, Plaintiffs allege that Defendant requested Plaintiffs' credit reports for employment purposes, but that Defendant's disclosures regarding its credit report requests did not "identify the specific basis under subdivision (a) of Section 1024.5 of the [California] Labor Code" for those credit report requests. Compl. ¶ 85. Once again, accepting

17

United States District Court
Northern District of California

Plaintiffs' factual allegations as true, the Court concludes that Plaintiffs have adequately pled a cause of action for violation of California Civil Code § 1785.20.5(a) based on Plaintiffs' allegation that Defendant's disclosures failed to identify any basis under California Labor Code § 1024.5(a) for Defendant's credit report requests.

Accordingly, the Court finds that Plaintiffs' factual allegations are sufficient to support Plaintiffs' first four causes of action at this stage of the proceedings.

### 3. Liability Release

As mentioned above, both 15 U.S.C. § 1681b(b)(2) and California Civil Code § 1786.16(a)(2) prohibit an employer from procuring consumer reports for employment purposes unless the employer provides a "clear and conspicuous disclosure" in a "document that *consists solely of the disclosure*" that a report may be obtained for employment purposes. 15 U.S.C. § 1681b(b)(2)(A)(i) (emphasis added); Cal. Civ. Code § 1786.16((a)(2)(B) (emphasis added). In its motion to dismiss Plaintiffs' complaint, Defendant argues that Plaintiffs' first and third causes of action—which are for violations of 15 U.S.C. § 1681b(b)(2) and California Civil Code § 1786.16(a)(2), respectively—should be dismissed because, as a matter of law, the liability release that was allegedly included in Defendant's disclosures did not violate the requirement in 15 U.S.C. § 1681b(b)(2)(a) and California Civil Code § 1786.16(a)(2) that disclosures must be contained in documents that "consist[] solely of the disclosure[s]." *See* Mot. at 9–10.

Unfortunately for Defendant, in *Syed v. M-I, LLC*, the Ninth Circuit considered and rejected the exact argument that Defendant advances here. Specifically, in *Syed*, the Ninth Circuit held that "a prospective employer violates Section 1681b(b)(2)(A) when it procures a job applicant's consumer report after including a liability waiver in the same document as the statutorily mandated disclosure." 853 F.3d at 496. The Ninth Circuit explained that the text of § 1681b(b)(2)(A)—and specifically the word "solely"—clearly and unambiguously forbade the defendant from including a liability waiver on the same document as its disclosure, and that as a result, § 1681b(b)(2)(A) neither implicitly nor explicitly authorized the inclusion of a liability waiver in a disclosure document. *Id.* at 500–02.

Case No. 18-CV-01139-LHK
ORDER DENYING MOTION TO DISMISS

Consequently, Defendant's argument regarding Plaintiffs' first cause of action under § 1681b(b)(2)(A) is squarely foreclosed by Ninth Circuit precedent.  Under *Syed*, a disclosure that includes a liability release—like the disclosure that Defendant allegedly provided to Plaintiffs in the instant case—clearly violates § 1681b(b)(2)(a)'s requirement that disclosures must be contained in documents that "consist[] solely of the disclosure[s]."  Further, although the Ninth Circuit did not address California Civil Code § 1786.16(a)(2) in *Syed*, that statute's text is materially indistinguishable from the text of 15 U.S.C. § 1681b(b)(2)(a); both statutes require each disclosure to be made "in a document that consists solely of the disclosure."  Moreover, Defendant does not argue, and provides no reason to believe, that California Civil Code § 1786.16(a)(2) should be construed differently from 15 U.S.C. § 1681b(b)(2)(a) despite their nearly identical text.  As a result, the Court concludes that Defendant's argument regarding Plaintiffs' third cause of action under California Civil Code § 1786.16(a)(2) is also unavailing.  In other words, the Court finds that Plaintiffs have adequately pled claims under both 15 U.S.C. § 1681b(b)(2)(a) and California Civil Code § 1786.16(a)(2) by alleging that (1) Defendant procured consumer reports regarding Plaintiffs; and (2) Defendant's disclosures included liability releases.

### D.  Failure to File a Notice of Pendency of Other Action or Proceeding

Finally, Defendant asserts that Plaintiffs violated Rule 3-13 of this District's Civil Local Rules by failing to file a notice of pendency of other action or proceeding.  Rule 3-13 requires a party to "promptly file . . . a Notice of Pendency of Other Action or Proceeding" "[w]henever [that] party knows or learns" that the instant action "involves all or a material part of the same subject matter and all or substantially all of the same parties as another action which is pending in any other federal or state court."  N.D. Cal. Civ. L.R. 3-13(a).  Defendant argues that upon filing the instant action, Plaintiffs knew that the instant action "involves all or a material part of the same subject matter and all or substantially all of the same parties as" another putative class action filed by Plaintiffs against Defendant that is also before this Court—*Raquedan v. Centerplate of Delaware Inc.*, Case No. 17-CV-03828-LHK (N.D. Cal.) ("*Raquedan I*").  Mot. at 15–16.  Thus, Defendant asserts that Plaintiffs violated Rule 3-13 by failing to file a notice disclosing the

19

existence of *Raquedan I.*

Defendant's argument is not well-taken. As an initial matter, the instant action does not "involve[] all or a material part of the same subject matter" as *Raquedan I.* N.D. Cal. Civ. L.R. 3-13(a). In *Raquedan I*, Plaintiffs asserted various wage and hour violations against Defendant based on Defendant's alleged "fail[ure] to (1) provide Plaintiffs with meal and rest periods; (2) pay premium wages for those missed meal and rest periods; (3) pay Plaintiffs for all hours worked; (4) reimburse Plaintiffs for business expenses; (5) pay Plaintiffs their accrued vacation; (6) provide Plaintiffs with sick days; and (7) pay Plaintiffs all of their final wages following separation of employment." *Raquedan v. Centerplate of Delaware Inc.*, 2018 WL 3368820, at *3 (N.D. Cal. July 10, 2018). In contrast, as the Court explained above, all of Plaintiffs' claims in the instant action are based on Defendant's alleged failure to "provide legally compliant disclosure" forms before procuring "credit and background reports" on Defendant's prospective, current, and former employees. Compl. ¶¶ 27, 36. Thus, because the instant action does not "involve[] all or a material part of the same subject matter" as *Raquedan I*, Plaintiffs were not required to file a notice of pendency of other action or proceeding under Rule 3-13.

Further, and perhaps more importantly, even assuming Plaintiffs were required to file a notice of pendency of other action or proceeding under a broader reading of Rule 3-13, Defendant offers no explanation for why Plaintiffs' failure to file such a notice warrants a dismissal of Plaintiffs' complaint. Instead, Defendant simply asserts that Plaintiffs violated Rule 3-13, without explaining why this alleged violation matters. Defendant does conclusorily argue that "Plaintiffs' failure [to file a notice of pendency of other action or proceeding] amounts to forum shopping and impermissibly seeks to avoid any adverse ruling it may receive in" *Raquedan I.* Mot. at 15. However, because the wage and hour claims in *Raquedan I* are substantively different from the background check and disclosure-related claims in the instant action, the merits rulings in *Raquedan I* are unlikely to have any bearing on the instant action. Thus, Plaintiffs had little incentive to try to "avoid" adverse merits rulings in *Raquedan I* by filing the instant action as a separate lawsuit and failing to file a notice disclosing *Raquedan I.* As a result, Defendant's forum-

shopping argument is unavailing, and thus Defendant has failed to establish why Plaintiffs'
alleged violation of Rule 3-13 warrants a dismissal of Plaintiffs' complaint.[2]

Accordingly, the Court concludes that Defendant's Rule 3-13 argument is without merit.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's motion to dismiss.

**IT IS SO ORDERED.**

Dated: August 8, 2018

_Lucy H. Koh_
LUCY H. KOH
United States District Judge

---

[2] Defendant also states that "[t]his Court had to transfer the [instant] action on its own motion."
Mot. at 15. Defendant's assertion is incorrect. The instant action was originally assigned to
Magistrate Judge Nathanael Cousins, ECF No. 3, but was automatically (and randomly)
reassigned to the undersigned judge upon Plaintiffs' declination of magistrate judge jurisdiction.
_See_ ECF Nos. 5–7.