1  (*Counsel of record on next page*)

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT

8                   NORTHERN DISTRICT OF CALIFORNIA

9

10  MONIQUE RAQUEDAN *et al.*,              No. 5:18-cv-01139-LHK

11          Plaintiffs,                     **<u>CLASS ACTION</u>**

12      v.                                  **NOTICE OF JOINT MOTION AND JOINT**
                                            **MOTION FOR PRELIMINARY APPROVAL**
13  VOLUME SERVICES, INC., *et al.*,        **OF CLASS ACTION SETTLEMENT,**
                                            **CONDITIONAL CERTIFICATION OF**
14          Defendants.                     **CLASS, APPROVAL OF CLASS NOTICE,**
                                            **AND SETTING OF FINAL APPROVAL**
15                                          **HEARING; MEMORANDUM IN SUPPORT**
                                            **OF MOTION**
16
                                            Date:        June 13, 2019
17                                          Time:        1:30 p.m.
                                            Courtroom:   8
18                                                       280 South First Street, 4th Floor
                                                         San Jose, CA 95113
19                                          Judge:       Hon. Lucy H. Koh

20

21

22

23

24

25

26

27

28

LEGAL_US_W # 97334884.1

1    SHAUN SETAREH (Cal. State Bar No. 204514)
     THOMAS SEGAL (Cal. State Bar No. 222791)
2    FARRAH GRANT (Cal. State Bar No. 293898)
     ASHLEY N. BATISTE (Cal. State Bar No. 317526)
3    SETAREH LAW GROUP
     315 S. Beverly Drive, Suite 315
4    Beverly Hills, California  90212
     Telephone:  (310) 888-7771
5    Facsimile:  (310) 888-0109
     shaun@setarehlaw.com
6    thomas@setarehlaw.com
     farrah@setarehlaw.com
7    ashley@setarehlaw.com

8    Attorneys for Plaintiffs Monique Raquedan and Ronald Martinez

9    JEFFREY D. WOHL (Cal. State Bar No. 096838)
     ZINA DELDAR (Cal. State Bar No. 282637)
10   JANA B. FITZGERALD (Cal. State Bar No. 314085)
     PAUL HASTINGS LLP
11   101 California Street, 48th Floor
     San Francisco, California  94111
12   Telephone:     (415) 856-7000
     Facsimile:     (415) 856-7100
13   jeffwohl@paulhastings.com
     zinadeldar@paulhastings.com
14   janafitzgerald@paulhastings.com

15   Attorneys for Defendants Volume Services, Inc., and
     Centerplate of Delaware, Inc.

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

*Page*

Table of Authorities .................................................................................................................. ii

NOTICE OF JOINT MOTION AND JOINT MOTION .......................................................... 1

MEMORANDUM IN SUPPORT OF JOINT MOTION ......................................................... 2

I.      INTRODUCTION/SUMMARY OF ARGUMENT ...................................................... 2

II.     BACKGROUND ........................................................................................................... 3

III.    SUMMARY OF APPLICABLE LAW ......................................................................... 4

IV.     THE SETTLEMENT ..................................................................................................... 4

        A.      The Settlement Class ......................................................................................... 4

        B.      Maximum Settlement Amount and Distributions. ............................................ 5

        C.      Scope of the Class Member Releases. ............................................................... 5

        D.      Notice Procedures. ............................................................................................ 6

V.      THE SETTLEMENT MEETS THE STANDARDS FOR PRELIMINARY APPROVAL ............ 7

        A.      The Settlement Was the Product of Informed, Non-Collusive Negotiations ..................... 8

        B.      The Settlement Has No "Obvious Deficiencies." .............................................. 8

        C.      The Settlement Falls Within the Range of Possible Approval. ......................... 9

                1.      Liability Is Contested, and the Settlement Provides Class Members Substantial Monetary Relief. ....................................... 9

                2.      The Class Release Is Appropriate Given Plaintiffs' Claims. ................ 11

                3.      Class Counsel's Fees Requested Are Consistent with Prevailing Market Rates ............................................................ 11

        D.      Conditional Certification of a Settlement Class Is Appropriate. ...................... 11

                1.      The Numerosity Requirement Is Met. ................................................ 12

                2.      For Purposes of Settlement Only, Centerplate Concedes That the Commonality and Typicality Requirements Are Met. ......................... 12

                3.      Adequacy of Representation. ............................................................... 13

                4.      Class Certification Is Proper Under Rule 23(b)(3). ............................. 13

        E.      The Notice Packet Is Fair and Adequate ........................................................ 13

        F.      Simpluris, Inc., Should Be Appointed the Settlement Administrator. .............. 14

        G.      Residual ........................................................................................................... 14

        H.      Proposed Schedule. ......................................................................................... 15

VI.     CONCLUSION ............................................................................................................ 15

# TABLE OF AUTHORITIES

*Page*

**Cases**

*Ellender v. Schweiker,*
  550 F. Supp. 1348 (S.D.N.Y. 1982).....................................................................................12

*McNeill v. New York City Housing Auth.,*
  719 F. Supp. 233 (S.D.N.Y. 1989).......................................................................................12

*Susquehanna Tp. v. H and M, Inc.,*
  98 F.R.D. 658 (M.D. Pa. 1983).............................................................................................12

*Churchill Village, LLC v. General Electric,*
  361 F.3d 566 (9th Cir. 2004)................................................................................................13

*Class Plaintiffs v. City of Seattle,*
  955 F.2d 1268 (9th Cir. 1992) ...............................................................................................7

*Cypress v. Newport News General and Nonsectarian Hosp. Ass'n,*
  375 F.2d 648 (4th Cir. 1967) ...............................................................................................12

*Fry v. Hayt, Hayt & Landau,*
  198 F.R.D. 461 (E.D. Pa. 2000)................................................................................11, 12, 13

*Gay v. Waiters' & Dairy Lunchmen's Union, Loc. No 30,*
  489 F. Supp. 282 (N.D. Cal. 1980), *aff'd,*
  694 F.2d 531 (9th Cir. 1982) ...............................................................................................12

*Gordon v. Forsyth Cty. Hosp. Auth., Inc.,*
  409 F. Supp. 708 (M.D.N.C. 1975), *aff'd in part, vacated in part,*
  544 F.2d 748 .........................................................................................................................12

*Hanlon v. Chrysler Corp.,*
  150 F.3d 1011 (9th Cir. 1998) .................................................................................7, 12, 13

*Lagos v. Leland Stanford Junior Univ.,*
  No. 15-cv-04524-KAW, 2017 WL 1113302 (N.D. Cal. Mar. 24, 2017) ...........................10

*Lapin v. Goldman Sachs & Co.,*
  254 F.R.D. 168 (S.D.N.Y. 2008) .........................................................................................12

*Mendoza v. Tucson Sch. Dist. No. 1.,*
  623 F.2d 1338 (9th Cir. 1980) .............................................................................................13

*North County Contractor's Assn., Inc. v. Touchstone Ins. Svcs.,*
  27 Cal. App.4th 1085 (1994) .................................................................................................8

*Pottinger v. City of Miami,*
  720 F. Supp. 955 (S.D. Fla. 1989), *remanded on other grounds,*
  40 F.3d 1155 .........................................................................................................................12

*Rohm v. Thumbtack, Inc.,*
  No. 16-cv-02008-HSG, 2017 WL 4642409 (N.D. Cal. Oct. 17, 2017)................................9

*Syed v. M-I, LLC,*
  853 F.3d 492 (9th Cir. 2017.) ................................................................................................4

*In re Tableware Antitrust Litig.,*
  484 F. Supp. 2d 1078 (N.D. Cal. 2007) ...............................................................................8, 9

LEGAL_US_W # 97334884.1

# TABLE OF AUTHORITIES
*(cont'd)*

*Page*

*In re Traffic Exec. Ass'n-Eastern Railroads,*
   627 F.2d 631 (2d Cir. 1980)..................................................................................................8

*In re Uber FCRA Litig.,*
   No. 14-cv-05200-EMC, 2017 WL 2806698 (N.D. Cal. June 29, 2017)..............................9

*Van Bronkhorst v. Safeco Corp.,*
   529 F.2d 943 (9th Cir. 1976) ................................................................................................7

**Statutes and Rules**

Cal. Bus. & Prof. Code § 17200 ...................................................................................................3

Fed. R. Civ. P.
   R. 23 ................................................................................................................................7, 11
   R. 23(a)........................................................................................................................12, 13
   R. 23(a)(2)..........................................................................................................................12
   R. 23(a)(3)..........................................................................................................................12
   R. 23(a)(4)..........................................................................................................................13
   R. 23(b)........................................................................................................................11, 13
   R. 23(b)(3)..........................................................................................................................13
   R. 23(c)(1)..........................................................................................................................11
   R. 23(c)(2)(B)...............................................................................................................13, 14
   R. 23(e) ...........................................................................................................................7, 13

15 U.S.C.
   § 1681b(b)........................................................................................................................3, 4
   § 1681b(b)(2)(A)(i).............................................................................................................4
   § 1681b(b)(2)(A)(ii)............................................................................................................4
   § 1681n(a)(1)(A)...........................................................................................................4, 10
   § 1681n(a)(2).......................................................................................................................4
   § 1681p..............................................................................................................................10

**Other Authorities**

*Manual for Complex Litigation, Third* (Fed. Judicial Center 1995) § 30.41 ...............................7

*Newberg on Class Actions* 4th (2002), § 11.41 ......................................................................7, 8

1

## NOTICE OF JOINT MOTION AND JOINT MOTION

2

To the Clerk of Court and all interested parties:

3      PLEASE TAKE NOTICE THAT on Thursday, June 13, 2019, at 1:30 p.m., or as soon thereafter

4 as counsel may be heard, in Courtroom 8 of this Court, located at 280 South First Street, 4th Floor, San

5 Jose, CA 95113, before the Honorable Lucy H. Koh, plaintiffs Monique Raquedan and Ronald Martinez

6 and defendants Volume Services, Inc., and Centerplate of Delaware, Inc., hereby jointly do and will

7 move the Court to (1) conditionally certify a settlement class; (2) preliminarily approve the parties'

8 proposed class action settlement (the "Settlement"); (3) appoint plaintiffs Monique Raquedan and

9 Ronald Martinez as the Class Representatives, their counsel as class counsel, and Simpluris, Inc., as the

10 settlement administrator; (4) approve the forms of notice to the class of the settlement and Election Not

11 to Participate in the Settlement; and (5) schedule a hearing on the final approval of the Settlement for

12 November 14, 2019, or as soon thereafter as the Court is available.

13      The parties make this motion on the grounds that the Settlement is fair, adequate and reasonable

14 and within the range of possible final approval.

15      This motion is based upon this Notice of Joint Motion and Joint Motion for Preliminary

16 Approval of Class Action Settlement, Conditional Certification of Class, Approval of Class Notice, and

17 Setting of Final Approval Hearing and the following Memorandum in Support of Joint Motion for

18 Preliminary Approval of Class Action Settlement, Conditional Certification of Class, Approval of Class

19 Notice, and Setting of Final Approval Hearing; the accompanying Declaration of Shaun Setareh in

20 Support of Joint Motion for Preliminary Approval of Class Action Settlement, Conditional Certification

21 of Class, Approval of Class Notice, and Setting of Final Approval Hearing; Declaration of Jeffrey D.

22 Wohl in Support of Joint Motion for Preliminary Approval of Class Action Settlement, Conditional

23 Certification of Class, Approval of Class Notice, and Setting of Final Approval Hearing, and proposed

24 form of Order:   (1) Preliminarily Approving Proposed Settlement; (2) Conditionally Certifying

25 Settlement Class; (3) Appointing Class Representative, Class Counsel, and Settlement Administrator;

26 (4) Approving Forms of Notice to Class of Settlement, Class Member Claim Form; and (5) Setting

27 Hearing for Final Approval; the Court's record of this action; all matters of which the Court may take

28 notice; and such oral or documentary evidence presented at the hearing on the motion.

**MEMORANDUM IN SUPPORT OF JOINT MOTION**

## I.   INTRODUCTION/SUMMARY OF ARGUMENT

This joint motion seeks preliminary approval of the class settlement of this Fair Credit Reporting Act ("FCRA") and related state-law class action between plaintiffs Monique Raquedan and Ronald Martinez, on behalf of themselves and an estimated 1,901 Class Members, and defendants Volume Services, Inc., and Centerplate of Delaware, Inc. ("Centerplate").[1]

The settlement provides for an "all-in" non-reversionary settlement of $450,000. Class members will not have to make claims. Instead, a check will be mailed directly to them. For any uncashed checks, the money will be sent to the State of California's Unclaimed Property Fund to be held for the Class Member. No money will revert to Centerplate.

Plaintiffs allege that they and the Class Members were subject to a background check, including a consumer report, in connection with their application for a job, promotion or job change with Centerplate that was conducted in violation of applicable law. Centerplate denies plaintiffs' allegations in their entirety, denies any liability, and further denies that, for any purpose other than settling, the action is appropriate for class treatment.

As the result of arm's length negotiations under the supervision of an experienced, highly regarded mediator, the parties have reached a fair and reasonable class settlement of plaintiffs' claims, and they now jointly move the Court for preliminary approval of their Settlement Agreement (the "Settlement").[2] Pursuant to the Settlement, the parties now request that the Court enter an order preliminarily approving the Settlement; certifying a class for purposes of the Settlement only; appointing plaintiffs as Class Representative, Setareh Law Group as class counsel and Simpluris, Inc. as the settlement administrator; approving and directing the mailing of the Class Notice and related materials,;

---

[1] At the same time as this joint motion is filed, the parties also are filing a joint motion for preliminary approval of their class action settlement in *Raquedan et al. v. Centerplate of Delaware, Inc., et al.*, U.S.D.C., N.D. Cal., No. 17-cv-03828-LHK, which was the result of the same mediation that produced the settlement here. That case concerns wage-and-hour claims. Although there is some overlap in the putative classes between the two cases, the overlap is not enough to make a single settlement agreement more efficient. The parties therefore have entered into two settlement agreements for the two cases and are filing two motions for preliminary approval.

[2] The Settlement is attached as Exhibit 1 to the concurrently filed Declaration of Shaun Setareh in Support of Joint Motion for Preliminary Approval of Class Action Settlement ("Setareh Decl.")

1   and scheduling a final approval hearing on November 14, 2019, or such later date that is available to the

2   Court.[3]

3   ## II.    BACKGROUND

4       At the times relevant to the action, Centerplate provided concession services at sports stadiums

5   and other venues across the nation, including 11 locations in California, such as AT&T Park in San

6   Francisco, Levi's Stadium in Santa Clara and Qualcomm Stadium in San Diego.

7       Plaintiffs brought this class action on behalf of all employees and applicants in the United States

8   who applied for a job, promotion or job change with Centerplate for which a background check,

9   including a consumer report, that was conducted during the applicable limitations period.  Their

10  allegations primarily concern the notice, disclosure or consent form that is included as part of the

11  background checks.  Plaintiffs allege that Centerplate failed to comply with the applicable law, including

12  the FCRA as well as its California counterparts, the California Investigative Consumer Reporting

13  Agencies Act and the California Consumer Credit Reporting Agencies Act, and California Business and

14  Professions Code section 17200 *et seq.*

15      Centerplate denies plaintiffs' allegations.  Among other things, Centerplate contends that any

16  background check that Centerplate conducted on any employee or applicant was done in compliance

17  with applicable law; and that a prior class settlement and release, in *Gabriel Thompson v. Centerplate of

18  Delaware, Inc.*, U.S.D.C., N.D. Cal., No. 5:16-cv-01486-EJD, bars a substantial part of plaintiffs'

19  claims.  Centerplate further denies that, for any purpose other than settling the action, plaintiffs' claims

20  are not appropriate for class treatment.

21      In the course of the litigation, the parties exchanged substantial information, including

22  Centerplate's background check policies and other authorization forms related to employment with

23  Centerplate.  (Setareh Decl., ¶¶ 6-9.)

24      In a wage-and-hour class action involving the same parties, *Raquedan, et. al. v. Centerplate of

25  Delaware, Inc., et al.*, U.S.D.C., N.D. Cal., No. 17-cv-03828-LHK, the Court ordered the parties to

26  mediation.  (ECF 31.)  The parties then agreed, during a meet-and-confer, to mediate this action at the

27

---

28  [3]     A proposed calendar of events associated with approval of the Settlement, assuming preliminary approval is granted at the hearing on the motion, appears on page 15, *infra*.

same time.  Despite a full day of mediation, at which the parties engaged in good-faith, arms' length bargaining, and realistically assessed the strengths and weakness of their positions, the case initially did not settle.   Mediator Piazza persisted, however, and after further discussions with both sides he eventually made a mediator's proposal, which the parties accepted.  (*Id.*, ¶¶ 10, 11.)

## III.   SUMMARY OF APPLICABLE LAW

### A.   The FCRA.

The FCRA, 15 U.S.C. § 1681b(b), provides requirements for employer documents and mandates specified policies and practices when they use "consumer reports" to assess the qualifications of prospective and current employees.   Pursuant to section 1681b(b) of the FCRA, no person may obtain a consumer report for employment purposes without providing a "clear and conspicuous disclosure ... in a document that consists solely of the disclosure."  15 U.S.C. § 1681b(b)(2)(A)(i).   The person obtaining the consumer report must also obtain the consumer's written authorization, which can be done as part of the disclosure form. 15 U.S.C. § 1681b(b)(2)(A)(ii).

The Ninth Circuit has held that the required disclosure must be in "a document that consists solely of the disclosure."  *Syed v. M-I, LLC*, 853 F.3d 492 (9th Cir. 2017.)  In *Syed*, the FCRA disclosure at issue contained a term purporting to waive any liability of the employer related to the background check.  (*Id.* at 498.)  The Ninth Circuit held that the inclusion of the liability release was impermissible.

While *Syed* involved a liability release, plaintiffs contend that its holding is broader.  Plaintiffs contend that the *sole* additional element that may be included with the disclosure is an authorization, "which authorization may be made on the document referred to in clause (i). ..." 15 U.S.C.A. § 1681b(b)(2)(A)(ii).  Centerplate does not necessarily agree with plaintiffs' interpretation of *Syed* or the law.

A plaintiff may be entitled to statutory and punitive damages when a defendant has willfully violated the provisions of the FCRA.  15 U.S.C. §§ 1681n(a)(1)(A); (a)(2).

## IV.   THE SETTLEMENT

The following is a summary of the material elements of the Settlement.

### A.   The Settlement Class.

The class to be conditionally certified is defined as:

All employees and applicants in the United States who applied for a job, promotion or job change with Centerplate for which a background check, including a consumer report, was conducted at any time from February 22, 2011, to the earlier of (i) the date that the District Court grants preliminary approval of the Settlement, or (ii) March 31, 2019, excluding those individuals who already have resolved all the claims asserted in the Action, whether by settlement or adjudication, including, but not limited to, the settlement in *Phlisida Gibbs v. Centerplate, Inc., et al.*, U.S.D.C., M.D. Fla., No. 8-17-cv-2187-EAK-JSS.

(Settlement, § I.D.)  (*Gibbs* is a prior FCRA settlement made by Centerplate.)

### B.   Maximum Settlement Amount and Distributions.

Centerplate will pay a Maximum Settlement Amount ("MSA") of $450,000.00.  (Settlement, § III.A.)  The MSA covers (1) class representative payments of $5,000 to plaintiffs ($2,500 each), in compensation for having initiated and prosecuted the action and undertaken the risk of payment of costs in the event this matter had not been successfully concluded; (2) Settlement Shares paid to Class Members; (3) the Class Counsel Fees and Expenses Payment of not more than $112,500 (25% of the MSA), plus costs not to exceed $35,000, to compensate plaintiffs' counsel for all work performed thus far all work remaining to be performed in documenting and administrating the Settlement and securing Court approval; (4) the fees and expenses of the settlement administrator, not to exceed $40,000; and (6) any other fees or expenses (other than Class Counsel Fees and Expenses Payment) incurred in implementing the terms and conditions of the settlement agreement and securing the judgment pursuant to that agreement.  (*Id.*, § III.A.)  After all court-approved deductions from the MSA, it is estimated that a Net Settlement Amount of $220,000 will be available to pay the Settlement Shares of all Class Members.  If the Court awards all the requested amounts, the average Settlement Share is estimated to be $135.44.

The entire MSA will be paid out; none of it will revert to Centerplate.  Settlement checks that are uncashed after 180 days and additional notice to the Class Members will be paid to the State of California's Unclaimed Property Fund in the name of the Class Member.  (*Id.*, § III.E.11.)

### C.   Scope of the Class Member Releases.

Class members will release all claims against Centerplate and its related persons and entities that were raised or could have been raised in the action based on the factual allegations made in the action or otherwise based on or related to the allegations that Centerplate conducted background checks, including

a consumer report, in connection with application for a job, promotion or job change, without complying with applicable law.  (Settlement, § III.F.2.)

**D.      Notice Procedures.**

If appointed by the Court, Simpluris, Inc., serving as the settlement administrator, will mail to all Class Members a Class Notice Packet containing a Class Notice (completed to reflect the order granting Preliminary Approval of the Settlement) and a form of Election Not to Participate in Settlement. (Settlement, Exhs. B, C.)  A Spanish translation also will be included.  The Class Notice will inform the Class Members of their rights and the manner and deadline to (1)  object to the Settlement and (2) elect not to participate in the Settlement.  (*Id.*, Exhs. B, C.)  The Class Notice will also inform them of the claims to be released.  (*Id.*)

Within 30 days after preliminary approval of the Settlement is granted by the Court, Centerplate will provide the settlement administrator with the Class Members' Data, which will include each Class Member's name, last known address, and (where available/applicable) Social Security number, and employee identification number (if an employee).  (Settlement, § III.E.2.a.)  Within 15 days of receiving the Class Members' Data, the settlement administrator will send a Class Notice Packet to all Class Members.  (*Id.*, § III.E.2.b., Exhs. B, C.)

The Class Notice Packet will be sent to Class Members by first-class U.S. mail based upon their last-known address provided by Centerplate.  (Settlement, § III.E.2.b.)  For any notices returned, the settlement administrator will make reasonable efforts to find corrected addresses.  (*Id.*, § III.E.2.c.)

Within 30 days after the Class Notice Packet is mailed to Class Members, Plaintiffs and class counsel will move for the Class Representative Payments and the Class Counsel Fees and Expenses Payment.  (Settlement, § III.E.7.a.)

Class members will have 45 days after the Class Notice Packets are mailed to object to the Settlement or elect not to participate in the Settlement.  (Settlement, § III.E.3.)  Those who do not timely return properly completed elections will remain in the class and be bound by the Settlement.  (*Id.,* § III.E.3.b.)  If by the deadline five percent or more of Class Members, or a number of Class Members whose Settlement Shares would be worth five percent or more of the Net Settlement Amount if no Class Member elected not to participate in the Settlement, then Centerplate will have the right to rescind the

Settlement, which it must do not later than 14 days after the settlement administrator notifies the parties of the number of valid Elections Not to Participate in Settlement.  (*Id.*, § III.E.6.)

Assuming that the Settlement is not rescinded, the parties will jointly move for final approval of the Settlement.  (Settlement, § III.E.7.)

## V.     THE SETTLEMENT MEETS THE STANDARDS FOR PRELIMINARY APPROVAL

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation.  *See Newberg on Class Actions* 4th (2002) ("*Newberg*"), § 11.41 (and cases cited therein); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).  A class action, however, may not be dismissed, compromised, or settled without the approval of the court.  Fed. R. Civ. P. 23(e).

Judicial proceedings under Rule 23, Federal Rules of Civil Procedure, have led to defined procedures and specific criteria for settlement approval in class action settlements, described in the *Manual for Complex Litigation, Third* (Fed. Judicial Center 1995) ("*Manual*") § 30.41.  The *Manual*'s settlement approval procedure describes three distinct steps:

(1)     Preliminary approval of the proposed settlement at an informal hearing;

(2)     Dissemination of mailed and/or published notice of the settlement to all affected class members; and

(3)     A "formal fairness hearing," or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*Id.*, § 30.41.  The procedure, commonly used by federal courts and endorsed by the leading class action commentator, Professor Herbert Newberg, safeguards class members' procedural due process rights and enables the court to fulfill its role as the guardian of class interests.  *See Newberg*, § 11.22 *et seq.*

The decision to approve or reject a proposed settlement is committed to the trial court's sound discretion; a court's decision to approve a class action settlement may be reversed only upon a strong showing of "clear abuse of discretion."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (citation omitted); *City of Seattle*, 955 F.2d at 1276 (in context of class action settlement, appellate court cannot "substitute [its] notions of fairness for those of the [trial] judge and the parties to the agreement,"

1   and will reverse only upon strong showing of abuse of discretion) (citation omitted).

2          The purpose of the preliminary evaluation of class action settlements is to determine only

3   whether the proposed settlement is within the range of possible approval, and thus whether notice to the

4   class of the settlement terms and conditions and the scheduling of a formal fairness hearing is

5   worthwhile.  To grant preliminary approval of this class action settlement, the court need only find that

6   the settlement falls within the range of possible final approval, also described as "the range of

7   reasonableness."  *See, e.g., North County Contractor's Assn., Inc. v. Touchstone Ins. Svcs.*, 27 Cal.

8   App.4th 1085, 1089-90 (1994); *In re Traffic Exec. Ass'n-Eastern Railroads*, 627 F.2d 631, 633-34 (2d

9   Cir. 1980); *see also* 4 *Newberg*, § 11.25.  In sum, preliminary approval of a settlement and notice to the

10  proposed class is appropriate: "[i]f [1] the proposed settlement appears to be the product of serious,

11  informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant

12  preferential treatment to class representatives or segments of the class, and [4] falls with the range of

13  possible approval…"  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).

14         The Settlement proposed by the parties meets the standards for preliminary approval.

15  **A.     The Settlement Was the Product of Informed, Non-Collusive Negotiations.**

16         The Settlement was reached after informed, arm's-length negotiations between the parties with

17  the help of Tony Piazza, an accomplished mediator.  (Setareh Decl., ¶¶ 10, 11)  Both parties conducted

18  investigation allowing them to assess the strengths and weaknesses of the case.  (*Id.*)  Although the

19  parties did not settle at the mediation, after follow-up conversations with each side Mr. Piazza made a

20  mediator's proposal which was accepted.  (*Id.*, ¶ 11.)  The Settlement thus is the product of non-

21  collusive negotiations.

22  **B.     The Settlement Has No "Obvious Deficiencies."**

23         The Settlement is non-reversionary and substantial.  The Settlement provides for a payment of

24  $450,000.00 by Centerplate which is, by any account, a significant amount given the value of the claims

25  made by plaintiffs  (Settlement, § III.A.); (Setareh Decl., ¶¶ 27-29.)  The Settlement Share for each

26  Class Member will be based on the Net Settlement Amount divided by the number of Class Members,

27  which is a fair way to calculate what each Class Member should receive.  If all other amounts sought are

28  awarded, each Class Member will receive $135.44.  (*Id.*., ¶ 28.)  Centerplate does not oppose the Class

NTC OF JT MTN, JT MTN FOR PRELIMINARY
APPROVAL OF CLASS SETTLEMENT; MEMO ISO
U.S.D.C., N.D. Cal., 5:18-cv-01139-LHK

Representative Payments ($2,500 per plaintiff) and the Class Counsel Fees and Expenses Payment, and regardless they are subject to Court approval at the Final Approval hearing.  (Settlement, §§ III.C.1, III.C.2.)

### C.     The Settlement Falls Within the Range of Possible Approval.

The Settlement falls well within the range of possible approval.  To evaluate this criterion, which focuses on "substantive fairness and adequacy," "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer."  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080.  Following review of the applicable law, plaintiffs' counsel determined that the value of their claims was approximately $190,000 to $1,1900,000, not including punitive damages.  (Setareh Decl., ¶ 27).

The Settlement, which results in a net settlement amount of $135.44 per Class Member and does not require Class Members to submit claims, compares favorably to other similar FCRA disclosure form settlements in the Northern District and the Bay Area.  By contrast, *Rohm v. Thumbtack, Inc.,* No. 16-cv-02008-HSG, 2017 WL 4642409 (N.D. Cal. Oct. 17, 2017) (granting final approval) involved a claims-made settlement (albeit a non-reversionary one) where 66,676 class members shared in a $225,000 settlement or $3.30 per class member.  Similarly, *In re Uber FCRA Litig.,* No. 14-cv-05200-EMC, 2017 WL 2806698 (N.D. Cal. June 29, 2017) (granting preliminary approval) involved a claims-made settlement (also non-reversionary) where 1,025,954 class members shared in a $7.5 million settlement or $7.31 per class member.

The Settlement should be approved because it confers a substantial benefit on Class Members, while proceeding with litigation would impose significant risk with no guarantee of increased benefits.

### 1.     Liability Is Contested, and the Settlement Provides Class Members Substantial Monetary Relief.

Plaintiffs' counsel conducted a thorough investigation into the facts of this class action and diligently pursued an investigation of Class Members' claims against Centerplate.  (Setareh Decl., ¶¶ 6-9.)  Plaintiffs' counsel are very experienced in litigating FCRA and related cases.  (*Id.*, ¶¶ 20-22.)  Plaintiffs maintain that Centerplate was "willful" in its violation of the law and that it obtained credit and background reports to conduct background checks on plaintiffs and other prospective or current

1 employees without providing legally compliant standalone disclosure forms.  (ECF 14.)

2 For its part, Centerplate contests liability in the action, is represented by zealous counsel, and is
3 prepared to vigorously defend against these claims if the action is not settled (Wohl Decl., ¶¶ 3, 5.)
4 Centerplate also maintains that the settlement of *Gibbs*, the prior FCRA, bars a substantial part of
5 plaintiffs' claims, that any background checks that Centerplate has conducted complied with applicable
6 law and that in any event its conduct was not willful.

7 Importantly, the time period of the *Gibbs* settlement—August 21, 2015, through July 23, 2018—
8 is excluded from the case.  This means that, to recover, most Class Members must rely upon the five-
9 year statute of limitations set forth in 15 U.S.C. section 1681p, which applies "5 years after the date on
10 which the violation that is the basis for such liability occurs."  Centerplate argues that Class Members
11 knew from the forms themselves that a background check would be done.   Plaintiff would have
12 countered that no Class Member had actual knowledge that a background check had been done, and
13 therefore did not discover the violation so as to bar them from filing suit.  This issue would have been
14 vigorously contested both on the merits and at the class certification stage.

15 To be sure, if the litigation proceeds, Centerplate could face significant liability. The FCRA
16 provides for statutory penalties of $100 to $1000 per violation. 15 U.S.C. § 1681n(a)(1)(A).  Assuming
17 that a jury or the Court found liability awarded $100 per violation, Centerplate would be liable to pay
18 $580,100.  If a jury or the Court found liability and awarded the maximum possible $1,000 per violation,
19 Centerplate would be liable to pay $5,810,000.[4]

20 However, while plaintiffs are confident of a favorable outcome, there is substantial risk that
21 legal developments could seriously diminish the value of their claims.  Moreover, there is the risk that
22 plaintiffs would be unable to demonstrate that there was any willful or negligent violation on behalf of
23 Centerplate, as required by the FCRA or relevant state laws, or that Centerplate's background checks
24 challenged by plaintiffs would not support class certification or class-wide liability.

25 In light of these risks for both parties, the Settlement provides plaintiffs with a sizeable recovery

26

27 [4]     In *Lagos v. Leland Stanford Junior Univ.*, No. 15-cv-04524-KAW, 2017 WL 1113302, at *4
28 (N.D. Cal. Mar. 24, 2017) the district court used the $100 penalty as the comparator for assessing the
reasonableness of the settlement.

while mitigating Centerplate's risk if the matter were to proceed.  As such, the Settlement is fair, reasonable, adequate, and is in the best interest of the Class in light of all known facts and circumstances, including the risk of the significant delay.  (Setareh Decl., ¶ 29.)  The Settlement is also in the best interest of judicial efficiency in this case, as it obviously eliminates a lengthy and contested pre-certification class action lawsuit from this court's calendar.  (*Id.*)

### 2. The Class Release Is Appropriate Given Plaintiffs' Claims.

As described above, as part of the Settlement, Class Members will release all claims relating to the facts pled in the complaint.  (Settlement, § III.F.2.)  These released claims appropriately track the breadth of plaintiffs' allegations in the action.  (*Id.*, § III.F.2.)  And, of course, Class Members have the right to opt out of the Settlement by following the Election Not to Participate procedures provided for in the notice.  (Settlement, § III.E.3.b.)  If they do so, they will not release their claims, but, of course, they also will not share in the recovery.

### 3. Class Counsel's Fees Requested Are Consistent with Prevailing Market Rates.[5]

Class counsel's fees requested by plaintiffs are reasonable and fair, because the lodestar for the work performed is $69,885.00 (Setareh Decl., ¶ 23.)  The hourly rates are consistent with the prevailing market rates for attorneys of similar experience.  (*Id.*)

### D. Conditional Certification of a Settlement Class Is Appropriate.

Pursuant to Rule 23(c)(1), Federal Rules of Civil Procedure, the Court may "make a conditional determination of whether an action should be maintained as a class action, subject to final approval at a later date."  *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 466 (E.D. Pa. 2000) (citing Fed. R. Civ. P. 23(c)(1)).  Conditional approval of the class is appropriate where the plaintiff demonstrates (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation; and one of the three requirements of Rule 23(b) also is met.  Conditional certification of the settlement class is appropriate here as all the factors of Rule 23 requirements are met.

///

---

[5]     This section is submitted by plaintiffs' counsel only, not Centerplate.

### 1. The Numerosity Requirement Is Met.

The numerosity requirement is met if the class is so large that joinder of all members would be impracticable. *Gay v. Waiters' & Dairy Lunchmen's Union, Loc. No* 30, 489 F. Supp. 282 (N.D. Cal. 1980), *aff'd*, 694 F.2d 531 (9th Cir. 1982). No specified number of members of class is needed to maintain class action. *Cypress v. Newport News General and Nonsectarian Hosp. Ass'n*, 375 F.2d 648 (4th Cir. 1967); *see also Pottinger v. City of Miami*, 720 F. Supp. 955 (S.D. Fla. 1989), *remanded on other grounds, 40 F.3d 1155*); *McNeill v. New York City Housing Auth.*, 719 F. Supp. 233 (S.D.N.Y. 1989); *Ellender v. Schweiker*, 550 F. Supp. 1348 (S.D.N.Y. 1982); *Gordon v. Forsyth Cty. Hosp. Auth., Inc.*, 409 F. Supp. 708, 711 (M.D.N.C. 1975), *aff'd in part, vacated in part*, 544 F.2d 748; *Susquehanna Tp. v. H and M, Inc.*, 98 F.R.D. 658 (M.D. Pa. 1983). However, numerosity is generally presumed for purposes of class action certification when the proposed class would have at least 40 members. *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168 (S.D.N.Y. 2008).

Here, the count of approximately 1,901 Class Members satisfies the numerosity requirement.

### 2. For Purposes of Settlement Only, Centerplate Concedes That the Commonality and Typicality Requirements Are Met.

Rule 23(a) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality requirement has been construed permissively; not all questions of law and fact need to be common. *Hanlon*, 150 F.3d at 1019. Here, plaintiffs allege that their claims involve common questions of both fact and law regarding Centerplate's alleged failure to abide by state wage-and-hour law—and Centerplate does not dispute this for the purposes of the Settlement.

Furthermore, "Rule 23(a)(3) requires that the claims of the named parties be typical of the claims of the members of the class." *Fry*, 198 F.R.D. at 468. "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent Class Members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Plaintiffs contend, and for purposes of the Settlement only Centerplate does not dispute, that plaintiffs' respective claims are essentially identical to all other employees and applicants in the United States who applied for a job, promotion or job change with Centerplate for which a background check, including a consumer report, was conducted.

### 3.      Adequacy of Representation.

To meet the adequacy of representation requirement in Rule 23(a)(4), plaintiffs must show: "(1) that the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously, (2) that he or she has obtained adequate counsel, and (3) that there is no conflict between the individual's claims and those asserted on behalf of the class." *Fry*, 198 F.R.D. at 469.  For purposes of the Settlement only, Centerplate concedes that the adequacy of representation requirement is met here because plaintiffs have the same interests as the remaining members of the Settlement Class, there is no conflict between the named plaintiffs' claims and those of the other Class Members, and plaintiffs are represented by experienced and competent counsel who have substantial experience in litigating FCRA and related class actions.  (Setareh Decl., ¶¶ 19-22.)

### 4.      Class Certification Is Proper Under Rule 23(b)(3).

In addition to demonstrating the four prerequisites of Rule 23(a), class certification requires a showing that certification is proper under one of the three requirements of Rule 23(b).  Here, Centerplate agrees for purposes of the Settlement only that certification of the Class is appropriate under Rule 23(b)(3) because " questions of law or fact common to class members predominate over any questions affecting only individual members, and . . .a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

### E.      The Notice Packet Is Fair and Adequate.

"Adequate notice is critical to court approval of a class settlement under Rule 23(e)."  *Hanlon*, 150 F.3d at 1025.  A class action settlement notice "is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'"  *Churchill Village, LLC v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004) (quoting *Mendoza v. Tucson Sch. Dist. No. 1.*, 623 F.2d 1338, 1352 (9th Cir. 1980)).

Here, the Class Notice (Exhibit B to the Settlement) and the manner of notice is "the best notice practicable," as required under Rule 23(c)(2)(B).  All Class Members can be identified, and the Class Packet (including the Class Notice and the Election Not to Participate in Settlement Form) will be mailed directly to each Class Member using first-class U.S. Mail.  (Settlement, § III.E.2.b.)  The Class Notice adequately informs Class Members of the nature of the litigation, the essential terms of the

Settlement, and how to object to or elect not to participate in the Settlement.  (*Id.*, Exhs. B, C.)  Further, the Class Notice identifies class counsel, specifies the amounts of the Class Representative Payments, the Class Counsel Fees and Expenses Payment that plaintiffs will seek, and explains how to obtain additional information regarding the action and the Settlement.  (*Id.*)

Specifically, "[w]ithin 30 days after the District Court enters its order granting Preliminary Approval of the Settlement, Centerplate will provide to the settlement administrator an electronic database for the Class Members containing, for each Class Member, the Class Member's name, employee identification number, last known address, and Social Security number; and will provide to Class Counsel the name and last-known address of every Class Member."  (Settlement, § III.E.2.a.)  The Class Notice and other materials will be mailed by the settlement administrator within 15 days following Centerplate's delivery of the Class Members' Data.  (*Id.*, § III.E.2.b.)  The settlement administrator will attempt to locate any Class Members whose Class Notices are returned as undeliverable.  (*Id.*)  Not later than 45 days prior to the final approval hearing, the settlement administrator will submit a declaration describing efforts made to locate all Class Members.  (*Id.*, § III.E.2.e.)  In sum, the procedures set forth in the Settlement provide the best possible notice to the Class Members.

### F.  Simpluris, Inc., Should Be Appointed the Settlement Administrator.

After obtaining quotes from three experienced settlement administrators, the parties propose that the Court appoint Simpluris, Inc. ("Simpluris"), to serve as the settlement administrator.  Simpluris is experienced in administering class action settlements, and is regularly appointed as a claims administrator by California courts to administer settlements.  Over the last two years, class counsel have engaged with Simpluris 21 times in 11 class actions.  (Setareh Decl., ¶ 31.)  The estimated fees and costs for settlement administration for the Settlement are not to exceed $40,000.  (*Id.*, ¶ 30.)  The parties agree that these estimates are reasonable and adequate to provide the necessary notice of the Settlement to the 1,901 Class Members.  Plaintiffs' counsel will provide an updated settlement administration expense estimate at the time the parties file the motion for final approval of the Settlement.  (*Id.*)

### G.  Residual.

The entire MSA will be paid out; none will revert to Centerplate.  Settlement checks that are uncashed after 180 days and additional notice to the Class Members will be paid to the State of

California Unclaimed Property Fund in the name of the Class Member.  (Settlement, § III.E.11.)

**H.     Proposed Schedule.**

The parties propose the following schedule for approval of the Settlement, which assumes that preliminary approval is granted at the hearing on the motion:

| Date | Event |
|------|-------|
| 07/15/19 | Centerplate to provide to Settlement Administrator database containing Class Member information necessary to calculate Settlement Shares (30 days after Preliminary Approval) |
| 07/30/19 | Settlement Administrator to mail Class Notice Packets to all Class Members (15 days after receiving Class Member information from Centerplate) |
| 08/29/19 | Date by which plaintiffs and class counsel will submit their motion for Class Representative Payments and Class Counsel Fees and Expenses Payment (30 days after Class Notice Packets are mailed to Class Members) |
| 09/16/19 | Last day for Class Members to file with the Court and serve upon counsel for the parties objections to Settlement (45 days after Settlement Administrator mails Class Notice Packets to all Class Members) |
|  | Last day for Class Members to mail Elections Not to Participate in Settlement (45 days after Settlement Administrator mails Class Notice Packets to all Class Members) |
| 09/23/19 | Date by which Settlement Administrator will provide Parties with a list of all Class Members who submitted timely and valid Elections Not to Participate Forms |
| 10/10/19 | Date by which parties will submit their joint motion for final approval of settlement |
| 11/14/19 | Hearing on joint motion for final approval of settlement |

# VI.   CONCLUSION

For the reasons set forth above, the parties respectfully request that the Court grant their joint motion in its entirety and enter an order:  (1) conditionally certifying the Settlement Class; (2) granting preliminary approval of the Settlement; (3) appointing plaintiffs as the Class Representatives;

(4) appointing Setareh Law Group as class counsel; (5) approving and directing the mailing of the Class Notice and related materials; (6) appointing Simpluris, Inc., as the settlement administrator; and (7) scheduling the final approval hearing for November 14, 2019, or as soon thereafter as is available and convenient for the Court.

Dated:  January 30, 2019.

SHAUN SETAREH
THOMAS SEGAL
FARRAH GRANT
ASHLEY N. BATISTE
SETAREH LAW GROUP

By:  _____ /s/ *Shaun Setareh* _____
Attorneys for Plaintiffs Monique Raquedan and
Ronald Martinez

Dated:  January 30, 2019.

JEFFREY D. WOHL
ZINA DELDAR
JANA B. FITZGERALD
PAUL HASTINGS LLP

By:  _____ /s/ *Jeffrey D. Wohl* _____
Attorneys for Defendants Volume Services, Inc., and
Centerplate of Delaware, Inc.

LEGAL_US_W # 97334884.1