1    (*Counsel of record on next page*)

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT

8                    NORTHERN DISTRICT OF CALIFORNIA

9

10   MONIQUE RAQUEDAN *et al.*,              No. 5:18-cv-01139-LHK

11          Plaintiffs,                       **CLASS ACTION**

12   v.                                       **NOTICE OF JOINT MOTION AND JOINT
                                              MOTION FOR PRELIMINARY APPROVAL**
13   VOLUME SERVICES, INC., *et al*.,         **OF FOURTH AMENDED CLASS ACTION
                                              SETTLEMENT, CONDITIONAL**
14          Defendants.                       **CERTIFICATION OF CLASS, APPROVAL
                                              OF CLASS NOTICE, AND SETTING OF**
15                                            **FINAL APPROVAL HEARING;
                                              MEMORANDUM IN SUPPORT OF**
16                                            **MOTION**

17                                            Date:          November 21, 2019
                                              Time:          1:30 p.m.
18                                            Courtroom:  8
                                                             280 South First Street, 4th Floor
19                                                           San Jose, CA 95113
                                              Judge:         Hon. Lucy H. Koh
20

21

22

23

24

25

26

27

28

LEGAL_US_W # 97334884.5

SHAUN SETAREH (Cal. State Bar No. 204514)
THOMAS SEGAL (Cal. State Bar No. 222791)
FARRAH GRANT (Cal. State Bar No. 293898)
SETAREH LAW GROUP
315 S. Beverly Drive, Suite 315
Beverly Hills, California 90212
Telephone: (310) 888-7771
Facsimile: (310) 888-0109
shaun@setarehlaw.com
thomas@setarehlaw.com
farrah@setarehlaw.com

Attorneys for Plaintiffs Monique Raquedan and Ronald Martinez

JEFFREY D. WOHL (Cal. State Bar No. 096838)
ZINA DELDAR (Cal. State Bar No. 282637)
JANA B. FITZGERALD (Cal. State Bar No. 314085)
PAUL HASTINGS LLP
101 California Street, 48th Floor
San Francisco, California 94111
Telephone:     (415) 856-7000
Facsimile:     (415) 856-7100
jeffwohl@paulhastings.com
zinadeldar@paulhastings.com
janafitzgerald@paulhastings.com

Attorneys for Defendants Volume Services, Inc., and
Centerplate of Delaware, Inc.

# TABLE OF CONTENTS

*Page*

Table of Authorities ......................................................................................................... ii

NOTICE OF JOINT MOTION AND JOINT MOTION ................................................. 1

MEMORANDUM IN SUPPORT OF JOINT MOTION ................................................. 2

I.     INTRODUCTION/SUMMARY OF ARGUMENT ............................................. 2

II.    BACKGROUND .................................................................................................. 3

III.   SUMMARY OF APPLICABLE LAW ................................................................ 5

IV.    THE AMENDED SETTLEMENT ....................................................................... 6

    A.   The Settlement Class. ................................................................................. 6

    B.   Maximum Settlement Amount and Distributions. ...................................... 6

    C.   Scope of the Class Member Releases. ........................................................ 7

    D.   Notice Procedures. ..................................................................................... 7

V.     THE AMENDED SETTLEMENT MEETS THE STANDARDS FOR PRELIMINARY APPROVAL ............................................................................. 8

    A.   The Amended Settlement Was the Product of Informed, Non-Collusive Negotiations. ............................................................................................. 10

    B.   The Amended Settlement Has No "Obvious Deficiencies." ...................... 10

    C.   The Amended Settlement Falls Within the Range of Possible Approval. ........ 10

        1.   Liability Is Contested, and the Amended Settlement Provides Class Members Substantial Monetary Relief. ....................................... 11

        2.   The Class Release Is Appropriate Given Plaintiffs' Claims. ............... 12

        3.   Class Counsel's Fees Requested Are Consistent with Prevailing Market Rates. ............................................................................................... 13

    D.   Conditional Certification of a Settlement Class Is Appropriate. ............... 13

        1.   The Numerosity Requirement Is Met. ............................................... 13

        2.   For Purposes of Settlement Only, Centerplate Concedes That the Commonality and Typicality Requirements Are Met. ........................ 14

        3.   Adequacy of Representation. ............................................................ 14

        4.   Class Certification Is Proper Under Rule 23(b)(3). ........................... 14

    E.   The Notice Packet Is Fair and Adequate. ................................................. 15

    F.   Simpluris Should Be Appointed the Settlement Administrator. ................. 16

    G.   Residual. ................................................................................................... 16

    H.   Proposed Schedule. .................................................................................. 16

VI.    CONCLUSION .................................................................................................. 17

# TABLE OF AUTHORITIES

*Page*

**Cases**

*Ellender v. Schweiker,*
   550 F. Supp. 1348 (S.D.N.Y. 1982)..................................................................3

*McNeill v. New York City Housing Auth.,*
   719 F. Supp. 233 (S.D.N.Y. 1989)..................................................................3

*Susquehanna Tp. v. H and M, Inc.,*
   98 F.R.D. 658 (M.D. Pa. 1983).......................................................................3

*Churchill Village, LLC v. General Electric,*
   361 F.3d 566 (9th Cir. 2004) ..........................................................................5

*Class Plaintiffs v. City of Seattle,*
   955 F.2d 1268 (9th Cir. 1992) ........................................................................8

*Cypress v. Newport News General and Nonsectarian Hosp. Ass'n,*
   375 F.2d 648 (4th Cir. 1967) ..........................................................................3

*Fraley v. Facebook, Inc.,*
   966 F.Supp.2d 939, (N.D. Cal. 2013), *aff'd sub nom.,*
   F. App'x 594 (9th Cir. 2016) ........................................................................11

*Fry v. Hayt, Hayt & Landau,*
   198 F.R.D. 461 (E.D. Pa. 2000).....................................................................11

*Gay v. Waiters' & Dairy Lunchmen's Union, Loc. No 30,*
   489 F. Supp. 282 (N.D. Cal. 1980), *aff'd,*
   694 F.2d 531 (9th Cir. 1982) ..........................................................................3

*Gordon v. Forsyth Cty. Hosp. Auth., Inc.,*
   409 F. Supp. 708 (M.D.N.C. 1975), *aff'd in part, vacated in part,*
   544 F.2d 748 ..................................................................................................13

*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir. 1998) ...........................................................9, 14, 15

*Lagos v. Leland Stanford Junior Univ.,*
   No. 15-cv-04524-KAW, 2017 WL 1113302 (N.D. Cal. Mar. 24, 2017) ...........12

*Lapin v. Goldman Sachs & Co.,*
   254 F.R.D. 168 (S.D.N.Y. 2008).....................................................................13

*Mendoza v. Tucson Sch. Dist. No. 1.,*
   623 F.2d 1338 (9th Cir. 1980) ..........................................................................5

*North County Contractor's Assn., Inc. v. Touchstone Ins. Svcs.,*
   27 Cal. App.4th 1085 (1994) ...........................................................................9

*Pottinger v. City of Miami,*
   720 F. Supp. 955 (S.D. Fla. 1989), *remanded on other grounds,*
   40 F.3d 1155 .................................................................................................13

*Rohm v. Thumbtack, Inc.,*
   No. 16-cv-02008-HSG, 2017 WL 4642409 (N.D. Cal. Oct. 17, 2017)............11

*Syed v. M-I, LLC,*
   853 F.3d 492 (9th Cir. 2017.) ..........................................................................5

# TABLE OF AUTHORITIES
*(cont'd)*

*Page*

*In re Tableware Antitrust Litig.*,
484 F. Supp. 2d 1078 (N.D. Cal. 2007) ............................................................89, 10

*In re Traffic Exec. Ass'n-Eastern Railroads*,
627 F.2d 631 (2d Cir. 1980)................................................................................9

*Van Bronkhorst v. Safeco Corp.*,
529 F.2d 943 (9th Cir. 1976) ...............................................................................8

**Statutes and Rules**

Cal. Bus. & Prof. Code § 17200 .............................................................................3-4

Fed. R. Civ. P.
R. 23 ..................................................................................................................8, 2
R. 23(a) .................................................................................................................14
R. 23(a)(2) ..............................................................................................................4
R. 23(a)(3) ..............................................................................................................4
R. 23(a)(4) ..............................................................................................................4
R. 23(b) ................................................................................................................,13
R. 23(b)(3) ..............................................................................................................5
R. 23(c)(1) ...............................................................................................................3
R. 23(c)(2)(B) .......................................................................................................5,
R. 23(e) ...............................................................................................................8, 5

15 U.S.C.
§ 1681b(b)...............................................................................................................5
§ 1681b(b)(2)(A)(i) .................................................................................................5
§ 1681b(b)(2)(A)(ii) ...............................................................................................5
§ 1681n(a)(1)(A) .................................................................................................6, 12
§ 1681p....................................................................................................................1

**Other Authorities**

*Manual for Complex Litigation, Third* (Fed. Judicial Center 1995) § 30.41 ............................................8

*Newberg on Class Actions* 4th (2002), § 11.41 ...................................................... 8

LEGAL_US_W # 97334884.5

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF JOINT MOTION AND JOINT MOTION

To the Clerk of Court and all interested parties:

PLEASE TAKE NOTICE THAT on November 21, 2019, at 1:30 p.m., or as soon thereafter as counsel may be heard, in Courtroom 8 of this Court, located at 280 South First Street, 4th Floor, San Jose, CA 95113, before the Honorable Lucy H. Koh, plaintiffs Monique Raquedan and Ronald Martinez and defendants Volume Services, Inc., and Centerplate of Delaware, Inc., hereby jointly do and will move the Court to (1) conditionally certify a settlement class; (2) preliminarily approve the parties' proposed class action Fourth Amended Settlement Agreement (the "Amended Settlement"); (3) appoint plaintiffs Monique Raquedan and Ronald Martinez as the Class Representatives, their counsel as class counsel, and Simpluris, Inc., as the settlement administrator; (4) approve the forms of notice to the class of the settlement and Election Not to Participate in the Amended Settlement; and (5) schedule a hearing on the final approval of the Amended Settlement for April 30, 2020, or as soon thereafter as the Court is available.

The parties make this motion on the grounds that the Amended Settlement is fair, adequate and reasonable and within the range of possible final approval.

This motion is based upon this Notice of Joint Motion and Joint Motion for Preliminary Approval of Fourth Amended Class Action Settlement, Conditional Certification of Class, Approval of Class Notice, and Setting of Final Approval Hearing and the following Memorandum in Support of Joint Motion for Preliminary Approval of Fourth Amended Class Action Settlement, Conditional Certification of Class, Approval of Class Notice, and Setting of Final Approval Hearing; the accompanying Declaration of Shaun Setareh in Support of Joint Motion for Preliminary Approval of Fourth Amended Class Action Settlement, Conditional Certification of Class, Approval of Class Notice, and Setting of Final Approval Hearing; Declaration of Jeffrey D. Wohl in Support of Joint Motion for Preliminary Approval of Fourth Amended Class Action Settlement, Conditional Certification of Class, Approval of Class Notice, and Setting of Final Approval Hearing; and proposed form of Order: (1) Preliminarily Approving Proposed Fourth Amended Settlement; (2) Conditionally Certifying Settlement Class; (3) Appointing Class Representative, Class Counsel, and Settlement Administrator; (4) Approving Forms of Notice to Class of Settlement, Class Member Claim Form; and (5) Setting Hearing for Final

Approval; the Court's record of this action; all matters of which the Court may take notice; and such oral or documentary evidence presented at the hearing on the motion.

## MEMORANDUM IN SUPPORT OF JOINT MOTION

### I.   INTRODUCTION/SUMMARY OF ARGUMENT

This joint motion seeks preliminary approval of the parties Fourth Amended Settlement Agreement (the "Amended Settlement") of this Fair Credit Reporting Act ("FCRA") and related state-law class action between plaintiffs Monique Raquedan and Ronald Martinez, on behalf of themselves and an estimated 11,740 Class Members, and defendants Volume Services, Inc., and Centerplate of Delaware, Inc. (collectively, "Centerplate").

The settlement provides for an "all-in" non-reversionary settlement of $750,000. Class members will not have to make claims. Instead, a check will be mailed directly to them. For any uncashed checks, the money will be sent to the State of California's Unclaimed Property Fund to be held for the Class Member. No money will revert to Centerplate.

Plaintiffs allege that they and the Class Members were subject to a background check, including a consumer report, in connection with their application for a job, promotion or job change with Centerplate that was conducted in violation of applicable law. Centerplate denies plaintiffs' allegations in their entirety, denies any liability, and further denies that, for any purpose other than settling, the action is appropriate for class treatment.

As the result of arm's length negotiations under the supervision of an experienced, highly regarded mediator, and further negotiations conducted directly by the parties after they received additional information about the class size not available at the mediation, the parties reached a fair and reasonable class settlement of plaintiffs' claims.

At the time the dollar amount of the settlement was agreed to by the parties, the parties believed that the class size was 5,801. However, at the time that the original settlement agreement (the "Original Settlement") was executed, Centerplate was informed that the class size was only 1,901, albeit subject to adjustment, and communicated that to plaintiffs. On the basis of that good-faith belief, the Parties filed a joint motion for preliminary approval of their Original Settlement (ECF 43), which the Court granted on July 3, 2019 (ECF 58.) Following the Court's approval, Centerplate worked diligently to identify

third-party vendors to obtain the class data and confirm the class size. Due to the unexpected difficulty obtaining records from vendors, this process took some time, and, to Centerplate's surprise, the total number of class members (11,740) was significantly larger than anticipated. Based on this change in class size, plaintiffs declined to adhere to the original Maximum Settlement Amount (the "MSA") ($450,000), and the Court vacated its prior order granting preliminary approval. (ECF 62.) The Court directed the parties to negotiate a new deal, which they did. The product of those additional negotiations is the Amended Settlement, which includes a new MSA of $750,000, a two-thirds increase over the prior MSA.[1]

The parties now request that the Court enter an order preliminarily approving the Amended Settlement; certifying a class for purposes of the Amended Settlement only; appointing plaintiffs as Class Representative, Setareh Law Group as class counsel and Simpluris, Inc., as the settlement administrator; approving and directing the mailing of the Class Notice and related materials; and scheduling a final approval hearing on March 19, 2020, or such later date that is available to the Court.[2]

## II.    BACKGROUND

At the times relevant to the action, Centerplate provided concession services at sports stadiums and other venues across the nation, including 11 locations in California, such as AT&T Park in San Francisco, Levi's Stadium in Santa Clara and Qualcomm Stadium in San Diego.

Plaintiffs brought this class action on behalf of all employees and applicants in the United States who applied for a job, promotion or job change with Centerplate for which a background check, including a consumer report, that was conducted during the applicable limitations period. Their allegations primarily concern the notice, disclosure or consent form that is included as part of the background checks. Plaintiffs allege that Centerplate failed to comply with the applicable law, including the FCRA as well as its California counterparts, the California Investigative Consumer Reporting Agencies Act and the California Consumer Credit Reporting Agencies Act, and California Business and

---

[1]    The Amended Settlement is attached as Exhibit 1 to the concurrently filed Declaration of Shaun Setareh in Support of Joint Motion for Preliminary Approval of Fourth Amended Class Action Settlement ("Setareh Decl.")

[2]    A proposed calendar of events associated with approval of the Amended Settlement, assuming preliminary approval is granted at the hearing on the motion, appears on pages 16-17, *infra*.

1    Professions Code section 17200 *et seq.*

2        Centerplate denies plaintiffs' allegations.  Among other things, Centerplate contends that any

3    background check that Centerplate conducted on any employee or applicant was done in compliance

4    with applicable law; and that a prior class settlement and release, in *Gabriel Thompson v. Centerplate of*

5    *Delaware, Inc.*, U.S.D.C., N.D. Cal., No. 5:16-cv-01486-EJD, bars a substantial part of plaintiffs'

6    claims.  Centerplate further denies that, for any purpose other than settling the action, plaintiffs' claims

7    are not appropriate for class treatment.

8        In the course of the litigation, the parties exchanged substantial information, including

9    Centerplate's background check policies and other authorization forms related to employment with

10    Centerplate.  (Setareh Decl., ¶¶ 5-8.)

11        In a wage-and-hour class action involving the same parties, *Raquedan et al. v. Centerplate of*

12    *Delaware, Inc., et al.*, U.S.D.C., N.D. Cal., No. 17-cv-03828-LHK, the Court ordered the parties to

13    mediation.  (ECF 31.)  The parties then agreed, during a meet-and-confer, to mediate this action at the

14    same time.  Despite a full day of mediation, at which the parties engaged in good-faith, arms' length

15    bargaining, and realistically assessed the strengths and weakness of their positions, the case initially did

16    not settle.  Mediator Piazza persisted, however, and after further discussions with both sides he

17    eventually made a mediator's proposal, which the parties accepted.  (Setareh Decl., ¶¶ 9, 10.)

18        The MSA under the Original Settlement was $450,000.  (ECF 43.)  Plaintiffs' counsel agreed to

19    the $450,000 MSA based on the information provided before the mediation by Centerplate's prior

20    attorneys indicating that the class size was 5,801 people.  (Setareh Decl., ¶¶ 11, 35.)

21        After the MSA was agreed to but before the Settlement Agreement was signed, Centerplate

22    reported that the class had approximately 1,901 class members.  (Declaration of Jeffrey D. Wohl in

23    Support of Joint Motion for Preliminary Approval of Fourth Amended Class Action Settlement,

24    Conditional Certification of Class, Approval of Class Notice, and Setting of Final Approval Hearing

25    ("Wohl Decl."), ¶ 5.)

26        Plaintiffs' counsel was surprised that the class size was 1,901 rather than the 5,801 originally

27    represented.  (Setareh Decl. ¶ 36 .) However, they did not see an issue because the effect of a lower class

28    size was to increase the recovery for each class member substantially.  (*Id.*)

NTC OF JT MTN, JT MTN FOR PRELIMINARY
APPROVAL OF CLASS SETTLEMENT; MEMO ISO
U.S.D.C., N.D. Cal., 5:18-cv-01139-LHK

Following the Court's preliminary approval of the Original Settlement (ECF 58), Centerplate worked diligently to identify third-party vendors to obtain the class data and confirm the class size. (Wohl Decl., ¶ 6.)  Due to the unexpected difficulty obtaining records from vendors, this process took some time.   Once a final count was obtained, to Centerplate's surprise, the total number of class members was 11,740.  (*Id.*.)

Based on this change in class size, plaintiffs declined to adhere to the original MSA, and the Court vacated its prior order granting preliminary approval.  (ECF 62.)  The Court directed the parties to negotiate a new deal, which they did.  The result is the Amended Settlement, which includes a new MSA of $750,000, a two-thirds increase over the prior MSA.  Amended Settlement, § III.A.

## III.    SUMMARY OF APPLICABLE LAW

### A.    The FCRA.

The FCRA, 15 U.S.C. § 1681b(b), provides requirements for employer documents and mandates specified policies and practices when they use "consumer reports" to assess the qualifications of prospective and current employees.   Pursuant to section 1681b(b) of the FCRA, no person may obtain a consumer report for employment purposes without providing a "clear and conspicuous disclosure  ... in a document that consists solely of the disclosure."  15 U.S.C. § 1681b(b)(2)(A)(i).  The person obtaining the consumer report must also obtain the consumer's written authorization, which can be done as part of the disclosure form. 15 U.S.C. § 1681b(b)(2)(A)(ii).

The Ninth Circuit has held that the required disclosure must be in "a document that consists solely of the disclosure." *Syed v. M-I, LLC*, 853 F.3d 492 (9th Cir. 2017.)  In *Syed*, the FCRA disclosure at issue contained a term purporting to waive any liability of the employer related to the background check.  (*Id.* at 498.)  The Ninth Circuit held that the inclusion of the liability release was impermissible.

While *Syed* involved a liability release, plaintiffs contend that its holding is broader.  Plaintiffs contend that the *sole* additional element that may be included with the disclosure is an authorization, "which authorization may be made on the document referred to in clause (i). ..." 15 U.S.C. § 1681b(b)(2)(A)(ii).[3]  Centerplate does not necessarily agree with this interpretation of *Syed* or the law.

---

[3]    Plaintiffs also believe that this contention is bolstered by a case decided after the mediation, *Gilberg v. California Check Cashing LLC*, 913 F.3d 1169 (9th Cir. Jan. 29, 2019), which held that inclusion of state law notices in the disclosure form violates the FCRA.  Centerplate does not agree with

1   A plaintiff may be entitled to statutory and punitive damages when a defendant has willfully

2   violated the provisions of the FCRA.  15 U.S.C. §§ 1681n(a)(1)(A); (a)(2).

3   **IV.    THE AMENDED SETTLEMENT**

4   The following is a summary of the material elements of the Amended Settlement.

5   **A.    The Settlement Class.**

6   The class to be conditionally certified is defined as:

7   All employees and applicants in the United States who applied for a job, promotion or job
8   change with Centerplate for which a background check, including a consumer report, was
    conducted at any time from February 22, 2011, to the earlier of (i) the date that the
9   District Court grants preliminary approval of the Settlement, or (ii) March 31, 2019,
    excluding those individuals who already have resolved all the claims asserted in the
10  Action, whether by settlement or adjudication, including, but not limited to, the
    settlement in *Phlisida Gibbs v. Centerplate, Inc., et al.*, U.S.D.C., M.D. Fla., No. 8-17-
11  cv-2187-EAK-JSS.

12  (Amended Settlement, § I.D.)  (*Gibbs* is a prior FCRA settlement made by Centerplate.)

13  **B.    Maximum Settlement Amount and Distributions.**

14  Centerplate will pay an MSA of $750,000.00.  (Amended Settlement, § III.A.)  The MSA covers

15  (1) class representative payments of $5,000 to plaintiffs ($2,500 each), in compensation for having

16  initiated and prosecuted the action and undertaken the risk of payment of costs in the event this matter

17  had not been successfully concluded; (2) Settlement Shares paid to Class Members; (3) the Class

18  Counsel Fees and Expenses Payment of not more than $222,500 (25% of the MSA), plus costs not to

19  exceed $35,000, to compensate plaintiffs' counsel for all work performed thus far and all work

20  remaining to be performed in documenting and administering the Amended Settlement and securing

21  Court approval; (4) the fees and expenses of the settlement administrator, not to exceed $53,610; and

22  (6) any other fees or expenses (other than Class Counsel Fees and Expenses Payment) incurred in

23  implementing the terms and conditions of the settlement agreement and securing the judgment pursuant

24  to that agreement.  (*Id.*, § III.A.)  After all court-approved deductions from the MSA, it is estimated that

25  a Net Settlement Amount of $468,890 will be available to pay the Settlement Shares of all Class

26  Members.  If the Court awards all the requested amounts, each Class Member's Settlement Share is

27  estimated to be $39.86.

28  this interpretation of *Gilberg*.

The entire MSA will be paid out; none of it will revert to Centerplate. Settlement checks that are uncashed after 180 days and additional notice to the Class Members will be paid to the State of California's Unclaimed Property Fund in the name of the Class Member. (*Id.*, § III.E.11.)

### C. Scope of the Class Member Releases.

Class members will release all claims against Centerplate and its related persons and entities that were raised or could have been raised in the action based on the factual allegations made in the action or otherwise based on or related to the allegations that Centerplate conducted background checks, including a consumer report, in connection with application for a job, promotion or job change, without complying with applicable law. (Amended Settlement, § III.F.2.)

### D. Notice Procedures.

If appointed by the Court, Simpluris, Inc. ("Simpluris"), serving as the settlement administrator,[4] will mail to all Class Members a Class Notice Packet containing a Class Notice (completed to reflect the order granting Preliminary Approval of the Amended Settlement) and a form of Election Not to Participate in Settlement. (Amended Settlement, Fourth Amended Exh. B, Amended Exh. C.) A Spanish translation also will be included. The Class Notice will inform the Class Members of their rights and the manner and deadline to (1) object to the Amended Settlement and (2) elect not to participate in the Amended Settlement. (*Id.*, Fourth Amended Exh. B, Amended Exh. C.) The Class Notice will also inform them of the claims to be released. (*Id.*)

Within 30 days after preliminary approval of the Amended Settlement is granted by the Court, Centerplate will provide Simpluris with the Class Members' Data, which will include each Class Member's name, last known address, and (where available/applicable) Social Security number, and employee identification number (if an employee). (Amended Settlement, § III.E.2.a.) Within 15 days of receiving the Class Members' Data, Simpluris will send a Class Notice Packet to all Class Members. (*Id.*, § III.E.2.b., Fourth Amended Exh. B, Amended Exh. C.)

The Class Notice Packet will be sent to Class Members by first-class U.S. mail based upon their last-known address provided by Centerplate. (Amended Settlement, § III.E.2.b.) For any notices

---

[4]    When the Court granted preliminary approval of the Original Settlement, it appointed Simpluris as the settlement administrator. (ECF 58.) The Court also appointed Simpluris as the settlement administrator in the companion *Raquedan* wage-and-hour class settlement.

1    returned, Simpluris will make reasonable efforts to find corrected addresses.  (*Id.*, § III.E.2.c.)

2        Within 30 days after the Class Notice Packet is mailed to Class Members, Plaintiffs and class

3    counsel will move for the Class Representative Payments and the Class Counsel Fees and Expenses

4    Payment.  (Amended Settlement, § III.E.7.a.)

5        Class members will have 45 days after the Class Notice Packets are mailed to object to the

6    Amended Settlement or elect not to participate in the Amended Settlement.  (Amended Settlement,

7    § III.E.3.)  Those who do not timely return properly completed elections will remain in the class and be

8    bound by the Amended Settlement.  (*Id.,* § III.E.3.b.)  If by the deadline five percent or more of Class

9    Members, or a number of Class Members whose Settlement Shares would be worth five percent or more

10   of the Net Settlement Amount if no Class Member elected not to participate in the Amended Settlement,

11   then Centerplate will have the right to rescind the Amended Settlement, which it must do not later than

12   14 days after the settlement administrator notifies the parties of the number of valid Elections Not to

13   Participate in Settlement.  (*Id.*, § III.E.6.)

14       Assuming that the Amended Settlement is not rescinded, the parties will jointly move for final

15   approval of the Amended Settlement.  (Amended Settlement, § III.E.7.)

## V.    THE AMENDED SETTLEMENT MEETS THE STANDARDS FOR PRELIMINARY APPROVAL

18       The law favors settlement, particularly in class actions and other complex cases where

19   substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation.  *See*

20   *Newberg on Class Actions* 4th (2002) ("*Newberg*"), § 11.41 (and cases cited therein); *Class Plaintiffs v.*

21   *City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950

22   (9th Cir. 1976).  A class action, however, may not be dismissed, compromised, or settled without the

23   approval of the court.  Fed. R. Civ. P. 23(e).

24       Judicial proceedings under Rule 23, Federal Rules of Civil Procedure, have led to defined

25   procedures and specific criteria for settlement approval in class action settlements, described in the

26   *Manual for Complex Litigation, Third* (Fed. Judicial Center 1995) ("*Manual*") § 30.41.  The *Manual*'s

27   settlement approval procedure describes three distinct steps:

28       (1)    Preliminary approval of the proposed settlement at an informal hearing;

1

2

(2)    Dissemination of mailed and/or published notice of the settlement to all affected class members; and

3

4

(3)    A "formal fairness hearing," or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

5    *Id.*, § 30.41.  The procedure, commonly used by federal courts and endorsed by the leading class action

6    commentator, Professor Herbert Newberg, safeguards class members' procedural due process rights and

7    enables the court to fulfill its role as the guardian of class interests.  *See Newberg*, § 11.22 *et seq.*

8        The decision to approve or reject a proposed settlement is committed to the trial court's sound

9    discretion; a court's decision to approve a class action settlement may be reversed only upon a strong

10    showing of "clear abuse of discretion."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998)

11    (citation omitted); *City of Seattle*, 955 F.2d at 1276 (in context of class action settlement, appellate court

12    cannot "substitute [its] notions of fairness for those of the [trial] judge and the parties to the agreement,"

13    and will reverse only upon strong showing of abuse of discretion) (citation omitted).

14        The purpose of the preliminary evaluation of class action settlements is to determine only

15    whether the proposed settlement is within the range of possible approval, and thus whether notice to the

16    class of the settlement terms and conditions and the scheduling of a formal fairness hearing is

17    worthwhile.  To grant preliminary approval of this class action settlement, the court need only find that

18    the settlement falls within the range of possible final approval, also described as "the range of

19    reasonableness."  *See, e.g., North County Contractor's Assn., Inc. v. Touchstone Ins. Svcs.*, 27 Cal.

20    App.4th 1085, 1089-90 (1994); *In re Traffic Exec. Ass'n-Eastern Railroads*, 627 F.2d 631, 633-34 (2d

21    Cir. 1980); *see also* 4 *Newberg*, § 11.25.  In sum, preliminary approval of a settlement and notice to the

22    proposed class is appropriate: "[i]f [1] the proposed settlement appears to be the product of serious,

23    informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant

24    preferential treatment to class representatives or segments of the class, and [4] falls with the range of

25    possible approval…"  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).

26        The Amended Settlement proposed by the parties meets the standards for preliminary approval.

27    ///

28    ///

### A. The Amended Settlement Was the Product of Informed, Non-Collusive Negotiations.

The Original Settlement was reached following informed, arm's-length negotiations between the parties with the help of Tony Piazza, an accomplished mediator. (Setareh Decl., ¶¶ 9, 10.) Both parties conducted investigation allowing them to assess the strengths and weaknesses of the case. (*Id.*) Although the parties did not settle at the mediation, after follow-up conversations with each side Mr. Piazza made a mediator's proposal which was accepted. (*Id.*, ¶ 10.) Thereafter, the Court granted the Parties' motion for preliminary approval of the Original Settlement. (ECF 58.) Once Centerplate discovered the class size was substantially higher than previously thought, plaintiffs declined to proceed with the Original Settlement and the Court vacated its preliminary-approval order. (ECF 62.) Once it did so, the parties further negotiated to reach the Amended Settlement.

### B. The Amended Settlement Has No "Obvious Deficiencies."

The Amended Settlement is non-reversionary and substantial. The Amended Settlement provides for a payment of $750,000 by Centerplate which is, by any account, a significant amount given the value of the claims made by plaintiffs. (Amended Settlement, § III.A.; Setareh Decl., ¶¶ 27-29.) The Settlement Share for each Class Member will be based on the Net Settlement Amount divided by the number of Class Members, which is a fair way to calculate what each Class Member should receive. If all other amounts sought are awarded, each Class Member will receive $39.86. (*Id.*, ¶ 28.) Centerplate does not oppose the Class Representative Payments ($2,500 per plaintiff) and the Class Counsel Fees and Expenses Payment, and regardless they are subject to Court approval at the Final Approval hearing. (Amended Settlement, §§ III.C.1, III.C.2.)

### C. The Amended Settlement Falls Within the Range of Possible Approval.

The Amended Settlement, including the new MSA agreed to by the parties, falls well within the range of possible approval. To evaluate this criterion, which focuses on "substantive fairness and adequacy," "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080.

The Amended Settlement—which results in a net settlement amount of $39.86 per Class Member and does not require Class Members to submit claims—compares favorably to other similar FCRA

disclosure form settlements in the Northern District and the Bay Area. *See, e.g.*, *Rohm v. Thumbtack, Inc.,* No. 16-cv-02008-HSG, 2017 WL 4642409 (N.D. Cal. Oct. 17, 2017) (granting final approval where 66,676 class members shared in a $225,000 settlement, receiving a *pro rata* share of less than $4 each); *Fraley v. Facebook, Inc.*, 966 F.Supp.2d 939, 943–44 (N.D. Cal. 2013), *aff'd sub nom. Fraley v. Batman*, 638 F. App'x 594, 597 (9th Cir. 2016) (granting final approval to a class action settlement, observing that "$15 to each claiming class member, notwithstanding the possibility of a $750 statutory penalty," was appropriate, because "[t]he monetary award of $15 was reasonable in light of the minimal (if any) harm suffered by the plaintiffs."). Accordingly, the new MSA results in a net settlement amount that is well within the range of other, similar settlements.

### 1.   Liability Is Contested, and the Amended Settlement Provides Class Members Substantial Monetary Relief.

Plaintiffs' counsel conducted a thorough investigation into the facts of this class action and diligently pursued an investigation of Class Members' claims against Centerplate. (Setareh Decl., ¶¶ 5-8.) Plaintiffs' counsel are very experienced in litigating FCRA and related cases. (*Id.*, ¶¶ 20-22.) Plaintiffs maintain that Centerplate was "willful" in its violation of the law and that it obtained credit and background reports to conduct background checks on plaintiffs and other prospective or current employees without providing legally compliant standalone disclosure forms. (ECF 14.)

For its part, Centerplate contests liability in the action, is represented by zealous counsel, and is prepared to vigorously defend against these claims if the action is not settled (Wohl Decl., ¶¶ 3, 8.) Centerplate also maintains that the settlement of *Gibbs*, the prior FCRA, bars a substantial part of plaintiffs' claims, that any background checks that Centerplate has conducted complied with applicable law and that in any event its conduct was not willful.

Importantly, the time period of the *Gibbs* settlement—August 21, 2015, through July 23, 2018—is excluded from the case. This means that, to recover, most Class Members must rely upon the five-year statute of limitations set forth in 15 U.S.C. section 1681p, which applies "5 years after the date on which the violation that is the basis for such liability occurs." Centerplate argues that Class Members knew from the forms themselves that a background check would be done. Plaintiff would have countered that no Class Member had actual knowledge that a background check had been done, and

therefore did not discover the violation so as to bar them from filing suit. This issue would have been vigorously contested both on the merits and at the class certification stage.

To be sure, if the litigation proceeds, Centerplate could face significant liability. The FCRA provides for statutory penalties of $100 to $1000 per violation. 15 U.S.C. § 1681n(a)(1)(A). Assuming that a jury or the Court found liability awarded $100 per violation, Centerplate would be liable to pay $1,174,000. If a jury or the Court found liability and awarded the maximum possible $1,000 per violation, Centerplate would be liable to pay $11,740,000.[5]

However, while plaintiffs are confident of a favorable outcome, there is substantial risk that legal developments could seriously diminish the value of their claims. Moreover, there is the risk that plaintiffs would be unable to demonstrate that there was any willful or negligent violation on behalf of Centerplate, as required by the FCRA or relevant state laws, or that Centerplate's background checks challenged by plaintiffs would not support class certification or class-wide liability.

In light of these risks for both parties, the Amended Settlement provides plaintiffs with a sizeable recovery while mitigating Centerplate's risk if the matter were to proceed. As such, the Amended Settlement is fair, reasonable, adequate, and is in the best interest of the Class in light of all known facts and circumstances, including the risk of the significant delay. (Setareh Decl., ¶ 31.) The Amended Settlement is also in the best interest of judicial efficiency in this case, as it obviously eliminates a lengthy and contested pre-certification class action lawsuit from this court's calendar. (*Id.*)

### 2. The Class Release Is Appropriate Given Plaintiffs' Claims.

As described above, as part of the Amended Settlement, Class Members will release all claims relating to the facts pled in the complaint. (Amended Settlement, § III.F.2.) These released claims appropriately track the breadth of plaintiffs' allegations in the action. (*Id.*, § III.F.2.) And, of course, Class Members have the right to opt out of the Amended Settlement by following the Election Not to Participate procedures provided for in the notice. (Amended Settlement, § III.E.3.b.) If they do so, they will not release their claims, but, of course, they also will not share in the recovery.

---

[5]    In *Lagos v. Leland Stanford Junior Univ.*, No. 15-cv-04524-KAW, 2017 WL 1113302, at *4 (N.D. Cal. Mar. 24, 2017) the district court used the $100 penalty as the comparator for assessing the reasonableness of the settlement.

1
2

### 3.    Class Counsel's Fees Requested Are Consistent with Prevailing Market Rates.[6]

3
4
5

Class counsel's fees requested by plaintiffs are reasonable and fair, because the lodestar for the work performed is $88,235.  (Setareh Decl., ¶ 23.)  The hourly rates are consistent with the prevailing market rates for attorneys of similar experience.  (*Id.*)

6

### D.    Conditional Certification of a Settlement Class Is Appropriate.

7
8
9
10
11
12
13

Pursuant to Rule 23(c)(1), Federal Rules of Civil Procedure, the Court may "make a conditional determination of whether an action should be maintained as a class action, subject to final approval at a later date."  *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 466 (E.D. Pa. 2000) (citing Fed. R. Civ. P. 23(c)(1)).    Conditional approval of the class is appropriate where the plaintiff demonstrates (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation; and one of the three requirements of Rule 23(b) also is met.  Conditional certification of the settlement class is appropriate here as all the factors of Rule 23 requirements are met.

14

### 1.    The Numerosity Requirement Is Met.

15
16
17
18
19
20
21
22
23
24
25

The numerosity requirement is met if the class is so large that joinder of all members would be impracticable.  *Gay v. Waiters' & Dairy Lunchmen's Union*, *Loc. No* 30, 489 F. Supp. 282 (N.D. Cal. 1980), *aff'd*, 694 F.2d 531 (9th Cir. 1982).  No specified number of members of class is needed to maintain class action. *Cypress v. Newport News General and Nonsectarian Hosp. Ass'n*, 375 F.2d 648 (4th Cir. 1967); *see also Pottinger v. City of Miami*, 720 F. Supp. 955 (S.D. Fla. 1989), *remanded on other grounds, 40 F.3d 1155*); *McNeill v. New York City Housing Auth.*, 719 F. Supp. 233 (S.D.N.Y. 1989); *Ellender v. Schweiker*, 550 F. Supp. 1348 (S.D.N.Y. 1982); *Gordon v. Forsyth Cty. Hosp. Auth., Inc.*, 409 F. Supp. 708, 711 (M.D.N.C. 1975), *aff'd in part, vacated in part*, 544 F.2d 748;  *Susquehanna Tp. v. H and M, Inc.*, 98 F.R.D. 658 (M.D. Pa. 1983).  However, numerosity is generally presumed for purposes of class action certification when the proposed class would have at least 40 members.  *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168 (S.D.N.Y. 2008).

26

Here, the count of approximately 11,740 Class Members satisfies the numerosity requirement.

27
28

---

[6]    This section is submitted by plaintiffs' counsel only, not Centerplate.

1

2

### 2.    For Purposes of Settlement Only, Centerplate Concedes That the Commonality and Typicality Requirements Are Met.

3

Rule 23(a) requires "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).

4

The commonality requirement has been construed permissively; not all questions of law and fact need to

5

be common.  *Hanlon*, 150 F.3d at 1019.  Here, plaintiffs allege that their claims involve common

6

questions of both fact and law regarding Centerplate's alleged failure to abide by state wage-and-hour

7

law—and Centerplate does not dispute this for the purposes of the Amended Settlement.

8

Furthermore, "Rule 23(a)(3) requires that the claims of the named parties be typical of the claims

9

of the members of the class."  *Fry*, 198 F.R.D. at 468.  "Under the rule's permissive standards,

10

representative claims are 'typical' if they are reasonably coextensive with those of absent Class

11

Members; they need not be substantially identical."  *Hanlon*, 150 F.3d at 1020.  Plaintiffs contend, and

12

for purposes of the Amended Settlement only Centerplate does not dispute, that plaintiffs' respective

13

claims are essentially identical to all other employees and applicants in the United States who applied

14

for a job, promotion or job change with Centerplate for which a background check, including a

15

consumer report, was conducted.

16

### 3.    Adequacy of Representation.

17

To meet the adequacy of representation requirement in Rule 23(a)(4), plaintiffs must show:

18

"(1) that the putative named plaintiff has the ability and the incentive to represent the claims of the class

19

vigorously, (2) that he or she has obtained adequate counsel, and (3) that there is no conflict between the

20

individual's claims and those asserted on behalf of the class."  *Fry*, 198 F.R.D. at 469.  For purposes of

21

the Amended Settlement only, Centerplate concedes that the adequacy of representation requirement is

22

met here because plaintiffs have the same interests as the remaining members of the Settlement Class,

23

there is no conflict between the named plaintiffs' claims and those of the other Class Members, and

24

plaintiffs are represented by experienced and competent counsel who have substantial experience in

25

litigating FCRA and related class actions.  (Setareh Decl., ¶¶ 19-22.)

26

### 4.    Class Certification Is Proper Under Rule 23(b)(3).

27

In addition to demonstrating the four prerequisites of Rule 23(a), class certification requires a

28

showing that certification is proper under one of the three requirements of Rule 23(b).  Here, Centerplate

agrees for purposes of the Amended Settlement only that certification of the Class is appropriate under Rule 23(b)(3) because " questions of law or fact common to class members predominate over any questions affecting only individual members, and . . .a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### E.    The Notice Packet Is Fair and Adequate.

"Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025.  A class action settlement notice "is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'"  *Churchill Village, LLC v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004) (quoting *Mendoza v. Tucson Sch. Dist. No. 1.*, 623 F.2d 1338, 1352 (9th Cir. 1980)).

Here, the Class Notice (Fourth Amended Exhibit B to the Amended Settlement) and the manner of notice is "the best notice practicable," as required under Rule 23(c)(2)(B).  All Class Members can be identified, and the Class Packet (including the Class Notice and the Election Not to Participate in Settlement Form) will be mailed directly to each Class Member using first-class U.S. Mail.  (Amended Settlement, § III.E.2.b.)  The Class Notice adequately informs Class Members of the nature of the litigation, the essential terms of the Amended Settlement, and how to object to or elect not to participate in the Amended Settlement.  (*Id.*, Fourth Amended Exh. B, Amended Exh. C.)  Further, the Class Notice identifies class counsel, specifies the amounts of the Class Representative Payments, the Class Counsel Fees and Expenses Payment that plaintiffs will seek, and explains how to obtain additional information regarding the action and the Amended Settlement.  (*Id.*).

Specifically, "[w]ithin 30 days after the District Court enters its order granting Preliminary Approval of the Settlement, Centerplate will provide to the settlement administrator an electronic database for the Class Members containing, for each Class Member, the Class Member's name, employee identification number, last known address, and Social Security number; and will provide to Class Counsel the name and last-known address of every Class Member."  (Amended Settlement, § III.E.2.a.)  The Class Notice and other materials will be mailed by the settlement administrator within 15 days following Centerplate's delivery of the Class Members' Data.  (*Id.*, § III.E.2.b.)  The settlement administrator will attempt to locate any Class Members whose Class Notices are returned as

undeliverable.  (*Id*.)  Not later than 45 days prior to the final approval hearing, the settlement administrator will submit a declaration describing efforts made to locate all Class Members.  (*Id.*, § III.E.2.e.)  In sum, the procedures set forth in the Amended Settlement provide the best possible notice to the Class Members.

### F.    Simpluris Should Be Appointed the Settlement Administrator.

The parties propose that the Court appoint Simpluris to serve as the settlement administrator. (The Court previously appointed Simpluris when it granted preliminary approval of the Original Settlement (ECF 58), and Simpluris is also the appointed settlement administrator in the companion *Raquedan* wage-and-hour class settlement.)  Simpluris is experienced in administering class action settlements, and is regularly appointed as a claims administrator by California courts to administer settlements.  Over the last two years, class counsel has engaged with Simpluris 21 times in 11 class actions.  (Setareh Decl., ¶ 33.)  The estimated fees and costs for settlement administration for the Amended Settlement are not to exceed $53,610.  (*Id.*, ¶ 32.)  The parties agree that these estimates are reasonable and adequate to provide the necessary notice of the Amended Settlement to the 11,740 Class Members.  Plaintiffs' counsel will provide an updated settlement administration expense estimate at the time the parties file the motion for final approval of the Amended Settlement.  (*Id.*)

### G.    Residual.

The entire MSA will be paid out; none will revert to Centerplate.  Settlement checks that are uncashed after 180 days and additional notice to the Class Members will be paid to the State of California Unclaimed Property Fund in the name of the Class Member.  (Amended Settlement, § III.E.11.)

### H.    Proposed Schedule.

The parties propose the following schedule for approval of the Amended Settlement, which assumes that preliminary approval is granted at the hearing on the motion:

| Date | Event |
|---|---|
| 12/20/19 | Centerplate to provide to Settlement Administrator database containing Class Member information necessary to calculate Settlement Shares (30 days after Preliminary Approval) |

| Date | Event |
|------|-------|
| 01/14/20 | Settlement Administrator to mail Class Notice Packets to all Class Members (15 days after receiving Class Member information from Centerplate) |
| 02/13/20 | Date by which plaintiffs and class counsel will submit their motion for Class Representative Payments and Class Counsel Fees and Expenses Payment (30 days after Class Notice Packets are mailed to Class Members) |
| 02/28/20 | Last day for Class Members to file with the Court and serve upon counsel for the parties objections to Settlement (45 days after Settlement Administrator mails Class Notice Packets to all Class Members) |
| | Last day for Class Members to mail Elections Not to Participate in Settlement (45 days after Settlement Administrator mails Class Notice Packets to all Class Members) |
| 03/13/20 | Date by which Settlement Administrator will provide Parties with a list of all Class Members who submitted timely and valid Elections Not to Participate Forms |
| 03/26/20 | Date by which parties will submit their joint motion for final approval of settlement |
| 04/30/20 | Hearing on joint motion for final approval of settlement |

## VI.  CONCLUSION

For the reasons set forth above, the parties respectfully request that the Court grant their joint motion in its entirety and enter an order:  (1) conditionally certifying the Settlement Class; (2) granting preliminary approval of the Amended Settlement; (3) appointing plaintiffs as the Class Representatives; (4) appointing Setareh Law Group as class counsel; (5) approving and directing the mailing of the Class Notice and related materials; (6) appointing Simpluris, Inc., as the settlement administrator; and (7) scheduling the final approval hearing for April 30, 2020, or as soon thereafter as is available and convenient for the Court.

///

///

LEGAL_US_W # 97334884.5

1        Dated:  October 8, 2019.          SHAUN SETAREH
                                         THOMAS SEGAL

2                                          FARRAH GRANT
                                         SETAREH LAW GROUP

3

4                                    By:            /s/ *Shaun Setareh*
                                         Attorneys for Plaintiffs Monique Raquedan and

5                                                  Ronald Martinez

6

7        Dated:  October 8, 2019.          JEFFREY D. WOHL
                                         ZINA DELDAR

8                                          JANA B. FITZGERALD
                                         PAUL HASTINGS LLP

9

10                                   By:            /s/ *Jeffrey D. Wohl*
                                       Attorneys for Defendants Volume Services, Inc., and

11                                             Centerplate of Delaware, Inc.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NTC OF JT MTN, JT MTN FOR PRELIMINARY
APPROVAL OF CLASS SETTLEMENT; MEMO ISO
U.S.D.C., N.D. Cal., 5:18-cv-01139-LHK

LEGAL_US_W # 97334884.5