Shaun Setareh (SBN 204514)
    Shaun@setarehlaw.com
Thomas Segal (SBN 222791)
    Thomas@setarehlaw.com
Farrah Grant (SBN 293898)
    Farrah@setarehlaw.com
SETAREH LAW GROUP
315 S. Beverly Drive, Ste. 315
Beverly Hills, California  90212
Tel:  (310) 888-7771, Fax:  (310) 888-0109

Attorneys for Plaintiffs,
MONIQUE RAQUEDAN and
RONALD MARTINEZ

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONIQUE RAQUEDAN et al., | Case No.: 5:18-cv-01139-LHK |
|        Plaintiffs, | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AN AWARD OF (1) ATTORNEYS' FEES TO CLASS COUNSEL, AND (2) ENHANCEMENT TO PLAINTIFFS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
|        v. | |
| CENTERPLATE OF DELAWARE, INC., et al., | |
|        Defendants. | |

***Hearing Information***
Date:               September 17, 2020
Time:             1:30 p.m.
Courtroom:     8

***Submitted Under Separate Cover***
1. Declaration of Shaun Setareh
2. Declaration of Ronald Martinez
3. Declaration of Monique Raquedan
4. Declaration of Mary Butler

TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................ 1

II.    BACKGROUND ................................................................................................. 3

III.   SUMMARY OF APPLICABLE LAW ................................................................ 5

       A.  The FCRA…………………………………………………………………...5

            1)  Plaintiff's Position………………………………………………………5

                 a)   The Standalone Disclosure Cause of Action…………………………6

                 b)   The Failure to Provide Summary of Rights Cause of Action………..8

            2)  Centerplate's Position………………………………………………...8

IV.  COMPARABLE SETTLEMENTS ..................................................................... 10

V.   SUMMARY OF SETTLEMENT TERMS........................................................... 13

       A.  The Settlement Class………………………………………………………13

       B.  Maximum Settlement Amount and Distributions………………………..13

       C.  Scope of the Class Member Releases……………………………………14

VI.  DISCUSSION……………………………………………………………………14

       A.  The Legal Standard for Attorney's Fee Awards…………………………………14

       B.  The Fee Award is Reasonable and Should Receive Final Approval…….………14

            1.   An Excellent Result Was Achieved on Behalf of the Class……………………14

            2.   The Experience, Reputation and Ability of Class Counsel……………………17

            3.   The Effort Required by the Litigation Justifies the Fee…………………………17

            4.   The Complexity of the Legal and Factual Issues……………………………...18

            5.   Class Counsel Assumed Substantial Risk…………………………….....18

            6.   The Fee is Reasonable Under the Common Fund Doctrine.…………………....19

                 a)   Plaintiffs' counsel is requesting the 9th Circuit's benchmark of 25% of the

                      recovery, even though the standard fee award in class actions has, over

                      time, resolved itself as one-third of the recovery in common fund

                      cases……………………………………………………………………..20

                 a)   Plaintiffs seek 25% of the Settlement Fund in fees and costs less than

**PLAINTIFFS' MOTION FOR AN AWARD OF (1) ATTORNEYS' FEES TO CLASS COUNSEL; AND (2)
ENHANCEMENT TO PLAINTIFFS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

1          $35,000…………………………………………………………21

2               7.   A Lodestar Analysis Supports the Requested Fee…………………………..21

3      C.   The Enhancement Awards are Reasonable…………………………………………….....24

4      D.   The Settlement Administrator's Expenses Should Be Approved…………………….......25

5   VII. CONCLUSION…………………………………………………………………………25

TABLE OF AUTHORITIES

**CASES**

*7-Eleven Owners for Fair Franchising v. Southland Corp.*, 85 Cal. App. 4th 1135 (2000)...................17

*Activision Sec. Litig.*, 723 F. Supp. 1373, 1377-78 (N.D. Cal. 1989)........................................................19

*Alcala v. Meyer Logistics, Inc.*, 2019 WL 4452961 (C.D. Cal. June 27, 2019)............................12

*American Eagle Ins. Co. v. King Resources Co.*, 556 F.2d 471, 478 (10th Cir. 1977) ...........................17

*Aremissoft Corp. Sec. Litig.*, 210 F.R.D. 109, 134–35 (D.N.J. 2002)  ...............................................23

*Ashby v. Farmers Ins. Co. of Or.*, 592 F. Supp. 2d 1307, 1318 (D. Or. 2008)............................6

*Bellinghausen v. Tractor Supply Co.* 306 F.R.D. 245, 264 (N.D. Cal. 2014)..........................................22

*Bihun v. AT&T Information System*, 13 Cal. App. 4th 976 (1993)..........................................................22

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) .............................................................................19

*Burnthorne-Martinez v. Sephora USA, Inc*., 2018 WL 5310833, at *3 (N.D.Cal., 2018)................20

*Caput v. NTT Security U.S. Inc.*, 2019 WL 8226078 (C.D. Cal. Dec. 9, 2019)...........................12

*Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43 (2008) ..............................................................................20

*Cundiff v. Verizon California*, 167 Cal. App. 4th 718 (2008), *accord Vizcaino*, 290 F.3d at 1047 ........21

*Di Giacomo v. Plains All Am. Pipeline, Nos.* 99–4137 & 99–4212, 2001 WL 34633373, at *10–11 (S.D. Fla. Dec. 19, 2001)........................................................................................................................23

*Del Toro v. Centene Corp.*, 2020 WL 1643861, at *4 (N.D. Cal. Apr. 2, 2020)............................8

*Feist v. Petco Animal Supplies, Inc.*, 2018 WL 6040801 (S.D. Cal. Nov. 16, 2018).................11

*Felix v. WM Bolthouse Farms, Inc*., 2020 WL 68577 (E.D. Cal. Jan. 27, 2020)......................11

*Flannery v. California Highway Patrol*, 61 Cal. App. 4th 629 (1995) ....................................................17

*Fronda v. Staffmark Holdings, Inc.*, 2018 WL 2463101, at *13 (N.D.Cal., 2018)....................20

*Ebueng v. Credit One Bank, N.A.*, No. EDCV1701991MWFASX, 2018 WL 6010355, at *4 (C.D. Cal. Feb. 20, 2018).................................................................................................................................9

*Esomonu v. Omnicare, Inc.*, No. 15-CV-02003-HSG, 2019 WL 499750, at *4-5 (N.D. Cal. Feb. 8, 2019).............................................................................................................................................10

*Estes v. L3 Technology, Inc.*, 2019 WL 141564 (S.D. Cal. Jan. 9, 2019).............................12

*Gabriel Thompson v. Centerplate of Delaware, Inc.*, U.S.D.C., N.D. Cal., No. 5:16-cv-01486-EJD......3

*Garza v. Brinderson Constructors L.P.,* Northern District of California Case No.

    5:15-cv-05742-EJD ECF No. 80..........................................................................................20

*Gilberg v. California Check Cashing LLC*, 913 F.3d 1169 (9th Cir. Jan. 29, 2019)……………….5

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998). .................................................................19

*Heritage Bond Litig.*, 2005 U.S Dist. LEXIS 13555 at *64 (C.D. Cal. June 10, 2005) ..........................17

*Hillson v. Kelly Servs.*, 2017 WL 279814 (E.D. Mich. Jan. 23, 2017)…………………………….7

*Hopkins v. Stryker Sales Corp.*, No. 11-CV-02786- LHK, 2013 WL 496358, at *5 (N.D. Cal. Feb. 6,

    2013)......................................................................................................................................22

*Immune Response Securities Litigation*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) ........................15

*Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001).................................................24

*Joseph L. Schofield, et al. v. Delta Air Lines Inc., et al;* No. 3:18-cv-00382-EMC (N.D. Cal. July 11,

    2019)……………………………………………………………………………………….10

*Ketchum v. Moses*, 24 Cal. 4th 1122 (2001)...............................................................................18

*Kutzman v. Derrel's Mini Storage, Inc.*, 2020 WL4066768 (E.D. Cal. Jan. 24, 2020)……………12

*Lagos v. Leland Stanford Junior Univ.*, No. 15-cv-04524-KAW, 2017 WL 1113302, at *4 (N.D. Cal.

    Mar. 24, 2017)……………………………………………………………………………….16

*Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19, 46 (2000)......................................................21

*Linney v. Cellular Alaska Partnership*, 1997 WL 450064, at *5 (N.D. Cal. 1997) ...............................15

*Maley v. Del Global Techs. Corp.,* 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002)....................................23

*Maguire v. Vigilant Canine Servs. Int'l, LLC*, 2016 U.S. Dist. Lexis 102093 (Cal. Aug. 3, 2016)…9

*Ortiz v. Genco, Inc.*, 2019 WL 1780577 (N.D. Cal. Apr. 23, 2019)………………………………11

*Patton v. Church & Dwight Co., Inc.*, 2019 WL 6357266 (C.D. Cal. Aug. 6, 2019)………………12

*Paul, Johnson, Alston, & Hunt v. Graulty,* 886 F.2d 268, 272 (9th Cir. 1989) .........................................20

*Philsida Gibbs v. Centerplate, Inc. et al.*, U.S.D.C., M.D. Fla., No. 8-17-cv-2187-EAK-JSS…………..2

*Raquedan et al. v. Centerplate of Delaware, Inc., et al.*, U.S.D.C., N.D. Cal………………………3

*Reynolds v. National Football League*, 584 F.2d 280 (8th Cir. 1978) .....................................................17

*Rite Aid Corp. Securities Litigation*, 396 F.3d 294, 306 (C.A.3 (Pa.),2005)………………………..19

*Rodriguez v. U.S. Healthworks,* 388 F.Supp.3d 1095 (N.D. Cal. 2019)………………………………8

**PLAINTIFFS' MOTION FOR AN AWARD OF (1) ATTORNEYS' FEES TO CLASS COUNSEL; AND (2) ENHANCEMENT TO PLAINTIFFS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

*Rubio v. Capital One Bank*, 613 F.3d 1195, 1200 (9th Cir. 2010)……………………………………9

*Ruiz v. Shamrocks Food Co.,* 2018 WL 5099509 (C.D. Cal. Aug. 22, 2018)………………………8

*Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007)……………………………………………9

*Schofield v. Delta Airlines, Inc.*, 2019 WL 955288 (N.D. Cal. Feb. 27, 2019)……………………12

*Serrano v. Priest*, 20 Cal. 3d 25 (1977) .................................................................................14

*Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 680 (D. Md. 2013)……………………7

*Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) ....................20

*Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997) ........................24

*Syed v. M-I, LLC*, 853 F.3d 492 (9th Cir. 2017.)……………………………………………………5

*Uber FCRA Litig.*, No. 14-cv-05200-EMC, 2018 WL 2047362 (N.D. Cal. May 2, 2018)………..10

*Van Vranken v. Atlantic Richfield Company*, 901 F. Supp. 294 (N.D. Cal. 1995) ...................20

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) .......................................14

*Walker v. Fred Meyer, Inc.*, No. 18-35592, 2020 WL 1316691 (9th Cir. Mar. 20, 2020)…………9

*Wershba v. Apple Computer*, 91 Cal. App. 4th 224 (2001)......................................................18


## TREATISES

7 Witkin, B.E., CALIFORNIA PROCEDURE (2007 Supp.) §§ 255-261 ......................................19

Conte & Newberg, Newberg on Class Actions (3rd Ed.) § 14.03 .............................................20

Herr, MANUAL FOR COMPLEX LITIGATION, FOURTH, § 21.71 (2008)........................................14

MANUAL FOR COMPLEX LITIGATION, FOURTH, § 21.71 at 524-27 (2008)................................14

Witkin, B.E., CALIFORNIA PROCEDURE (2007 Supp.) §§ 255-261 at 236-241 .......................19


## STATUTES

15 U.S.C. § 1681a(e)………………………………………………………………………………8

15 U.S.C. § 1681b………………………………………………………………………………5-6

15 U.S.C. § 1681d………………………………………………………………………………8

**PLAINTIFFS' MOTION FOR AN AWARD OF (1) ATTORNEYS' FEES TO CLASS COUNSEL; AND (2) ENHANCEMENT TO PLAINTIFFS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

1

15 U.S.C. § 1681i.……………………………………………………………………6

15 U.S.C. § 1681n.……………………………………………………………...5-6

15 U.S.C. § 1681p.……………………………………………………………...7

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TO THE COURT, TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE on September 17, 2020 at 1:30 p.m., in Courtroom 8 of the San Jose Courthouse of the U.S. District Court for the Northern District of California, located at 280 South 1st Street, in San Jose, California 95113, Plaintiffs Monique Raquedan and Ronald Martinez ("Plaintiffs") will and hereby does move this Court for an order: awarding fees to Class Counsel and an enhancement payment to Plaintiffs.

Plaintiffs' motion is based on this Notice, the following Memorandum of Points and Authorities, the Declaration of Shaun Setareh, the Declaration of  Ronald Martinez, the Declaration of Monique Raquedan and the Declaration of Mary Butler submitted herewith, all other pleadings and papers on file in this action, and any oral argument or other matter that may be considered by the Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

The Settlement Fund here provides substantial relief in the form of $750,000 on a non-reversionary basis. Plaintiffs allege that they and the Class Members were subject to a background check, including a consumer report, in connection with their application for a job, promotion or job change with Centerplate that was conducted in violation of applicable law. No Settlement Class Members will have to make claims.  Instead, checks will be mailed directly to them.

The Settlement Fund here provides $750,000 for 11,731 class members. This excellent settlement result was achieved after hard fought litigation, including briefing regarding Defendant's motion to dismiss, a mediation session and a renegotiation of the settlement amount after the parties received additional information about the class size not available at the mediation. The case was very risky, considering Defendant's defenses.

Plaintiffs request that the Court award Plaintiffs' counsel $187,500 in fees, which is 25% of the gross settlement and roughly 1.52 times the actual lodestar of Plaintiffs' counsel and $7,650.58 in costs. The fee award requested here is the Ninth Circuit's 25 percent benchmark, and the fee request is appropriate given the excellent result obtained, the experience of counsel and the hours of work

performed.

This is a background check class action on behalf of all employees and applicants in the United States who applied for a job, promotion or job change with Centerplate for which a background check, including a consumer report, was conducted at any time from February 22, 2011, to March 31, 2019, excluding those individuals who already have resolved all the claims asserted in the Action, whether by settlement or adjudication, including, but not limited to, the settlement in *Philsida Gibbs v. Centerplate, Inc. et al.*, U.S.D.C., M.D. Fla., No. 8-17-cv-2187-EAK-JSS. The Settlement (which the Court granted preliminary approval of on October 9, 2019 provides for a Maximum Settlement Amount ("MSA") of $750,000. Class members will not have to make a claim but instead will be mailed checks directly.

No money will revert to the Defendant, instead any amount from uncashed checks will be transmitted to the State of California Controller's Unclaimed Property Division in the name of the Class Members who did not cash their checks. The average Settlement Share to be paid is approximately $40.09. (Declaration of Mary Butler "Butler Decl." ¶ 15.)

In an FCRA case, a prevailing plaintiff will receive statutory damages of between $100 and $1,000. 15 U.S.C. § 1681n(a)(1)(A.) The settlement amount of $750,000 is a good result for the class. In this settlement the gross amount per class member is $63.93 ($750,000/11,731). This compares favorably to other recent FCRA settlements in California federal district courts.

Plaintiffs achieved an excellent result for the class given that the operative claims are narrowly defined and this case was vigorously defended by experienced and skilled defense counsel. The Settlement was the result of a thorough factual and legal analyses and arms-length negotiations. The Agreement represents a fair, adequate and reasonable compromise of disputed claims. Indeed, Plaintiffs obtained an excellent result for class members in the face of formidable opposition. Likewise, the Agreement's attorneys' fees and costs provisions are reasonable and consistent with Ninth Circuit precedent.

Through this Motion, Plaintiffs request an award of attorney's fees and costs to Class Counsel and an enhancement award to Plaintiffs. On a percentage or lodestar basis, the fee award sought by this Motion is within the range of reasonableness. The costs incurred were only those costs necessary to

successfully resolve this matter. Plaintiff also requests that the Court approve the Settlement Administrator's expenses in the amount of $53,610, and an incentive award in the amount of $2,500 each for Monique Raquedan and Ronald Martinez.[1]

## II.     BACKGROUND

At the times relevant to the action, Centerplate provided concession services at sports stadiums and other venues at multiple locations across the nation, including 11 locations in California, such as AT&T Park in San Francisco, Levi's Stadium in Santa Clara and Qualcomm Stadium in San Diego.

Plaintiffs brought this class action on behalf of all employees and applicants in the United States who applied for a job, promotion or job change with Centerplate for which a background check, including a consumer report, that was conducted during the applicable limitations period. Their allegations primarily concern the notice, disclosure or consent form that is included as part of the background checks. Plaintiffs allege that Centerplate failed to comply with the applicable law, including the FCRA as well as its California counterparts, the California Investigative Consumer Reporting Agencies Act and the California Consumer Credit Reporting Agencies Act, and California Business and Professions Code section 17200 *et seq.*

Centerplate denies plaintiffs' allegations. Among other things, Centerplate contends that any background check that Centerplate conducted on any employee or applicant was done in compliance with applicable law; and that a prior class settlement and release, in *Gabriel Thompson v. Centerplate of Delaware, Inc.*, U.S.D.C., N.D. Cal., No. 5:16-cv-01486-EJD, bars a substantial part of plaintiffs' claims. Centerplate further denies that, for any purpose other than settling the action, plaintiffs' claims are not appropriate for class treatment.

In the course of the litigation, the parties exchanged substantial information, including Centerplate's background check policies and other authorization forms related to employment with Centerplate. (Declaration of Shaun Setareh ISO Motion for Preliminary Approval ECF No. 66.1, ¶¶

---

[1] This motion for attorneys' fees, costs and class representative enhancement awards is being filed at least 14 days prior to the deadline for class members to object or opt out of the settlement, and by the deadline set by the court in ECF No. 80. Plaintiffs will submit a proposed order regarding this motion and the motion for final approval when the motion for final approval is filed.

5-8.)

In a wage-and-hour class action involving the same parties, *Raquedan et al. v. Centerplate of Delaware, Inc., et al.*, U.S.D.C., N.D. Cal., No. 17-cv-03828-LHK, the Court ordered the parties to mediation. (ECF 31.) The parties then agreed, during a meet-and-confer, to mediate this action at the same time. Despite a full day of mediation with mediator Antonio Piaza, at which the parties engaged in good-faith, arms' length bargaining, and realistically assessed the strengths and weakness of their positions, the case initially did not settle. Mediator Antonio Piazza persisted, however, and after further discussions with both sides he eventually made a mediator's proposal, which the parties accepted. (Declaration of Shaun Setareh ISO Motion for Preliminary Approval ECF No. 66.1, ¶¶ 9, 10.)

The MSA under the Original Settlement was $450,000. (ECF 43.) Plaintiffs' counsel agreed to the $450,000 MSA based on the information provided before the mediation by Centerplate's prior attorneys indicating that the class size was 5,801 people. (Declaration of Shaun Setareh ISO Motion for Preliminary Approval ECF No. 66.1, ¶¶ 11, 35.)

After the MSA was agreed to but before the Settlement Agreement was signed, Centerplate reported that the class had approximately 1,901 class members. (Declaration of Jeffrey D. Wohl in Support of Joint Motion for Preliminary Approval of Fourth Amended Class Action Settlement, Conditional Certification of Class, Approval of Class Notice, and Setting of Final Approval Hearing ("Wohl Decl.") ECF 66.2, ¶ 5.)

Plaintiffs' counsel was surprised that the class size was 1,901 rather than the 5,801 originally represented. (Setareh Decl. ECF No. 66.1 ¶ 36.) However, they did not see an issue because the effect of a lower class size was to increase the recovery for each class member substantially. (*Id.*)

Following the Court's preliminary approval of the Original Settlement (ECF 58), Centerplate worked diligently to identify third-party vendors to obtain the class data and confirm the class size. (Wohl Decl., ECF No. 66.2 ¶ 6.) Due to the unexpected difficulty obtaining records from vendors, this process took some time. Once a final count was obtained, to Centerplate's surprise, the total number of class members was 11,740. (*Id.*.)

Based on this change in class size, the parties asked the Court to continue the

preliminary approval hearing so that they could meet and confer about what should be done about the increased class size, and the Court vacated its prior order granting preliminary approval. (ECF 62.) The result is the Fourth Amended Settlement, which includes the MSA of $750,000, a two-thirds increase over the prior MSA. (ECF 66.1, Exhibit 1, Amended Settlement, § III.A.)

## III.    SUMMARY OF APPLICABLE LAW

### A.    The FCRA

The FCRA, 15 U.S.C. § 1681b(b), provides requirements for employer documents and mandates specified policies and practices when they use "consumer reports" to assess the qualifications of prospective and current employees. Pursuant to section 1681b(b) of the FCRA, no person may obtain a consumer report for employment purposes without providing a "clear and conspicuous disclosure ... in a document that consists solely of the disclosure." 15 U.S.C. § 1681b(b)(2)(A)(i). The person obtaining the consumer report must also obtain the consumer's written authorization, which can be done as part of the disclosure form. 15 U.S.C. § 1681b(b)(2)(A)(ii).

The Ninth Circuit has held that the required disclosure must be in "a document that consists solely of the disclosure." *Syed v. M-I, LLC*, 853 F.3d 492 (9th Cir. 2017.) In *Syed*, the FCRA disclosure at issue contained a term purporting to waive any liability of the employer related to the background check. (*Id.* at 498.) The Ninth Circuit held that the inclusion of the liability release was impermissible.

While *Syed* involved a liability release, plaintiffs contend that its holding is broader. Plaintiffs contend that the *sole* additional element that may be included with the disclosure is an authorization, "which authorization may be made on the document referred to in clause (i). ..." 15 U.S.C. § 1681b(b)(2)(A)(ii).[2] Centerplate does not necessarily agree with this interpretation of *Syed* or the law.

---

[2] Plaintiffs also believe that this contention is bolstered by a case decided after the mediation, *Gilberg v. California Check Cashing LLC*, 913 F.3d 1169 (9th Cir. Jan. 29, 2019), which held that inclusion of state law notices in the disclosure form violates the FCRA. Centerplate does not agree with this interpretation of *Gilberg*.

A plaintiff may be entitled to statutory and punitive damages when a defendant has willfully violated the provisions of the FCRA. 15 U.S.C. §§ 1681n(a)(1)(A); (a)(2).

(1)     **Plaintiffs' Position**

The complaint here states two separate FCRA causes of action: the Standalone Disclosure Cause of Action and the Failure to Provide Summary of Rights Cause of Action.

(a)     **The Standalone Disclosure Cause of Action**

This cause of action asserts that the FCRA disclosure form used by Centerplate was unlawful because it improperly contained extraneous language in violation of the statutory mandate that the disclosure be in a document that consists solely of the disclosure. 15 U.S.C. § 1681b(2)(A)(i).

The maximum exposure under this cause of action is $11,731,000. The FCRA provides for willful damages per violation of a minimum of $100 per violation and a maximum of $1,000 per violation. 15 U.S.C. § 1681n. Therefore, if the class were to prevail at trial, the minimum recovery would be $1,173,100 and the maximum recovery would be $11,731,000.

The FCRA itself provides no standard for a jury or Court to decide between an award of $100 and $1,000 per violation. In determining the amount of statutory damages to award under the FCRA, courts have looked at "the importance, and hence the value of the rights and protections" involved in the case. *Ashby v. Farmers Ins. Co. of Or.*, 592 F. Supp. 2d 1307, 1318 (D. Or. 2008). For example, among the conduct prohibited by the FCRA is the inclusion of inaccurate information in consumer reports after the consumer has disputed the information. 15 U.S.C. § 1681i. It is reasonable to assume that a statutory damages award would be significantly higher where the underlying grievance was that inaccurate, seriously derogatory information is included in a consumer report, even though the consumer demonstrated that it was inaccurate. Another prohibited act is including arrest records that are more than seven years old in a consumer report. 15 U.S.C. § 1681c(a)(2). It would be reasonable to assume that a violation of this section would result in a higher statutory damages award than the alleged conduct at issue here which has resulted in no actual damages.

To plaintiffs' counsel's knowledge, no FCRA stand-alone disclosure case has ever gone to

verdict. Therefore, an estimate of the likely award is admittedly somewhat speculative. However, district court decisions have indicated that the minimum of $100 is the proper comparator in standalone disclosure cases. As a district court explained:

> A review of Plaintiffs' claim indicates that, assuming success, the award at trial would be around $100. While the inclusion of the waiver and disclaimer might have been inconsistent with the language of the stand-alone disclosure requirement, it was arguably consistent with the purpose of that provision. *See* Letter from Cynthia Lamb, Investigator, Div. of Credit Practices, Fed. Trade Comm'n, to Richard Steer, Jones Hirsch Connors & Bull, P.C. (Oct. 21, 1997), 1997 WL 33791227 (F.T.C.), 1 ("The reason for specifying a stand-alone disclosure was so that consumers will not be distracted by additional information at the time the disclosure is given."). ... As such, the violation of the FCRA asserted in this case is only technical in nature, and so the Court would expect class members to receive around $100—or less—should they prevail at trial. *See Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 680 (D. Md. 2013) ("[T]his case involves allegations of technical FCRA violations, which creates the risk that even if a jury awarded the minimum requisite statutory damages, i.e., $100 to each of the individual class members, the court may find remitter/reduction appropriate.").

*Hillson v. Kelly Servs.*, 2017 WL 279814 (E.D. Mich. Jan. 23, 2017) (approving settlement where statutory damages award ranged from $14 to $41 per class member).

As to the risks of this cause of action, Plaintiffs' counsel believes that the claims at issue are very strong on the merits. Ninth Circuit authority has made it very clear that any extraneous information included on the disclosure form is a violation of the FCRA. *See Syed v. M-I LLC*, 853 F.3d 492 (9th Cir. 2017); *Gilberg v. Cal. Check Cashing, LLC,* 913 F.3d 1169 (9th Cir. 2019). The forms at issue here contain liability releases similar to the form at issue in *Syed* and state law rights notices similar to the form at issue in *Gilberg*.

While proof of a willful violation is required for the recovery of statutory damages, *Syed* holds that: "In light of the clear statutory language that the disclosure document must consist 'solely' of the disclosure, a prospective employer's violation of the FCRA is 'willful' when the employer includes terms in addition to the disclosure, such as the liability waiver here ..." *Syed*, *supra* at 496.

However, there are two issues that create a risk that the class would not be able to recover. The first issue is the statute of limitations. The FCRA has a two- and five-year statute of limitations with the two-year applying from the date of discovery of the violation, and the five-

year being an absolute bar. 15 U.S.C. § 1681p. A prior class action settlement, *Gibbs*, settled claims for a nationwide class within the two-year statute of limitations. The named plaintiffs and most putative class members are within the five-year statute of limitations, which would apply only if they did not discover their claims within the two-year timeframe. There was a considerable risk that either on summary judgment or at trial, the claims would be deemed time-barred. *See, e.g., Rodriguez v. U.S. Healthworks,* 388 F.Supp.3d 1095 (N.D. Cal. 2019) (granting summary judgment of FCRA claim that was filed within five rather than two years; *Ruiz v. Shamrocks Food Co.,* 2018 WL 5099509 (C.D. Cal. Aug. 22, 2018) (same).

The other issue creating a risk is the question of federal subject matter jurisdiction over a claim where plaintiffs' statutory privacy rights have been violated but no tangible economic injury has occurred. This Court has held that standing exists where the plaintiff can allege that they were confused by the disclosure form and would not have signed it if they had known that they were authorizing a background check. *Del Toro v. Centene Corp.*, 2020 WL 1643861, at *4 (N.D. Cal. Apr. 2, 2020). However, this is an area where the law is in flux and there is an absence of clear guidance from the U.S. Supreme Court or the Ninth Circuit.

In the event that plaintiffs were to, at some point, lose on the Article III standing question, the result would be dismissal without prejudice to re-filing in state court. But, in state court, the *Syed* and *Gilberg* decisions referenced above would not be binding on the trial court, thereby making it less likely that plaintiffs would prevail on the merits.

(b)   **The Failure to Provide Summary of Rights Cause of Action**

This cause of action applies where the employer has performed an investigative consumer report on the job applicant. 15 U.S.C. § 1681d. An "investigative consumer report" is a report which involved personal interviews with neighbors, friends or associates of the consumer or job applicant. 15 U.S.C. § 1681a(e).

Centerplate provided information in discovery indicating that it did provide a Summary of Rights to job applicants that is compliant with the statutory requirements. Declaration of Shaun Setareh in Support of Second Supplement to Joint Motion for Preliminary Approval of

**PLAINTIFFS' MOTION FOR AN AWARD OF (1) ATTORNEY'S FEES TO CLASS COUNSEL; AND (2) ENHANCEMENT TO PLAINTIFFS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Fourth Amended Class Action Settlement ECF 79, ¶ 17. As such, the exposure on this claim would be zero.

(2)     **Centerplate's Position**

Centerplate denies that its disclosures failed to comply with the FCRA. Centerplate maintains that its disclosures were clear and conspicuous, because they were "reasonably understandable" and "readily noticeable to the consumer." *Rubio v. Capital One Bank*, 613 F.3d 1195, 1200 (9th Cir. 2010). Even if its disclosures did not match evolving standards of disclosure enunciated by the courts, including those decided long after many of the disclosures were used,[3] the noncompliance was not willful because it did not arise from a "reckless disregard" of a consumer's rights under the FCRA. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007) (violation of FCRA violation is "willful" if defendant "ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.")

Centerplate also agrees with Plaintiffs that potential weaknesses of their case include the applicability of the shorter, two-year statute of limitations, and Plaintiffs' lack of standing.

With respect to damages, Plaintiffs never contended that they or any class member sustained actual damages as a result of any alleged deficiency in the disclosures. Under the FCRA, where there are no actual damages, a plaintiff can sue for "statutory damages" of $100 to $1,000. 15 U.S.C. § 1681n(a)(1)(A).[4]

Here, statutory damages turn on Plaintiffs' ability to prove a willful violation, which Centerplate disputes, along with contesting that its disclosures were noncompliant. In particular,

---

[3] Several of these cases were decided in 2017 and after, including *Syed v. M-I, LLC*, 853 F.3d 492 (9th Cir. 2017); *Gilberg v. Cal Check Cashing Stores, LLC*, 913 F.3d 1169 (9th Cir. 2019); *Walker v. Fred Meyer, Inc.*, No. 18-35592, 2020 WL 1316691 (9th Cir. Mar. 20, 2020).

[4] Although courts have entered default judgments on FCRA claims (as well as state law counterparts), Centerplate is not aware of any cases with allegations similar to those here. *See, e.g., Ebueng v. Credit One Bank, N.A.*, No. EDCV1701991MWFASX, 2018 WL 6010355, at *4 (C.D. Cal. Feb. 20, 2018) (awarding $1,000 in statutory damages on FCRA claim, because plaintiff alleged that defendant furnished information about him to consumer reporting agency after being notified that information was inaccurate); *Maguire v. Vigilant Canine Servs. Int'l, LLC*, 2016 U.S. Dist. Lexis 102093 (E.D. Cal. Aug. 3, 2016) (granting default judgment of $214,009.51, but where plaintiff made numerous claims besides one under FCRA and state equivalent, including claims for breach of contract, failure to pay timely wages, and unfair business practices).

**PLAINTIFFS' MOTION FOR AN AWARD OF (1) ATTORNEY'S FEES TO CLASS COUNSEL; AND (2) ENHANCEMENT TO PLAINTIFFS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

as the Winarski Declaration explains, background checks were conducted at the local level among Centerplate's approximately 150 units across the country, rather than in a centralized way. Declaration of Winarski ECF No. 78, ¶ 4. This local and varied control of the process negates the notion that Centerplate, as an entity, acted willfully.

Assuming, *arguendo*, that Plaintiffs were able to demonstrate willfulness, based on a class size of 11,731, the statutory damages available on their FCRA cause of action would range from $1,173,100 to $11,731,000.

In light of these circumstances, the Amended Settlement in this action—which results in a net settlement amount of about $40.09 per Class Member and does not require Class Members to submit claims— is fair and reasonable, and reflects the several weaknesses in Plaintiffs' case, including the difficulty in showing that a class should be certified, that Centerplate's disclosures were noncompliant and, most importantly for these purposes, that if they were noncompliant, Centerplate acted willfully, along with the statute-of-limitations and standing issues. It compares favorably to other similar FCRA disclosure settlements in the Northern District and the Bay Area. *See, e.g.*, *Joseph L. Schofield, et al. v. Delta Air Lines Inc., et al;* No. 3:18-cv-00382-EMC (N.D. Cal. July 11, 2019) (granting final approval for settlement of FCRA and state law claims where 44,100 class members shared in $2.3 million settlement, receiving a settlement share of approximately $52.15 to each class member); *Esomonu v. Omnicare, Inc.*, No. 15-CV-02003-HSG, 2019 WL 499750, at *4-5 (N.D. Cal. Feb. 8, 2019) (granting final approval for settlement of FCRA and state law claims where "[e]ach participating class member will receive an estimated $17.31" and observing that, though the figure is "is substantially below the range of potential statutory damages, [it is] commensurate with recoveries approved by other California district courts ... [a]nd as discussed, recovery of statutory damages under the FCRA requires a high threshold showing that the Defendant acted willfully."); *In re Uber FCRA Litig.*, No. 14-cv-05200-EMC, 2018 WL 2047362 (N.D. Cal. May 2, 2018) (granting final approval for settlement of FCRA and state law claims where 1,025,954 class members in two subgroups shared in a gross settlement of $7.5 million, with one group receiving a settlement share of approximately $73.99 per class member, and the other approximately $32.15).

## IV. COMPARABLE SETTLEMENTS

So that the Court can make a comparison between this settlement and settlements in other standalone disclosure cases, the below is a list compiled from Westlaw of FCRA standalone disclosure settlements in California federal district courts going back two years from April 13, 2020. The prior Centerplate FCRA settlement, *Gibbs*, is also included in this list. Where the opinion states a net settlement amount as well as a gross settlement amount, both are provided:

- *Gibbs v. Centerplate, Inc., et al.*, No. 8-17-cv-2187-EAK-JSS (M.D. Fla. Jan. 7, 2019). 5,895 settlement class members. Gross settlement fund of $598,500 for a gross settlement amount per class member of $100.

- *In re Uber FCRA Litigation*, No. 14-cv-05200-EMC, 2018 WL 2047362 (N.D. Cal. May 2, 2018). 1,025,924 settlement class members (601,829 in Court class; 424,125 in ADR class). Gross settlement amount of $7.5 million. Approximate net settlement amount of $73.99 per Court class member, and $32.15 per ADR class member.[5]

- *Esomonu v. Omnicare, Inc.*, 2019 WL 499750 (N.D. Cal. Feb. 8, 2019). Gross settlement amount of $1.3 million for 43,069 class members. Gross settlement amount of $30.18 per class member, and net settlement amount of $17.31 per class member.

- *Feist v. Petco Animal Supplies, Inc.*, 2018 WL 6040801 (S.D. Cal. Nov. 16, 2018). Gross settlement amount of $1,200,000 for 37,000 class members or gross settlement amount of $32.43 per class member.

- *Felix v. WM Bolthouse Farms, Inc.*, 2020 WL 68577 (E.D. Cal. Jan. 27, 2020). 1245 settlement class members. Gross settlement amount of $118,275 and net

---

[5] *Uber* was a claims-made settlement where the net settlement fund was shared between all who made claims; the per-class member amounts identified by the court in its order granting final approval of the settlement represent those class members who actually made claims. This Amended Settlement here is not claims-made.

settlement amount of $54,350, meaning that the gross payment per class member was $95 and the net settlement amount was $43.65.

- *Ortiz v. Genco, Inc.*, 2019 WL 1780577 (N.D. Cal. Apr. 23, 2019). FCRA class of 24,425 class members. Net settlement fund for FCRA class of $1,142,845.15 for net settlement payments of $46.78 per class member. (The case also involved separate Labor Code class.)

- *Syed v. M-I LLC*, 2019 WL 3564467 (E.D. Cal. Mar. 12, 2019). 4,324 settlement class members. Net settlement fund of $201,000 for net settlement payments of $46.84 per class member.

- *Caput v. NTT Security U.S. Inc.*, 2019 WL 8226078 (C.D. Cal. Dec. 9, 2019). 672 settlement class members. Gross settlement amount of $55,000 and net settlement amount of $31,789.68, meaning that the gross settlement amount per class member was $81.84 and the net settlement amount per class member was $47.30.

- *Alcala v. Meyer Logistics, Inc.*, 2019 WL 4452961 (C.D. Cal. June 27, 2019). FCRA class of 1,950 class members. Net settlement amount of $100,833.5 for FCRA class for net settlement payment of $51.70 per class member. (The case also involved separate Labor Code class.)

- *Schofield v. Delta Airlines, Inc.*, 2019 WL 955288 (N.D. Cal. Feb. 27, 2019). Gross settlement amount of $2.3 million for 44,000 class members for gross settlement payment of $52.27 per class member.

- *Estes v. L3 Technology, Inc.*, 2019 WL 141564 (S.D. Cal. Jan. 9, 2019). FCRA class of 764 class members. Net settlement amount for FCRA class of $57,300 for net settlement amount of $75 per class member. (Case also involved separate Labor Code class.)

- *Kutzman v. Derrel's Mini Storage, Inc.*, 2020 WL4066768 (E.D. Cal. Jan. 24, 2020). Net settlement payment of $100 per class member to FCRA class of 97 for total net settlement amount of $9,700. (The case also involved separate Labor Code class.)

- *Patton v. Church & Dwight Co, Inc.*, 2019 WL 6357266 (C.D. Cal. Aug. 6, 2019). 2,991 settlement class members. Gross settlement amount of $300,000 for gross settlement amount of $100.30 per class member.

The settlement amount of $750,000 is a good result for the class. In this settlement the gross amount per class member is $63.93 ($750,000/ 11,731). This compares favorably to other recent FCRA settlements in California federal district court.

## V.   SUMMARY OF SETTLEMENT TERMS

The following is a summary of the material elements of the Settlement.

### A.   The Settlement Class.

The class to be conditionally certified is defined as:

All employees and applicants in the United States who applied for a job, promotion or job change with Centerplate for which a background check, including a consumer report, was conducted at any time from February 22, 2011, to March 31, 2019, excluding those individuals who already have resolved all the claims asserted in the Action, whether by settlement or adjudication, including, but not limited to, the settlement in *Philsida Gibbs v. Centerplate, Inc. et al.*, U.S.D.C., M.D. Fla., No. 8-17-cv-2187-EAK-JSS.)

(ECF No. 80 - Order Granting Preliminary Approval 4:14-19.)

### B.   Maximum Settlement Amount and Distributions.

Centerplate will pay an MSA of $750,000.00. (Amended Settlement ECF No. 66.1, exhibit 1, § III.A.) The MSA covers (1) class representative payments of $5,000 to plaintiffs ($2,500 each), in compensation for having initiated and prosecuted the action and undertaken the risk of payment of costs in the event this matter had not been successfully concluded; (2) Settlement Shares paid to Class Members; (3) the Class Counsel Fees and Expenses Payment of not more than $187,500 (25% of the MSA), with costs not to exceed $35,000, to compensate plaintiffs' counsel for all work performed thus far and all work remaining to be performed in documenting and administrating the Amended Settlement and securing Court approval; (4) the fees and expenses of the settlement administrator, not to exceed $53,610; and (6) any other fees or expenses (other than Class Counsel Fees and Expenses Payment) incurred in implementing the terms and conditions of the settlement agreement and securing the judgment pursuant to that

Case No.: 5:18-cv-01139-LHK          Page 13          *Raquedan v. Centerplate of Delaware Inc*

PLAINTIFFS' MOTION FOR AN AWARD OF (1) ATTORNEY'S FEES TO CLASS COUNSEL; AND (2) ENHANCEMENT TO PLAINTIFFS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

agreement. (*Id.*, § III.A.) After all court-approved deductions from the MSA, it is estimated that a Net Settlement Amount of $468,890 will be available to pay the Settlement Shares of all Class Members. (Butler Decl. ¶ 10). If the Court awards all the requested amounts, each Class Member's Settlement Share is estimated to be $40.09. (*Id*. ¶ 11).

The entire MSA will be paid out; none of it will revert to Centerplate. Settlement checks that are uncashed after 180 days and additional notice to the Class Members will be paid to the State of California's Unclaimed Property Fund in the name of the Class Member. (*Id.*, § III.E.11).

### C.   Scope of the Class Member Releases

Class members will release all claims against Centerplate and its related persons and entities that were raised or could have been raised in the action based on the factual allegations made in the action or otherwise based on or related to the allegations that Centerplate conducted background checks, including a consumer report, in connection with application for a job, promotion or job change, without complying with applicable law. (Amended Settlement, § III.F.2.)

A true and correct copy of the Fourth Amended Settlement Agreement is filed as ECF No. 66-1, exhibit 1.

## VI.   DISCUSSION

### A.   The Legal Standard for Attorneys' Fee Awards

California and the Ninth Circuit, and all federal courts, for that matter, use similar criteria to assess a fee request attendant to a motion for final approval, including: (i) the results achieved on behalf of the class; (ii) class counsel's experience, reputation and ability; (iii) the time and labor required by the litigation; (iv) whether class counsel was precluded from other work; (v) the complexity of the litigation; and (vii) the contingent nature of the litigation. *See Serrano v. Priest*, 20 Cal. 3d 25, 49 (1977); *accord Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002) (identifying similar criteria); *see also* Herr, Manual for Complex Litigation, Fourth, § 21.71 at 524-27 (2008) (survey of federal criteria similar to California criteria).  This fee request here is in line with the 25% benchmark and should be granted.

**B.**     The Fee Award Is Reasonable and Should Receive Final Approval

**1.**     An Excellent Result Was Achieved on Behalf of the Class

The benefit achieved on behalf of class members defines a primary yardstick against which any fee motion is measured.  *See Serrano*, 20 Cal. 3d at 49; *accord Vizcaino*, 290 F.3d at 1048.

The Parties reached a Settlement in good faith after negotiating at arm's length with a professional mediator and receiving a mediator's proposal.  (Setareh Decl. ECF No. 66.1, ¶ 10.)  Settlement occurred only after investigation and discovery commenced. In the course of the litigation, the parties exchanged substantial information, including Centerplate's background check policies and other authorization forms related to employment with Centerplate. (Setareh Decl.. ECF No. 66.1, ¶¶ 5-8.) And, notably, approval of a class action settlement does not require that discovery be exhaustive.  *See*, *e.g.*, *In re Immune Response Securities Litigation*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) (settlement approved where informal discovery gave the parties a clear view of the strength and weaknesses of their cases).  The fact that settlement results from arm's length negotiations following "relevant discovery" creates "a presumption that the agreement is fair."  *Linney v. Cellular Alaska Partnership*, 1997 WL 450064, at *5 (N.D. Cal. 1997).

With respect to the claims asserted on behalf of the settlement Class in this case, there are significant risks that support the compromise amount. While Plaintiffs are confident of a favorable outcome, there is substantial risk that legal developments could seriously diminish the value of their claims. Moreover, there is the risk that Plaintiffs would be unable to demonstrate that there was any willful or negligent violation on behalf of Centerplate, as required by the FCRA or relevant state laws, or that Centerplate's background checks challenged by Plaintiffs would not support class certification or class-wide liability.

Even if the Court granted class certification, prevailing at trial would require further risky litigation and likely involve an expensive battle of the experts.  Defendant would certainly appeal any verdict favorable to the class, resulting in further delay and the risk that a favorable verdict would be overturned on appeal.

When facing an uncertain resolution of the claims in this Action, settlement is all the more reasonable.  Indeed, the Maximum Settlement Amount will provide Settlement Class

members with real and timely payments as opposed to the largely speculative awards that may or may not otherwise be obtained based on the various litigation risks going forward should the proposed Settlement not be approved. (Setareh Decl., ¶¶ 45-51.)  Continued litigation of this lawsuit presented Plaintiffs and Defendant with substantial legal risks that were (and continue to be) very difficult to assess.

In light of the uncertainties of protracted litigation, the settlement amount reflects a fair and reasonable recovery for the settlement Class Members.  (Setareh Decl. ¶ 53.)  The settlement amount is, of course, a compromise figure.  (*Id.* ¶ 52.)  By necessity it took into account risks related to liability, damages, and all the defenses asserted by the Defendant.  (*Id.*)  Moreover, each settlement Class Member will be given the opportunity to opt out of the Settlement, allowing those who feel they have claims that are greater than the benefits they can receive under this Settlement, to pursue their own claims. (*Id.*)  With 11,731 class members in the class, the gross recovery for each class member is projected to be $63.93 per employee ($750,000/ 11,731).  The average Settlement Share to be paid is approximately $40.09.  (Butler Decl. ¶ 15.) The value of this amount reflects a fair compromise well within the range of reasonableness. Given the strong case that Defendant could bring to bear to challenge liability, this is not an inconsequential sum in these challenging economic times.  (Setareh Decl., ¶ 52.)

After analyzing the claims in this matter, Plaintiffs have concluded that the value of this Settlement is fair, adequate and reasonable.  The FCRA provides for statutory penalties of $100 to $1,000 per violation. 15 U.S.C. § 1681n(a)(1)(A). Assuming that a jury or the Court found liability awarded $100 per violation, Centerplate would be liable to pay $1,731,000. If a jury or the Court found liability and awarded the maximum possible $1,000 per violation, Centerplate would be liable to pay $11,731,000.[6] Here, the $750,000 non-reversionary settlement amount is 43.32% of the amount that would be awarded if the jury awarded a $100 penalty per violation. While Plaintiffs would certainly have preferred to recover more (and Defendant would have preferred to pay less), this outcome is favorable considering the risks of further litigation.  On that basis, it would be unwise to pass up this

---

[6] In *Lagos v. Leland Stanford Junior Univ.*, No. 15-cv-04524-KAW, 2017 WL 1113302, at *4 (N.D. Cal. Mar. 24, 2017) the district court used the $100 penalty as the comparator for assessing the reasonableness of the settlement.

settlement opportunity.

How class members respond to a class action settlement is typically addressed in concert with courts' assessments of a settlement's overall benefit to class members. *See generally*, *Vizcaino*, *supra*. State and federal courts alike take the measure of a settlement's "fairness" with reference to the class members' reaction, and specifically the extent to which class members object, and through their objections imply a settlement's unfairness. *See, e.g.*, *7-Eleven Owners for Fair Franchising v. Southland Corp.*, 85 Cal. App. 4th 1135, 1152-53 (2000) (only nine objectors from a class of 5,454 was an "overwhelmingly positive" fact that supported approval of the settlement); *Reynolds v. National Football League*, 584 F.2d 280 (8th Cir. 1978) (16 objectors out of 5,400 strongest evidence of no dissatisfaction with settlement among class members); *American Eagle Ins. Co. v. King Resources Co.*, 556 F.2d 471, 478 (10th Cir. 1977) (only one objector "of striking significance and import"). The deadline to object has not yet passed. When the final approval motion is filed Plaintiffs will provide updated information on the number of objections.

### 2.     The Experience, Reputation, and Ability of Class Counsel

California law also recognizes the "skill and experience of attorneys" as appropriate criteria for evaluating a fee motion. *Flannery v. California Highway Patrol*, 61 Cal. App. 4th 629, 647 (1995); *accord In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491 (W.D. Pa. 2003) ("skill and efficiency of counsel" among fee motion criteria); *In re Heritage Bond Litig.*, 2005 U.S Dist. LEXIS 13555 at *64 (C.D. Cal. June 10, 2005) (Considering "the quality of Class Counsel's effort, experience and skill"). Class Counsel has had substantial experience with the causes of action here and has regularly litigated FCRA class actions. (Setareh Decl., at ¶¶ 4-11).

### 3.     The Effort Required by the Litigation Justifies the Fee

California and federal law also look to the time and labor required in connection with the litigation and settlement of a class action for which final approval is sought. *See Serrano*, 20 Cal. 3d at 49, *accord Vizcaino*, 290 F.3d at 1048-50. Compared to the reasonable value of the claims, Class Counsel expended substantial effort to achieve the settlement result. (Setareh Decl. ¶¶ 11-19.)

Class counsel expended considerable time and resources in litigating this matter. The work done by the attorneys working on this case includes communicating with Plaintiffs, interviewing the clients in

order to determine the claims in the case, drafting pleadings, propounding written discovery, reviewing documents produced by Defendant, filing an opposition to Defendant's motion to dismiss, analyzing the effect of a class action settlement with overlapping FCRA claims, working up and drafting a mediation brief, preparing for mediation and preparing and reviewing documents for settlement, drafting the initial motion for preliminary approval, renegotiating the settlement, drafting a revised motion for preliminary approval and supplemental briefing and drafting the motion for attorney fees. (Setareh Decl. ¶¶ 12-19.) The "time and labor" criterion weighs in favor of an award of the requested fees.

### 4.       The Complexity of the Legal and Factual Issues

California law recognizes that the litigation's general complexity and "difficulty of the questions involved, and the skill in presenting them" are properly considered.  *Serrano*, 30 Cal. 3d at 49, *accord Wershba v. Apple Computer*, 91 Cal. App. 4th 224, 245 (2001). Complexity of legal issues was not extreme here, though the fee is reasonable, rendering this factor neutral.  (Setareh Decl., ¶ 29.)

### 5.       Class Counsel Assumed Substantial Risk

The novelty and challenges presented by a class action, as well as the corresponding risk that the class members and class counsel will be paid no recovery or fee, is properly evaluated in connection with a fee motion. *See Serrano*, 20 Cal. 3d at 49; *accord Vizcaino*, 290 F.3d at 1050-51 (multiplier applied to lodestar cross-check reflects risk of non-recovery). Ninth Circuit and California state courts regard circumstances in which class counsel's work is wholly contingent as a factor weighing in favor of approving a negotiated fee award that approximates market rates.  *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132-33 (2001).

While Plaintiffs are confident of a favorable outcome, there is substantial risk that legal developments could seriously diminish the value of their claims. Moreover, there is the risk that Plaintiffs would be unable to demonstrate that there was any willful or negligent violation on behalf of Centerplate, as required by the FCRA or relevant state laws, or that Centerplate's background checks challenged by Plaintiffs would not support class certification or class-wide liability.

There are two additional issues that create a risk that the class would not be able to recover. The first issue is the statute of limitations. The FCRA has a two- and five-year statute of limitations with the two-year applying from the date of discovery of the violation, and the five-

year being an absolute bar. 15 U.S.C. § 1681p. A prior class action settlement, *Gibbs*, settled claims for a nationwide class within the two-year statute of limitations. The named plaintiffs and most putative class members are within the five-year statute of limitations, which would apply only if they did not discover their claims within the two-year timeframe. There was a considerable risk that either on summary judgment or at trial, the claims would be deemed time-barred. *See, e.g., Rodriguez v. U.S. Healthworks,* 388 F.Supp.3d 1095 (N.D. Cal. 2019) (granting summary judgment of FCRA claim that was filed within five rather than two years; *Ruiz v. Shamrocks Food Co.,* 2018 WL 5099509 (C.D. Cal. Aug. 22, 2018) (same).

The other issue creating a risk is the question of federal subject matter jurisdiction over a claim where Plaintiffs' statutory privacy rights have been violated but no tangible economic injury has occurred. This Court has held that standing exists where the plaintiff can allege that they were confused by the disclosure form and would not have signed it if they had known that they were authorizing a background check. *Del Toro v. Centene Corp.*, 2020 WL 1643861, at *4 (N.D. Cal. Apr. 2, 2020). However, this is an area where the law is in flux and there is an absence of clear guidance from the U.S. Supreme Court or the Ninth Circuit.

In the event that Plaintiffs were to, at some point, lose on the Article III standing question, the result would be dismissal without prejudice to re-filing in state court. But, in state court, the *Syed* and *Gilberg* decisions referenced above would not be binding on the trial court, thereby making it less likely that Plaintiffs would prevail on the merits. Class Counsel nevertheless faced these risks and an excellent result was obtained.

**6.    The Fee is Reasonable Under the Common Fund Doctrine**

Courts in the Ninth Circuit and California generally use the "percentage method" rather than the lodestar approach when awarding attorneys' fees in a common fund settlement.  *See* 7 Witkin, B.E., CALIFORNIA PROCEDURE (2007 Supp.) §§ 255-261 at 236-241 (describing prevalence of percentage method under California law); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"); *In re Activision Sec. Litig.*, 723 F. Supp. 1373,

1377-78 (N.D. Cal. 1989) (Patel, J.) (endorsing percentage method).  *See generally*, *Serrano*, 20 Cal. 3d at 25; *accord Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).

The lodestar cross-check calculation need entail neither mathematical precision nor bean-counting. *In re Rite Aid Corp. Securities Litigation*, 396 F.3d 294, 306 (C.A.3 (Pa.),2005).

> a)     *Plaintiffs' counsel is requesting the 9ᵗʰ Circuit's benchmark of 25% of the recovery, even though the standard fee award in class actions has, over time, resolved itself as one-third of the recovery in common fund cases.*

According to a leading treatise on class actions, "No general rule can be articulated on what is a reasonable percentage of a common fund.  Usually 50% of the fund is the upper limit on a reasonable fee award from a common fund in order to assure that the fees do not consume a disproportionate part of the recovery obtained for the class, although somewhat larger percentages are not unprecedented."  *See* Conte & Newberg, Newberg on Class Actions (3rd Ed.) § 14.03.  Attorneys' fees that are fifty percent of the fund are typically considered the upper limit, with ***thirty to forty percent commonly awarded in cases where the settlement is relatively small***.  *See id*; *see also, Van Vranken v. Atlantic Richfield Company*, 901 F. Supp. 294 (N.D. Cal. 1995) (stating that most cases where 30-50 percent was awarded involved "smaller" settlement funds of under $10 million).

The proposed 25% fee award is consistent with the average fee award in class actions. Awards of 33 percent or more are common in court-approved class actions litigated and settled by Class Counsel and other firms across the state.  (Setareh Decl., ¶ 32.)  Class counsel has been issued one-third of the settlement amount in fees in a number of cases in the Northern District, including recently in *Burnthorne-Martinez v. Sephora USA, Inc*., 2018 WL 5310833, at *3 (N.D.Cal., 2018), *Garza v. Brinderson Constructors L.P.,* Northern District of California Case No. 5:15-cv-05742-EJD ECF No. 80, and *Fronda v. Staffmark Holdings, Inc.*, 2018 WL 2463101, at *13 (N.D.Cal., 2018). (*Id*.)

The Ninth Circuit has directed that, to determine what constitutes a fair and reasonable percentage of the settlement for purposes of calculating common fund attorneys' fees, the courts should use a "benchmark" percentage of 25% of the total fund.  *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1047 (9th Cir. 2002); *Six Mexican*

*Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).  The percentage can be adjusted upwards where the risks overcome, the benefits obtained and the work necessary to achieve those results supports such an adjustment of the benchmark.  In fact, while the Ninth Circuit identified twenty-five percent as a fee percentage that is presumptively reasonable, the custom and practice in class actions is to award approximately one-third of a fund as a fee award.  *See Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66, n.11 (2008) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around ***one-third*** of the recovery.") (emphasis added). Class Members will have the opportunity to object to the proposed award of fees and costs (or any other aspect of the settlement, if they so choose).

> b) *Plaintiffs seek 25% of the Settlement Fund in fees and costs less than $35,000.*

The compensation sought for Class Counsel is also fair and reasonable.  Here, the gross settlement fund obtained through the efforts of Class Counsel is $750,000.  Class Counsel has agreed to request no more than $187,500 in fees from the gross settlement amount, or 25% of the gross settlement amount. Class Counsel has agreed to request no more than $35,000 in costs. Compared to a lodestar based on current hours and reasonably projected future hours of approximately $123,042.50, the total compensation to Class Counsel is consistent with their lodestar.  The multiplier necessary to reach the total requested compensation is only 1.52, a multiplier below the multipliers of 3 or more that are routinely approved in class settlements.

Plaintiffs have actually incurred costs of $7,383.62.12 in this matter, including mediation fees, actually incurred Westlaw charges, PACER charges, courtcall fees, travel expenses, postage charges and printing charges. Plaintiffs estimate incurring costs of $266.96 for courtesy copy costs and traveling to attend a future hearing. Thus, Plaintiffs request $7,650.58 in costs, which is significantly less than the $35,000 amount provided under the Settlement Agreement.  (Settlement § III. C.2.) (Setareh Decl., ¶ 26.) But perhaps most importantly, the proposed attorneys' fees were disclosed to the Class Members in the Notice issued to Class Members.

### 7.    A Lodestar Analysis Supports the Requested Fee

Despite the widely recognized limitations of the so-called "lodestar" method, California

**PLAINTIFFS' MOTION FOR AN AWARD OF (1) ATTORNEY'S FEES TO CLASS COUNSEL; AND (2) ENHANCEMENT TO PLAINTIFFS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

and federal courts recognize the utility of a lodestar "cross-check." *Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19, 46 (2000).  A lodestar "cross-check" analysis typically happens in three steps.  *Cundiff v. Verizon California*, 167 Cal. App. 4th 718 (2008), *accord Vizcaino*, 290 F.3d at 1047.  First, a trial court must determine a baseline guide or "lodestar" figure based on the time spent and reasonable hourly compensation for each attorney involved in the case.  *Serrano*, at 48.  Second, the court sets a reasonable hourly fee to apply to the time expended, with reference to the prevailing rates in the geographical area in which the action is pending.  *Bihun v. AT&T Information System*, 13 Cal. App. 4th 976, 997 (1993) (16 years ago, affirming a $450 per hour rate for a Southern California litigation attorney).  Finally, a "multiplier" of the base lodestar is set with reference to the factors described in detail in this brief.  Courts often apply a positive multiplier to the lodestar to determine a reasonable fee. *E.g. Vizcaino supra* at 1051 (positive multiplier of 3.65.) Across all jurisdictions, multipliers of up to four are frequently awarded. Newberg, §14.03 at 14.  Often, multipliers of greater than four are warranted.

Looking at the work of attorneys for Plaintiffs in this matter (**and excluding paralegals**), the lodestar calculation for Setareh Law Group is $123,042.50 calculated as follows:

| Attorney | Year Admitted | Hourly Rate | Time | Lodestar |
|---|---|---|---|---|
| Shaun Setareh | 1999 | $850 | 44.75 | $38,037.50 |
| Shaun Setareh (estimate) | 1999 | $850 | 15 | $12,750 |
| Thomas Segal | 2002 | $700 | 60.5 | $42,350 |
| William M. Pao | 2002 | $450 | 10.5 | $4,725 |
| Farrah Grant | 2013 | $450 | 34.85 | $15,682.50 |
| Ashley Batiste | 2017 | $375 | 11 | $4,125 |
| Lilit Ter-Astvatsatryan | 2018 | $350 | 15.35 | $5,372.50 |

(Setareh Decl., ¶ 18.)  The figures for estimated time above reflect the best estimates of Class Counsel, based on their experience and the settlement class size, for the time that will be expended by Class Counsel between the filing of this motion and the hearing of Plaintiffs' Motion for Final Approval.  (*Id*. at 20.)

1    This lodestar figure is in line with the requested fee, requiring only a multiplier of 1.52. (Setareh

2    Decl., ¶ 25.)  This is in the typical multiplier range typically applied by district courts. *See, e.g.,*

3    *Bellinghausen v. Tractor Supply Co.* 306 F.R.D. 245, 264 (N.D. Cal. 2014) (54 percent of lodestar

4    multipliers fall within the 1.5 to 3.0 range, and 83 percent of multipliers fell within the 1.0 to 4.0 range);

5    *Hopkins v. Stryker Sales Corp.*, No. 11-CV-02786- LHK, 2013 WL 496358, at *5 (N.D. Cal. Feb. 6,

6    2013) (multiplier of 2.86); *Di Giacomo v. Plains All Am. Pipeline, Nos.* 99–4137 & 99–4212, 2001 WL

7    34633373, at *10–11 (S.D. Fla. Dec. 19, 2001) (5.3 multiplier); *Maley v. Del Global Techs. Corp.,* 186 F.

8    Supp. 2d 358, 369 (S.D.N.Y. 2002) (4.65 multiplier); *In re Aremissoft Corp. Sec. Litig.*, 210 F.R.D. 109,

9    134–35 (D.N.J. 2002) (4.3 multiplier).

10    The multiplier needed to align the negotiated fee award with the attorney hours expended here is

11    below the multipliers of three or more routinely approved in class actions.  (Setareh Decl., ¶ 25.)

12    Accordingly, the lodestar cross-check affirms that the fee award that has been preliminarily approved does

13    in fact fall easily within the range of reasonableness. (*Id.*)

14    The Ninth Circuit has similarly recognized that the lodestar method "creates incentives for counsel

15    to spend more hours than may be necessary on litigating a case so as to recover a reasonable fee, since the

16    lodestar method does not reward early settlement." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050, n.5

17    (9th Cir. 2002).  As a corollary, a defendant willing to recognize a potential error and settle at an early

18    stage would face the increased risk that an early settlement overture would be rejected.  That did not

19    happen here, in part because a percentage of the fund award encourages efficient litigation.  The Ninth

20    Circuit has thus cautioned that, while a lodestar method can be used as a cross check on the

21    reasonableness of fees based on a percentage of recovery method if a district court in its discretion

22    chooses to do so, a lodestar calculation is not required and it did "not mean to imply that class counsel

23    should necessarily receive a lesser fee for settling a case quickly."  *Id.*

24    The percentage of recovery method "rests on the presumption that persons who obtain benefits of

25    a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense."

26    *Staton*, 327 F.3d 938, 967 (9th Cir. 2003).  This rule, known as the "common fund doctrine," is designed

27    to prevent unjust enrichment by distributing the costs of litigation among those who benefit from the

28    efforts of others.  *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989).

**PLAINTIFFS' MOTION FOR AN AWARD OF (1) ATTORNEY'S FEES TO CLASS COUNSEL; AND (2)
ENHANCEMENT TO PLAINTIFFS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

It is only fair that every class member who benefits from the opportunity to claim a share of the settlement pay his or her pro rata share of attorney's fees, and Plaintiffs' request for fees here means that Class Counsel seek an amount of fees less than the amount Class Counsel would likely receive if they represented each class member individually.  Typical contingent fee contracts of plaintiffs' counsel provide for attorney's fees of about 40% of any recovery obtained for a client.  (Setareh Decl., ¶ 33.)  It would be unfair to compensate Class Counsel here at a substantially lesser rate because they obtained relief for hundreds of class members.  To the contrary, equitable considerations dictate that Class Counsel be rewarded for achieving a settlement that confers benefits among so many people, especially without protracted litigation.  The result achieved by Class Counsel merits an award of attorney's fees equal to 25% of the total recovered value in this case.

### C.     The Enhancement Awards Are Reasonable

Enhancement awards serve to reward the named plaintiffs for the time and effort expended on behalf of the class, and for exposing herself to the significant risks of litigation. "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Ingram v. The Coca-Cola Co*., 200 F.R.D. 685, 694 (N.D. Ga. 2001); *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997).  In *Coca-Cola*, for example, the court approved enhancement awards of $300,000 to each named plaintiff in recognition of the services they provided to the class by responding to discovery, participating in the mediation process and taking the risk of stepping forward on behalf of the class.  *Coca-Cola*, 200 F.R.D. at 694; *see also Van Vranken v. Atl. Richfield Co*., 901 F. Supp. 294, 300 (N.D. Cal. 1995) (approving $50,000 participation award).

Here, Plaintiffs' counsel requests that the Court grant an enhancement award of $2,500 to each plaintiff ($5,000 total). The amount of the enhancement awards requested for Plaintiffs are reasonable given the risks undertaken by Plaintiffs.  Taking the risk of filing a lawsuit against an employer deserves reward, especially in light of the settlement achieved by Plaintiffs.  Additionally, Plaintiffs were actively involved in the litigation and settlement negotiations of this Action.  Plaintiffs worked diligently with counsel to prepare the action, traveled to and attended the mediation and conferred with counsel regarding settlement negotiations. (Setareh Decl., ¶ 54; Declaration of Ronald Martinez ¶ 7; Declaration of

**PLAINTIFFS' MOTION FOR AN AWARD OF (1) ATTORNEY'S FEES TO CLASS COUNSEL; AND (2) ENHANCEMENT TO PLAINTIFFS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Monique Raquedan ¶ 7.) Plaintiffs undertook to prosecute the cases despite the risk of a cost judgment against them, and despite the potential risk that prospective employers would hold it against them. (Declaration of Ronald Martinez ¶¶ 8-9; Declaration of Monique Raquedan ¶¶ 8-9.) The requested enhancement awards are reasonable and should be approved.

### D.    The Settlement Administrator's Expenses Should Be Approved

The charges for the Settlement Administrator Simpluris Inc. are estimated to be $53,610. (Butler Decl. ¶ 14.) Simpluris Inc.'s costs to administer this settlement match the $53,610 amount allocated in the Settlement Agreement and stated in the class notice. (Settlement § III.C.3; Exhibit A to Butler Decl.)  These costs are reasonable and should be approved. (Setareh Decl. ¶ 55.)

## VII.   CONCLUSION

This settlement is fair and reasonable, especially given the claims and the potential defenses to them and to class certification.  Thus, the $750,000 settlement is worthy of final approval.  And because Plaintiffs' counsel were required to expend resources and take risks to obtain that result, fair compensation is also reasonable.  For the reasons set forth herein, Plaintiffs request that the Court award Plaintiffs' counsel $187,500 in fees, which is 25% of the gross settlement and roughly 1.52 times the lodestar of Plaintiffs' counsel and $7,650.58 in costs.

Respectfully submitted,

Dated: July 2, 2020                     **SETAREH LAW GROUP**

By: */S/ Shaun Setareh*
    Shaun Setareh
    Thomas Segal
    Farrah Grant
    Attorneys for Plaintiffs