1   (*Counsel of record on next page*)

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT

8                  NORTHERN DISTRICT OF CALIFORNIA

9

10  MONIQUE RAQUEDAN et al.,                No. 5:18-cv-01139-LHK

11          Plaintiffs,                     **CLASS ACTION**

12      v.                                  **NOTICE OF JOINT MOTION AND JOINT
                                            MOTION FOR FINAL APPROVAL OF
13  VOLUME SERVICES, INC., et al.,          CLASS ACTION SETTLEMENT;
                                            MEMORANDUM IN SUPPORT OF
14                    Defendants.           MOTION**

15                                          Date:        September 17, 2020
                                            Time:        1:30 p.m.
16                                          Courtroom:  8
                                                         280 South First Street, 4th Floor
17                                                       San Jose, CA 95113
                                            Judge:       Hon. Lucy H. Koh
18

19

20

21

22

23

24

25

26

27

28

SHAUN SETAREH (Cal. State Bar No. 204514)
THOMAS SEGAL (Cal. State Bar No. 222791)
FARRAH GRANT (Cal. State Bar No. 293898)
SETAREH LAW GROUP
315 S. Beverly Drive, Suite 315
Beverly Hills, California  90212
Telephone:  (310) 888-7771
Facsimile:  (310) 888-0109
shaun@setarehlaw.com
thomas@setarehlaw.com
farrah@setarehlaw.com

Attorneys for Plaintiffs
Monique Raquedan and Ronald Martinez

JEFFREY D. WOHL (Cal. State Bar No. 096838)
JANA B. FITZGERALD (Cal. State Bar No. 314085)
PAUL HASTINGS LLP
101 California Street, 48th Floor
San Francisco, California  94111
Telephone:      (415) 856-7000
Facsimile:      (415) 856-7100
jeffwohl@paulhastings.com
janafitzgerald@paulhastings.com

Attorneys for Defendants
Volume Services, Inc., and
Centerplate of Delaware, Inc.

# TABLE OF CONTENTS

NOTICE OF JOINT MOTION AND JOINT MOTION ...............................................................1

MEMORANDUM IN SUPPORT OF JOINT MOTION ............................................................1

I.      INTRODUCTION/SUMMARY OF ARGUMENT ........................................................1

II.     BACKGROUND ...............................................................................................................3

        A. Complaint…………………………………………………………………………3

        B. Motion to Dismiss………………………………………………………………...3

        C. Discovery…………………………………………………………………………3

        D. Mediation…………………………………………………………………………4

        E. Renegotiation of Settlement Agreement…………………………………………4

        F. Preliminary Approval……………………………………………………………5

III.    SUMMARY OF APPLICABLE LAW ...........................................................................5

        A.      The FCRA....................................................................................................13

                1)   Plaintiffs' Position ............................................................................6

                        (a) The Standalone Disclosure Cause of Action………………………………..6

                        (b) The Failure to Provide Summary of Rights Cause of Action……………….7

                2)   Centerplate's Position………………………………………………...7

IV.     COMPARABLE SETTLEMENTS ...............................................................................11

V.      THE SETTLEMENT .....................................................................................................213

        A.      The Settlement Class……………………………………………………..13

        B.      Notice Process……………………………………………………………13

        C.      Maximum Settlement Amount and Distributions……………………………14

        D.      Scope of the Class Member Releases………………………………………15

VI.     THE SETTLEMENT SHOULD BE GRANTED FINAL APPROVAL………………………..15

        A. The Best Practical Notice of Settlement Has Been Provided to the Class………………15

        B. Final Approval Standards under Rule 23……………………………………………..16

        C. The Settlement Is Presumptively Fair Because of the Positive Response to the Settlement

# TABLE OF CONTENTS
*(cont'd)*

*Page*

by Class Members, the Significant Investigation Conducted, Class Counsel's Experience, and Arm's-Length Negotiations……………………………………………………………17

    1.  Class Members' Response to the Settlement Is Positive………………………17

    2.   The Settlement Was Reached Only After the Parties Engaged in Substantial Investigation and Analysis of the Legal Issues…………………………………...18

    3.  Counsel's Endorsement of the Settlement Is Entitled to Great Weight………..18

    4.  The Settlement Is Presumed Fair Because the Parties Engaged in Arm's-Length Negotiations……………………………………………………………………18

    5.  The Settlement Provides Substantial, Certain Benefits and Avoids the Risk, Cost, Delay, and Burden of Further Litigation…………………………………...18

        a.  The Value of the Settlement Favors Final Approval………………….18

        b.  Further Litigation Would Involve Risk, Expense, Delay, and Burden on Class Members………………………………………………………..20

VII.       CONCLUSION………………………………………………………………………21

**<u>TABLE OF AUTHORITIES</u>**

*Page*

**<u>Cases</u>**

*Alcala v. Meyer Logistics, Inc.*, 2019 WL 4452961 (C.D. Cal. June 27, 2019)……………………………12

*Ashby v. Farmers Ins. Co. of Or.*, 592 F. Supp. 2d 1307, 1318 (D. Or. 2008)…………………………....7

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979)………………………………………..17,18

*Caput v. NTT Security U.S. Inc.*, 2019 WL 8226078 (C.D. Cal. Dec. 9, 2019)…………………………....12

*Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 850 (N.D. Cal. 2010)………………….......18

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)……………………………………….......19

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992)………………………….....2,17

*Del Toro v. Centene Corp.*, 2020 WL 1643861, at *4 (N.D. Cal. Apr. 2, 2020)…………………………8

*Ebueng v. Credit One Bank, N.A.*, No. EDCV1701991MWFASX, 2018 WL 6010355, at *4 (C.D. Cal. Feb. 20, 2018)……………………………………………………………………………………10

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ), *aff'd* 661 F.2d 939 (9th Cir. 1981) …………………………………………………………………………………………17,18

*Esomonu v. Omnicare, Inc.*, No. 15-CV-02003-HSG, 2019 WL 499750, at *4-5 (N.D. Cal. Feb. 8, 2019)……………………………………………………………………………………………..10,11

*Estes v. L3 Technology, Inc.*, 2019 WL 141564 (S.D. Cal. Jan. 9, 2019)………………………………12

*Feist v. Petco Animal Supplies, Inc.*, 2018 WL 6040801 (S.D. Cal. Nov. 16, 2018)……………………11

*Felix v. WM Bolthouse Farms, Inc.*, 2020 WL 68577 (E.D. Cal. Jan. 27, 2020)………………………..12

*Gabriel Thompson v. Centerplate of Delaware, Inc.*, U.S.D.C., N.D. Cal., No. 5:16-cv-01486-EJD……3

*Gibbs v. Centerplate, Inc., et al.*, No. 8-17-cv-2187-EAK-JSS (M.D. Fla. Jan. 7, 2019)………………11

*Gilberg v. California Check Cashing LLC*, 913 F.3d 1169 (9th Cir. Jan. 29, 2019)…………………6,8,9

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)…………………………………….....19

*Greko v. Diesel U.S.A., Inc.*, No. 10-cv-02576 NC, 2013 WL 1789602, at *5 (N.D. Cal. Apr. 26, 2013)…………………………………………………………………………………………….....20

## TABLE OF AUTHORITIES
*(cont'd)*

*Page*

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)……………………………………16,18

*Hillson v. Kelly Servs*., 2017 WL 279814 (E.D. Mich. Jan. 23, 2017)…………………………………7

*Hughes v. Microsoft Corp.*, No. C98-1646C, 2001 U.S. Dist. LEXIS 5976, at *20 (W.D. Wash. Mar. 26, 2001)……………………………………………………………………………………19

*In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)…………………………………………18

*Joseph L. Schofield, et al. v. Delta Air Lines Inc., et al;* No. 3:18-cv-00382-EMC (N.D. Cal. July 11, 2019)………………………………………………………………………………………10

*Kutzman v. Derrel's Mini Storage, Inc.*, 2020 WL4066768 (E.D. Cal. Jan. 24, 2020)…………………13

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998)……………………………...19

*Maguire v. Vigilant Canine Servs. Int'l, LLC*, 2016 U.S. Dist. Lexis 102093 (E.D. Cal. Aug. 3, 2016)..10

*M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822 (D. Mass. 1987)…….17

*Mandujano v. Basic Vegetable Prods., Inc*., 541 F.2d 832, 837-38 (9th Cir. 1976)……………………17

*Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000)………………………………………...18

*Mora v. Harley-Davidson Credit Corp.*, No. 1:08-CV-01453-BAM, 2014 WL 29743, at *4 (E.D. Cal. Jan. 3, 2014)………………………………………………………………………………….…20

*Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950)………………………………16

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 529 (C.D. Cal. 2004)……………...17

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)…………………..16,17,19

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 852 (1999)…………………………………………………...17

*Ortiz v. Genco, Inc.*, 2019 WL 1780577 (N.D. Cal. Apr. 23, 2019)……………………………………12

*Patton v. Church & Dwight Co, Inc.*, 2019 WL 6357266 (C.D. Cal. Aug. 6, 2019)……………………13

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985)…………………………………………15

*Philsida Gibbs v. Centerplate, Inc. et al.*, U.S.D.C., M.D. Fla., No. 8-17-cv-2187-EAK-JSS…………13

*Raquedan et al. v. Centerplate of Delaware, Inc., et al.*, U.S.D.C., N.D. Cal., No. 17-cv-03828-LHK….4

*Rodriguez v. U.S. Healthworks,* 388 F.Supp.3d 1095 (N.D. Cal. 2019)………………………………..8

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009)……………………………………18

# TABLE OF AUTHORITIES
*(cont'd)*

*Page*

*Rubio v. Capital One Bank*, 613 F.3d 1195, 1200 (9th Cir. 2010)…………………………………………9

*Ruiz v. Shamrocks Food Co.,* 2018 WL 5099509 (C.D. Cal. Aug. 22, 2018)……………………………8

*Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007)…………………………………………………9

*Schofield v. Delta Airlines, Inc.*, 2019 WL 955288 (N.D. Cal. Feb. 27, 2019)…………………………12

*Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 680 (D. Md. 2013)…………………………..7

*Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003)…………………………………………………2

*Syed v. M-I, LLC*, 853 F.3d 492 (9th Cir. 2017)……………………………………………...6,7,9,12

*Tijero v. Aaron Bros., Inc*., 301 F.R.D. 314, 324 (N.D. Cal. 2013)……………………………………19

*Thieriot v. Celtic Ins. Co.*, No. C 10-04462 LB, 2011 WL 1522385, at *5 (N.D. Cal. Apr. 21, 2011)....20

*Torrisi v. Tucson Elec. Power Co*., 8 F.3d 1370, 1375 (9th Cir. 1993)…………………………………17

*Uber FCRA Litig.*, No. 14-cv-05200-EMC, 2018 WL 2047362 (N.D. Cal. May 2, 2018)……………...11

*Walker v. Fred Meyer, Inc.*, No. 18-35592, 2020 WL 1316691 (9th Cir. Mar. 20, 2020)………………..9

## STATUTES

15 U.S.C. § 1681……………………………………………………………………...……..1, 5-10

15 U.S.C. §§ 1681………………………………………………………………………….6, 8, 10

Civil Procedure Rule 23…………………………………………………………………….1, 2, 16

## OTHER AUTHORITIES

California Business and Professions Code section 17200 *et seq*…………………………………………3

*Manual for Complex Litigation (Third)* (Fed. Judicial Center 1995) § 30.42)....……………….……19

**NOTICE OF JOINT MOTION AND JOINT MOTION**

To the Clerk of Court and all interested parties:

PLEASE TAKE NOTICE THAT on Thursday, September 17, 2020 at 1:30 p.m., or as soon thereafter as counsel may be heard, in Courtroom 8 of this Court, located at 280 South First Street, 4th Floor, San Jose, CA 95113, before the Honorable Lucy H. Koh, plaintiffs Monique Raquedan and Ronald Martinez and defendants Volume Services, Inc., and Centerplate of Delaware, Inc., hereby jointly do and will move the Court to grant, pursuant to Rule 23, Federal Rules of Civil Procedure, final approval of the Parties' Amended Settlement (ECF 66-1, Exh. 1), and entry of judgment in accordance with the Settlement.

The Parties make this motion on the grounds that the Settlement, which was reached after arm's-length negotiations by counsel for Plaintiffs and the Class, and counsel for Centerplate, is fair and reasonable, has drawn an overwhelmingly favorable response from the Class (indeed, not a single objection to the Settlement was made), and should be given final approval by the Court for all the reasons set forth in the memorandum in support of the motion.

The motion is based on this notice of motion and motion; the following memorandum in support of the motion; the accompanying Declaration of Mary Butler in support of this motion; the proposed form of Order Granting Final Approval of Class Action Settlement and Entering Final Judgment; all matters of which the Court may take notice; and any oral and documentary evidence presented at the hearing on the motion.

**MEMORANDUM IN SUPPORT OF JOINT MOTION**

**I.     INTRODUCTION/SUMMARY OF ARGUMENT**

The Parties' settlement of this background check class action case (the "Settlement") meets the criteria for final approval.  The Settlement fairly resolves Plaintiffs' claims that the Fair Credit Reporting Act ("FCRA") disclosure form used by defendants Volume Services, Inc., and Centerplate of Delaware, Inc. ("Centerplate"), was unlawful because it improperly contained extraneous language in violation of the statutory mandate that the disclosure be in a document that consists solely of the disclosure.  15 U.S.C. § 1681b(2)(A)(i).  Centerplate denies those allegations and raises a number of defenses.

The Settlement Fund here provides $750,000 for 11,731 class members. This settlement result was achieved after hard-fought litigation, including briefing regarding Centerplate's motion to dismiss, a mediation session and a renegotiation of the settlement amount after the Parties received additional information about the class size not available at the mediation. The case was very risky, considering Centerplate's defenses.

The Settlement is the product of arm's-length negotiations by experienced counsel after significant discovery, and recognition of the strengths and weaknesses of each side's positions. The Settlement has received the overwhelming support of the Class, with not a single objection to the Settlement made.

The Settlement, in the amount of $750,000, readily satisfies the Rule 23 standard of being "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Specifically:

- Class Counsel (who are highly experienced handling complex employment class and collective actions) conducted sufficient discovery to enable them to adequately evaluate the claims and defenses in the action before agreeing to the Settlement. (Declaration of Shaun Setareh ISO Motion for Attorney Fees, ECF 82, ¶¶ 40-41.)

- The Settlement is consistent with the strengths and weaknesses of Plaintiffs' claims given the risk, expense, complexity, and likely duration of further litigation. *See Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992).

- The Class responded overwhelmingly favorably to the Settlement. The Settlement Administrator received only 68 complete and timely opt-out requests out of the 11,663 Class Members who received notice of the Settlement (Declaration of Mary Butler ("Butler Decl."), ¶¶ 10, 12; Exh. B), resulting in an opt-out rate of approximately 0.58%.

No class member will have to make a claim in order to recover; instead, class members will be mailed their share of the settlement directly. No money will revert to Centerplate. Settlement checks that are uncashed after 180 days (and after additional notice to the Class Members) will be paid to the State of California's Unclaimed Property Fund in the name of the Class Member. (ECF 66-1, Exh. 1, § III.E.11).

Thus, the Parties respectfully submit that final approval of the Settlement should be granted and judgment entered accordingly.

## II.    BACKGROUND

At the times relevant to the action, Centerplate provided concession services at sports stadiums and other venues at multiple locations across the nation, including 11 locations in California, such as AT&T Park in San Francisco, Levi's Stadium in Santa Clara and Qualcomm Stadium in San Diego.

### A.    Complaint

Plaintiffs brought this class action on behalf of all employees and applicants in the United States who applied for a job, promotion or job change with Centerplate for which a background check, including a consumer report, was conducted during the applicable limitations period.  Their allegations primarily concern the notice, disclosure or consent form that is included as part of the background checks. Plaintiffs allege that Centerplate failed to comply with the applicable law, including the FCRA as well as its California counterparts, the California Investigative Consumer Reporting Agencies Act and the California Consumer Credit Reporting Agencies Act, and California Business and Professions Code section 17200 *et seq.*

Centerplate denies Plaintiffs' allegations.  Among other things, Centerplate contends that any background check they conducted on any employee or applicant was done in compliance with applicable law; and that a prior class settlement and release, in *Gabriel Thompson v. Centerplate of Delaware, Inc.*, U.S.D.C., N.D. Cal., No. 5:16-cv-01486-EJD, bars a substantial part of Plaintiffs' claims.  Centerplate further denies that, for any purpose other than settling the action, Plaintiffs' claims are appropriate for class treatment.

### B.    Motion to Dismiss

Centerplate filed a motion to dismiss Plaintiffs' complaint on March 20, 2018.  (ECF 9.) Plaintiffs filed their opposition to the motion on May 3, 2018.  (ECF 14.)  Centerplate filed its reply in support of the motion on May 18, 2018.  (ECF 15.)  The Court denied the motion on August 8, 2018. (ECF 23.)

### C.    Discovery

Plaintiffs propounded multiple sets of interrogatories and comprehensive requests for production. Centerplate produced documents in response to discovery.  In the course of the litigation, the Parties

exchanged substantial information, including Centerplate's background check policies and other authorization forms related to employment with Centerplate.  (Setareh Decl., ECF 66-1, ¶¶ 5-8.)

### D.    Mediation

In a wage-and-hour class action involving the same parties, *Raquedan et al. v. Centerplate of Delaware, Inc., et al.*, U.S.D.C., N.D. Cal., No. 17-cv-03828-LHK, the Court ordered the Parties to mediation.  (ECF 31.)  The Parties then agreed, during a meet-and-confer, to mediate this action at the same time.  Despite a full day of mediation with mediator Antonio Piazza, at which the Parties engaged in good-faith, arms' length bargaining, and realistically assessed the strengths and weakness of their positions, the case initially did not settle.  Mediator Piazza persisted, however, and after further discussions with both sides, he eventually made a mediator's proposal, which the Parties accepted. (Setareh Decl., ECF 66-1, ¶¶ 9, 10.)

The Maximum Settlement Amount ("MSA") under the Original Settlement was $450,000.  (ECF 43.)  Plaintiffs' counsel agreed to the $450,000 MSA based on the information provided before the mediation by Centerplate's prior attorneys indicating that the class size was 5,801 people.  (Setareh Decl., 66-1, ¶¶ 11, 35.)

After the MSA was agreed to but before the Settlement Agreement was signed, Centerplate reported that the class had approximately 1,901 class members.  (Declaration of Jeffrey D. Wohl in Support of Joint Motion for Preliminary Approval of Fourth Amended Class Action Settlement ("Wohl Decl."), ECF 66-2, ¶ 5.)

Plaintiffs' counsel was surprised that the class size was 1,901 rather than the 5,801 originally represented.  (Setareh Decl., ECF 66-1 ¶ 36.)  However, they did not see an issue because the effect of a lower class size was to increase the recovery for each class member substantially.  (*Id.*)

### E.    Renegotiation of Settlement Agreement

Following the Court's preliminary approval of the Original Settlement (ECF 58), Centerplate worked diligently to identify third-party vendors to obtain the class data and confirm the class size. (Wohl Decl., ECF 66-2 ¶ 6.)  Due to the unexpected difficulty obtaining records from vendors, this process took some time.  Once a final count was obtained, to Centerplate's surprise, the total number of

1   class members was estimated to be 11,740.  (*Id.*)[1]

2       Based on this change in class size, the Parties asked the Court to continue the preliminary

3   approval hearing so that they could meet and confer about what should be done about the increased class

4   size, and the Court vacated its prior order granting preliminary approval.  (ECF 62.)  The result is the

5   Fourth Amended Settlement, which includes the MSA of $750,000, a two-thirds increase over the prior

6   MSA. (Setareh Decl., ECF 66-1, Exh. 1, § III.A.)

7       **F.**    **Preliminary Approval**

8       The Parties filed a joint motion for preliminary approval of the Fourth Amended Class Action

9   Settlement on October 9, 2019.  (ECF 66.)  The Parties filed a supplement brief in support of the joint

10   motion on March 12, 2020. (ECF 71.)  The hearing on the joint motion was held on March 19, 2020.

11   The Court requested that the Parties provide additional supplemental briefing regarding the joint motion.

12   The Parties provided the information requested by the Court in a second supplemental brief and

13   declarations filed on May 17, 2020.  (ECF 77-79.)

14       In its order granting preliminary approval of the class action settlement, the Court found that the

15   Settlement "falls within the range of possible approval as fair, adequate and reasonable," as it "appears

16   to be the product of arm's-length and informed negotiations" between the Parties, and appears "to treat

17   all Class Members fairly."  (ECF 80 at 5:1-2.)

18   **III.**    **SUMMARY OF APPLICABLE LAW**

19       **A.**    **The FCRA**

20       The FCRA, 15 U.S.C. § 1681b(b), provides requirements for employer documents and mandates

21   specified policies and practices when they use "consumer reports" to assess the qualifications of

22   prospective and current employees.  Pursuant to section 1681b(b) of the FCRA, no person may obtain a

23   consumer report for employment purposes without providing a "clear and conspicuous disclosure ... in a

24   document that consists solely of the disclosure." 15 U.S.C. § 1681b(b)(2)(A)(i).  The person obtaining

25

26   [1]    As Centerplate explained in the second supplemental joint motion for preliminary approval of

27   the Fourth Amended Class Action Settlement on May 17, 2020, after some initial misses, Centerplate ultimately calculated the proposed settlement class size to be 11,731.  (ECF 77; *see also* Declaration of

28   David Winarski in Support of Second Supplement to Joint Motion for Preliminary Approval of Fourth Amended Class Action Settlement ("Winarski Decl."), ECF 78, ¶¶ 7-13.)

the consumer report must also obtain the consumer's written authorization, which can be done as part of the disclosure form.  15 U.S.C. § 1681b(b)(2)(A)(ii).

The Ninth Circuit has held that the required disclosure must be in "a document that consists solely of the disclosure."  *Syed v. M-I, LLC*, 853 F.3d 492 (9th Cir. 2017).  In *Syed*, the FCRA disclosure at issue contained a term purporting to waive any liability of the employer related to the background check.  *Id.* at 498.  The Ninth Circuit held that the inclusion of the liability release was impermissible.

While *Syed* involved a liability release, Plaintiffs contend that its holding is broader.  Plaintiffs contend that the *sole* additional element that may be included with the disclosure is an authorization, "which authorization may be made on the document referred to in clause (i). ..." 15 U.S.C. § 1681b(b)(2)(A)(ii).[2]  Centerplate does not agree with this interpretation of *Syed* or the law.

A plaintiff may be entitled to statutory and punitive damages when a defendant has willfully violated the provisions of the FCRA. 15 U.S.C. §§ 1681n(a)(1)(A); (a)(2).

### (1)   **Plaintiffs' Position**

The complaint here states two separate FCRA causes of action: the Standalone Disclosure Cause of Action and the Failure to Provide Summary of Rights Cause of Action.

### (a)   **The Standalone Disclosure Cause of Action**

This cause of action asserts that the FCRA disclosure form used by Centerplate was unlawful because it improperly contained extraneous language in violation of the statutory mandate that the disclosure be in a document that consists solely of the disclosure.  15 U.S.C. § 1681b(2)(A)(i).

The maximum exposure under this cause of action is $11,731,000.  The FCRA provides for willful damages per violation of a minimum of $100 per violation and a maximum of $1,000 per violation.  15 U.S.C. § 1681n.  Therefore, if the class were to prevail at trial, the minimum recovery would be $1,173,100 and the maximum recovery would be $11,731,000.

The FCRA provides no standard for a jury or Court to decide between an award of $100 and

---

[2]   Plaintiffs also believe that this contention is bolstered by a case decided after the mediation, *Gilberg v. California Check Cashing LLC*, 913 F.3d 1169 (9th Cir. Jan. 29, 2019), which held that inclusion of state law notices in the disclosure form violates the FCRA.  Centerplate does not agree with this interpretation of *Gilberg*.

$1,000 per violation.  In determining the amount of statutory damages to award under the FCRA, courts have looked at "the importance, and hence the value of the rights and protections" involved in the case. *Ashby v. Farmers Ins. Co. of Or.*, 592 F. Supp. 2d 1307, 1318 (D. Or. 2008).  For example, among the conduct prohibited by the FCRA is the inclusion of inaccurate information in consumer reports after the consumer has disputed the information.  15 U.S.C. § 1681i.  It is reasonable to assume that a statutory damages award would be significantly higher where the underlying grievance was that inaccurate, seriously derogatory information is included in a consumer report, even though the consumer demonstrated that it was inaccurate.  Another prohibited act is including arrest records that are more than seven years old in a consumer report.  15 U.S.C. § 1681c(a)(2).  It would be reasonable to assume that a violation of this section would result in a higher statutory damages award than the alleged conduct at issue here, which has resulted in no actual damages.

To Plaintiffs' counsel's knowledge, no FCRA stand-alone disclosure case has ever gone to verdict.  Therefore, an estimate of the likely award is admittedly somewhat speculative.  However, district court decisions have indicated that the minimum of $100 is the proper comparator in standalone disclosure cases.  As a district court explained:

> A review of Plaintiffs' claim indicates that, assuming success, the award at trial would be around $100. While the inclusion of the waiver and disclaimer might have been inconsistent with the language of the stand-alone disclosure requirement, it was arguably consistent with the purpose of that provision. *See* Letter from Cynthia Lamb, Investigator, Div. of Credit Practices, Fed. Trade Comm'n, to Richard Steer, Jones Hirsch Connors & Bull, P.C. (Oct. 21, 1997), 1997 WL 33791227 (F.T.C.), 1 ("The reason for specifying a stand-alone disclosure was so that consumers will not be distracted by additional information at the time the disclosure is given."). ... As such, the violation of the FCRA asserted in this case is only technical in nature, and so the Court would expect class members to receive around $100—or less—should they prevail at trial. *See Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 680 (D. Md. 2013) ("[T]his case involves allegations of technical FCRA violations, which creates the risk that even if a jury awarded the minimum requisite statutory damages, i.e., $100 to each of the individual class members, the court may find remitter/reduction appropriate.").

*Hillson v. Kelly Servs.*, 2017 WL 279814 (E.D. Mich. Jan. 23, 2017) (approving settlement where statutory damages award ranged from $14 to $41 per class member).

As to the risks of this cause of action, Plaintiffs' counsel believes that the claims at issue are very strong on the merits.  Ninth Circuit authority has made it very clear that any extraneous information included on the disclosure form is a violation of the FCRA.  *See Syed v. M-I LLC*, 853 F.3d

492 (9th Cir. 2017); *Gilberg v. Cal. Check Cashing, LLC,* 913 F.3d 1169 (9th Cir. 2019).  The forms at issue here contain liability releases similar to the form at issue in *Syed* and state law rights notices similar to the form at issue in *Gilberg*.

While proof of a willful violation is required for the recovery of statutory damages, *Syed* holds that: "In light of the clear statutory language that the disclosure document must consist 'solely' of the disclosure, a prospective employer's violation of the FCRA is 'willful' when the employer includes terms in addition to the disclosure, such as the liability waiver here ..." *Syed*, *supra* at 496.

However, there are two issues that create a risk that the class would not be able to recover.  The first issue is the statute of limitations.  The FCRA has a two- and five-year statute of limitations with the two-year applying from the date of discovery of the violation, and the five-year being an absolute bar. 15 U.S.C. § 1681p.  A prior class action settlement, *Gibbs*, settled claims for a nationwide class within the two-year statute of limitations.  The named Plaintiffs and most putative class members are within the five-year statute of limitations, which would apply only if they did not discover their claims within the two-year timeframe.  There was a considerable risk that either on summary judgment or at trial, the claims would be deemed time-barred.  *See, e.g., Rodriguez v. U.S. Healthworks,* 388 F.Supp.3d 1095 (N.D. Cal. 2019) (granting summary judgment of FCRA claim that was filed within five rather than two years; *Ruiz v. Shamrocks Food Co.,* 2018 WL 5099509 (C.D. Cal. Aug. 22, 2018) (same).

The other issue creating a risk is the question of federal subject matter jurisdiction over a claim where Plaintiffs' statutory privacy rights have been violated but no tangible economic injury has occurred.  This Court has held that standing exists where the plaintiff can allege that they were confused by the disclosure form and would not have signed it if they had known that they were authorizing a background check.  *Del Toro v. Centene Corp.*, 2020 WL 1643861, at *4 (N.D. Cal. Apr. 2, 2020).  However, this is an area where the law is in flux and there is an absence of clear guidance from the U.S. Supreme Court or the Ninth Circuit.

In the event that Plaintiffs were to, at some point, lose on the Article III standing question, the result would be dismissal without prejudice to re-filing in state court.  But, in state court, the *Syed* and *Gilberg* decisions referenced above would not be binding on the trial court, thereby making it less likely

that Plaintiffs would prevail on the merits.

(b) **The Failure to Provide Summary of Rights Cause of Action**

This cause of action applies where the employer has performed an investigative consumer report on the job applicant.  15 U.S.C. § 1681d.  An "investigative consumer report" is a report which involved personal interviews with neighbors, friends or associates of the consumer or job applicant. 15 U.S.C. § 1681a(e).

Centerplate provided information in discovery indicating that it did provide a Summary of Rights to job applicants that is compliant with the statutory requirements.  (Declaration of Shaun Setareh in Support of Second Supplement to Joint Motion for Preliminary Approval of Fourth Amended Class Action Settlement ECF 79, ¶ 17.)  As such, the exposure on this claim would be zero.

(2) **Centerplate's Position**

Centerplate denies that its disclosures failed to comply with the FCRA.  Centerplate maintains that its disclosures were clear and conspicuous, because they were "reasonably understandable" and "readily noticeable to the consumer."  *Rubio v. Capital One Bank*, 613 F.3d 1195, 1200 (9th Cir. 2010).  Even if its disclosures did not match evolving standards of disclosure enunciated by the courts, including those decided long after many of the disclosures were used,[3] the noncompliance was not willful because it did not arise from a "reckless disregard" of a consumer's rights under the FCRA. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007) (violation of FCRA violation is "willful" if defendant "ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.").

Plaintiffs acknowledge that potential weaknesses of their case include the applicability of the shorter two-year statute of limitations and a lack of standing.

With respect to damages, Plaintiffs never contended that they or any class member sustained actual damages as a result of any alleged deficiency in the disclosures.  Under the FCRA, where there are no actual damages, a plaintiff can sue for "statutory damages" of $100 to $1,000. 15 U.S.C.

---

[3]    Several of these cases were decided in 2017 and after, including *Syed v. M-I, LLC*, 853 F.3d 492 (9th Cir. 2017); *Gilberg v. Cal Check Cashing Stores, LLC*, 913 F.3d 1169 (9th Cir. 2019); *Walker v. Fred Meyer, Inc.*, No. 18-35592, 2020 WL 1316691 (9th Cir. Mar. 20, 2020).

§ 1681n(a)(1)(A).[4]

Here, statutory damages turn on Plaintiffs' ability to prove a willful violation, which Centerplate disputes, along with contesting that its disclosures were noncompliant.  In particular, as Centerplate has explained, background checks were conducted at the local level among Centerplate's approximately 150 units across the country, rather than in a centralized way.  (Winarski Decl., ECF 78, ¶ 4.)  This local and varied control of the process negates the notion that Centerplate, as an entity, acted willfully.

Assuming, *arguendo*, that plaintiffs were able to demonstrate willfulness, based on a class size of 11,731, the statutory damages available on their FCRA cause of action would range from $1,173,100 to $11,731,000.

In light of these circumstances, tThe Amended Settlement in this action—which results in a gross settlement amount of $63.93 per Class Member and a net settlement amount of about $40.20 per Class Member and does not require Class Members to submit claims— is fair and reasonable, and reflects the several weaknesses in Plaintiffs' case, including the difficulty in showing that a class should be certified, that Centerplate's disclosures were noncompliant and, most importantly for these purposes, that if they were noncompliant, Centerplate acted willfully, along with the statute-of-limitations and standing issues.  It compares favorably to other similar FCRA disclosure settlements in the Northern District and the Bay Area. *See, e.g.*, *Joseph L. Schofield, et al. v. Delta Air Lines Inc., et al;* No. 3:18-cv-00382-EMC (N.D. Cal. July 11, 2019) (granting final approval for settlement of FCRA and state law claims where 44,100 class members shared in $2.3 million settlement, receiving a settlement share of approximately $52.15 to each class member); *Esomonu v. Omnicare, Inc*., No. 15-CV-02003-HSG, 2019 WL 499750, at *4-5 (N.D. Cal. Feb. 8, 2019) (granting final approval for settlement of FCRA and

---

[4]   Although courts have entered default judgments on FCRA claims (as well as state law counterparts), Centerplate is not aware of any cases with allegations similar to those here. *See, e.g.*, *Ebueng v. Credit One Bank, N.A*., No. EDCV1701991MWFASX, 2018 WL 6010355, at *4 (C.D. Cal. Feb. 20, 2018) (awarding $1,000 in statutory damages on FCRA claim, because plaintiff alleged that defendant furnished information about him to consumer reporting agency after being notified that information was inaccurate); *Maguire v. Vigilant Canine Servs. Int'l, LLC*, 2016 U.S. Dist. Lexis 102093 (E.D. Cal. Aug. 3, 2016) (granting default judgment of $214,009.51, but where plaintiff made numerous claims besides one under FCRA and state equivalent, including claims for breach of contract, failure to pay timely wages, and unfair business practices).

state law claims where "[e]ach participating class member will receive an estimated $17.31" and observing that, though the figure is "is substantially below the range of potential statutory damages, [it is] commensurate with recoveries approved by other California district courts ... [a]nd as discussed, recovery of statutory damages under the FCRA requires a high threshold showing that the Defendant acted willfully."); *In re Uber FCRA Litig.*, No. 14-cv-05200-EMC, 2018 WL 2047362 (N.D. Cal. May 2, 2018) (granting final approval for settlement of FCRA and state law claims where 1,025,954 class members in two subgroups shared in a gross settlement of $7.5 million, with one group receiving a settlement share of approximately $73.99 per class member, and the other approximately $32.15).[5]

## IV.    COMPARABLE SETTLEMENTS

So that the Court can make a comparison between this settlement and settlements in other stand-alone disclosure cases, the below is a list compiled from Westlaw of FCRA standalone disclosure settlements in California federal district courts going back two years from April 13, 2020.  The prior Centerplate FCRA settlement, *Gibbs*, is also included in this list.  Where the opinion states a net settlement amount as well as a gross settlement amount, both are provided:

- *Gibbs v. Centerplate, Inc., et al.*, No. 8-17-cv-2187-EAK-JSS (M.D. Fla. Jan. 7, 2019). 5,895 settlement class members.  Gross settlement fund of $598,500 for a gross settlement amount per class member of $100.

- *In re Uber FCRA Litigation*, No. 14-cv-05200-EMC, 2018 WL 2047362 (N.D. Cal. May 2, 2018).  1,025,924 settlement class members (601,829 in Court class; 424,125 in ADR class).  Gross settlement amount of $7.5 million.  Approximate net settlement amount of $73.99 per Court class member, and $32.15 per ADR class member.  (*Uber* was a claims-made settlement where the net settlement fund was shared between all who made claims; the per-class member amounts identified by the Court in its order granting final approval of the settlement represent those class members who actually made claims. Had all class members been mailed checks directly, the per class member number would have been

---

[5] *Uber* was a claims-made settlement where the net settlement fund was shared between all who made claims; the per-class member amounts identified by the Court in its order granting final approval of the settlement represent those class members who actually made claims. Had all class members been mailed checks directly, the per class member number would have been $7.31 per class member.  The Amended Settlement here is not claims-made, and all class members are receiving a settlement share.

$7.31 per class member.  The Amended Settlement here is not claims-made, and all class members are receiving a settlement share.)

- *Esomonu v. Omnicare, Inc.*, 2019 WL 499750 (N.D. Cal. Feb. 8, 2019).  Gross settlement amount of $1.3 million for 43,069 class members.  Gross settlement amount of $30.18 per class member, and net settlement amount of $17.31 per class member.

- *Feist v. Petco Animal Supplies, Inc.*, 2018 WL 6040801 (S.D. Cal. Nov. 16, 2018). Gross settlement amount of $1,200,000 for 37,000 class members or gross settlement amount of $32.43 per class member.

- *Felix v. WM Bolthouse Farms, Inc.*, 2020 WL 68577 (E.D. Cal. Jan. 27, 2020). 1245 settlement class members.  Gross settlement amount of $118,275 and net settlement amount of $54,350, meaning that the gross payment per class member was $95 and the net settlement amount was $43.65.

- *Ortiz v. Genco, Inc.*, 2019 WL 1780577 (N.D. Cal. Apr. 23, 2019). FCRA class of 24,425 class members.  Net settlement fund for FCRA class of $1,142,845.15 for net settlement payments of $46.78 per class member.  (The case also involved separate Labor Code class.)

- *Syed v. M-I LLC*, 2019 WL 3564467 (E.D. Cal. Mar. 12, 2019).  4,324 settlement class members.  Net settlement fund of $201,000 for net settlement payments of $46.84 per class member.

- *Caput v. NTT Security U.S. Inc.*, 2019 WL 8226078 (C.D. Cal. Dec. 9, 2019).  672 settlement class members.  Gross settlement amount of $55,000 and net settlement amount of $31,789.68, meaning that the gross settlement amount per class member was $81.84 and the net settlement amount per class member was $47.30.

- *Alcala v. Meyer Logistics, Inc.*, 2019 WL 4452961 (C.D. Cal. June 27, 2019).  FCRA class of 1,950 class members.  Net settlement amount of $100,833.5 for FCRA class for net settlement payment of $51.70 per class member.  (The case also involved separate Labor Code class.)

1          ▪     *Schofield v. Delta Airlines, Inc.*, 2019 WL 955288 (N.D. Cal. Feb. 27, 2019). Gross

2             settlement amount of $2.3 million for 44,000 class members for gross settlement payment

3             of $52.27 per class member.

4          ▪     *Estes v. L3 Technology, Inc.*, 2019 WL 141564 (S.D. Cal. Jan. 9, 2019). FCRA class of

5             764 class members. Net settlement amount for FCRA class of $57,300 for net settlement

6             amount of $75 per class member. (Case also involved separate Labor Code class.)

7          ▪     *Kutzman v. Derrel's Mini Storage, Inc.*, 2020 WL4066768 (E.D. Cal. Jan. 24, 2020). Net

8             settlement payment of $100 per class member to FCRA class of 97 for total net

9             settlement amount of $9,700. (The case also involved separate Labor Code class.)

10          ▪     *Patton v. Church & Dwight Co, Inc.*, 2019 WL 6357266 (C.D. Cal. Aug. 6, 2019). 2,991

11             settlement class members. Gross settlement amount of $300,000 for gross settlement

12             amount of $100.30 per class member.

13       The settlement amount of $750,000 is a good result for the class. In this settlement the gross

14 amount per class member is $63.93 ($750,000/11,731). This compares favorably to other recent FCRA

15 settlements in California federal district court.

16 **V.     THE SETTLEMENT**

17       The following is a summary of the material elements of the Settlement.

18       **A.      The Settlement Class.**

19       Pursuant to the Settlement terms and the Court's order granting preliminary approval, the

20 following class was certified:

21         All employees and applicants in the United States who applied for a job, promotion or
         job change with Centerplate for which a background check, including a consumer report,
22         was conducted at any time from February 22, 2011, to March 31, 2019, excluding those
         individuals who already have resolved all the claims asserted in the Action, whether by
23         settlement or adjudication, including, but not limited to, the settlement in *Philsida Gibbs*
         *v. Centerplate, Inc. et al.*, U.S.D.C., M.D. Fla., No. 8-17-cv-2187-EAK-JSS.
24

25 (ECF 80, ¶ 4.)

26       **B.      Notice Process**

27       The Court directed that the proposed Class Notice be sent to Class Members in the manner

28 specified by the Settlement. (ECF 80.) The Parties implemented the Court's directions in this regard.

1    The Court approved Simpluris, Inc. ("Simpluris") to administer the Settlement.  (ECF 80, ¶ 7.)

2    Mary Butler with Simpluris was designated as case manager for the administration of the Settlement.

3    (Butler Decl., ¶ 1.)

4    On or about April 23, 2020, counsel for the Parties provided Simpluris with text for the Class

5    Notice and the Notice of Proposed Class Action Settlement and Final Approval Hearing.  (Butler Decl.,

6    ¶ 5.)  A draft of the formatted documents, in English and Spanish, was prepared by Simpluris and

7    approved by the Parties.  Attached as Exhibit A to the Butler Declaration is a copy of the final Class

8    Notice and Notice of Proposed class Action Settlement and Final Approval Hearing.  (*Id.*)

9    The mailing addresses contained in the Class Members' Data were processed and updated by

10   Simpluris using the NCOA.  (Butler Decl., ¶ 7.)  In the event that any individual had filed a U.S. Postal

11   Service change of address request, Simpluris used the address listed with the NCOA when mailing Class

12   Notices.  (*Id.*)

13   On June 5, 2020, Simpluris mailed Class Notices to all Class Members via first-class mail.

14   (Butler Decl., ¶ 8.)  The Class Notices informed Class Members that they could submit an election not to

15   participate in the Settlement or objection to the Settlement postmarked by July 20, 2020.  (*Id.*, ¶ 5.)  Of

16   the 11,731 Class Notices mailed, 2,367 were returned as undeliverable.  (*Id.*, ¶ 9.)  Simpluris performed

17   address traces for each of those Class Members without a forwarding address using Accurint.  (*Id.*)  The

18   address trace uses the Class Member's name, last-known address and Social Security number to locate a

19   current address.  (*Id.*)  2,163 Class Notice Packets were re-mailed to either a newfound address, with

20   forwarding addresses provided by the United States Postal Service or at the request of the Class Member

21   (*Id.*)  Ultimately, after additional searches, 208 Class Notice Packets (approximately 1.7% of the total)

22   were undeliverable.  (*Id.*)

23   Simpluris received 71 elections not to participate in the Settlement.  (Butler Decl., ¶ 12.)  Of

24   those, 68 were complete and timely.  (*Id.*)  Of the 71 opt out forms, 3 are deficient for the following

25   reasons: 1 was not dated, 1 was missing a telephone number, printed name, and address, and 1 was

26   missing a telephone number.  (*Id.*)  The 3 deficient Opt Out Forms are attached as Exhibit C to the

27   Declaration of Mary Butler.  Simpluris reached out to the 3 individuals who submitted the deficient opt

28   out forms to give them an opportunity to cure, but they did not respond.  (*Id.*)

NTC OF JT MTN, JT MTN FOR FINAL APPROVAL
                                                         OF CLASS SETTLEMENT; MEMO ISO
                                                         U.S.D.C., N.D. Cal., No. 5:18-cv-01139-LHK

1    Simpluris did not receive any objections to the Settlement.  (Butler Decl., ¶ 13.)

2    **C.    Maximum Settlement Amount and Distributions.**

3    Centerplate will pay an MSA of $750,000.00.  (ECF 66-1, Exh. 1, § III.A.)  The MSA covers

4    (1) class representative payments of $5,000 to Plaintiffs ($2,500 each), in compensation for having

5    initiated and prosecuted the action and undertaken the risk of payment of costs in the event this matter

6    had not been successfully concluded; (2) Settlement Shares paid to Class Members; (3) the Class

7    Counsel Fees and Expenses Payment of not more than $187,500 (25% of the MSA), with costs not to

8    exceed $35,000, to compensate Plaintiffs' counsel for all work performed thus far and all work

9    remaining to be performed in documenting and administrating the Amended Settlement and securing

10   Court approval[6]; (4) the fees and expenses of the settlement administrator, not to exceed $53,610; and

11   (6) any other fees or expenses (other than Class Counsel Fees and Expenses Payment) incurred in

12   implementing the terms and conditions of the settlement agreement and securing the judgment pursuant

13   to that agreement.  (*Id.*, § III.A.)  After all court-approved deductions from the MSA, it is estimated

14   that a Net Settlement Amount of $468,890 will be available to pay the Settlement Shares of all Class

15   Members.  (Butler Decl. ¶ 10.)  If the Court awards all the requested amounts, each Class Member's

16   Settlement Share is estimated to be $40.20.  (*Id*. ¶ 11.)

17   The entire MSA will be paid out; none of it will revert to Centerplate. Settlement checks that are

18   uncashed after 180 days (and after additional notice to the Class Members) will be paid to the State of

19   California's Unclaimed Property Fund in the name of the Class Member.  (ECF 66-1, Exh. 1,

20   § III.E.11.)

21   **D.    Scope of the Class Member Releases.**

22   Class members will release all claims against Centerplate and its related persons and entities that

23   were raised or could have been raised in the action based on the factual allegations made in the action or

24   otherwise based on or related to the allegations that Centerplate conducted background checks, including

25   a consumer report, in connection with application for a job, promotion or job change, without complying

26   with applicable law. (ECF 66-1, Exh. 1, § III.F.2.)

---

27   [6]    In their motion for attorney fees and costs, Plaintiffs request $7,650.58 in costs, which is
28   significantly less than the $35,000 amount provided under the Settlement Agreement.  (ECF 66-1, Exh.
     1, § III. C.2; Declaration of Shaun Setareh ISO Motion for Attorney Fees, ECF No. 82, ¶ 26.)

1

## VI.   THE SETTLEMENT SHOULD BE GRANTED FINAL APPROVAL

2

### A.   The Best Practical Notice of Settlement Has Been Provided to the Class.

3    The mailing of the Class Notice to Class Members, and the general administration of the notice

4    process as described above, meets the requirements for the "best practicable" notice in this case as is

5    necessary to protect the due process rights of Class Members.  *Phillips Petroleum Co. v. Shutts*, 472

6    U.S. 797, 811-12 (1985) (provision of "best practicable" notice with description of litigation and

7    explanation of opt-out rights satisfies due process).  Indeed, individual Class Notice was served on each

8    Class Member at his or her most recent address, after cross-referencing each address with U.S. Post

9    Office records; Class Members also were directed to a dedicated website that included the Notice of

10   Proposed Class Action Settlement and Final Approval Hearing and other Settlement-related information.

11   Moreover, both the Class Notice and Notice of Proposed Class Action Settlement and Final Approval

12   Hearing informed Class Members of the pendency of the action and their right not to participate in the

13   Settlement.  *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (best practicable

14   notice is notice that is "reasonably calculated, under all the circumstances, to apprise interested parties

15   of the pendency of the action and afford them an opportunity to present their objections").  Therefore,

16   the Court may proceed to determine the fairness and adequacy of the Settlement and order its approval,

17   secure in the knowledge that all absent Class Members have been given the opportunity to participate

18   fully in the opt-out, comment, and approval process.

19

### B.   Final Approval Standards under Rule 23.

20   "[V]oluntary conciliation and settlement are the preferred means of dispute resolution,"

21   especially in complex class actions.  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th

22   Cir. 1982).  Class action lawsuits readily lend themselves to compromise because of the difficulties of

23   proof, the uncertainties of the outcome, and the typical length of the litigation.  *Class Plaintiffs*, 955 F.2d

24   at 1276 (noting that "strong judicial policy [...] favors settlements, particularly where complex class

25   action litigation is concerned").  On a motion for final approval of a class action settlement under

26   Federal Rule of Civil Procedure 23(e), a court's inquiry is whether the settlement is "fair, adequate and

27   reasonable," recognizing that "'it is the settlement taken as a whole, rather than the individual

28   component parts, that must be examined for overall fairness.'"  *Staton*, 327 F.3d at 952 (quoting *Hanlon*

1   *v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

2        When determining whether to grant final approval, "the court's intrusion upon what is otherwise

3   a private consensual agreement negotiated between the Parties to a lawsuit must be limited to the extent

4   necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching

5   by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair,

6   reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625.  The court should

7   balance "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further

8   litigation; the risk of maintaining class action status throughout the trial; the amount offered in

9   settlement; the extent of discovery completed, and the stage of the proceedings; the experience and

10  views of counsel [...] and the reaction of the class members to the proposed settlement." *Id.*; *see also*

11  *Class Plaintiffs*, 955 F.2d at 1291 (quoting *Officers for Justice*, 688 F.2d at 625); *accord Torrisi v.*

12  *Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).  "The recommendations of plaintiffs'

13  counsel should be given a presumption of reasonableness."  *Boyd v. Bechtel Corp.,* 485 F. Supp. 610,

14  622 (N.D. Cal. 1979); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd* 661

15  F.2d 939 (9th Cir. 1981) ("[T]he fact that experienced counsel involved in the case approved the

16  settlement after hard-fought negotiations is entitled to considerable weight.").

17      **C.**    **The Settlement Is Presumptively Fair Because of the Positive Response to the**
      **Settlement by Class Members, the Significant Investigation Conducted, Class**

18              **Counsel's Experience, and Arm's-Length Negotiations.**

19       The Court should begin its analysis of this Settlement with a presumption that it is fair and

20  should be approved, due to (1) the fact that not a single Class Member objected to the Settlement; (2) the

21  meaningful discovery conducted; (3) Class Counsel's experience in this kind of litigation; and (4) the

22  arm's-length negotiations that took place before an experienced mediator.  *See Ortiz v. Fibreboard*

23  *Corp.*, 527 U.S. 815, 852 (1999) (holding that arm's-length negotiations conducted by competent

24  counsel after appropriate discovery are *prima facie* evidence that the settlement is fair and reasonable);

25  *M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822 (D. Mass. 1987)

26  ("Where, as here, a proposed class settlement has been reached after meaningful discovery, after arm's-

27  length negotiation, conducted by capable counsel, it is presumptively fair.").  These factors are well

28  satisfied here.

**1.      Class Members' Response to the Settlement Is Positive.**

Out of 11,731 Class Members, not a single Class Member objected to the Settlement.  *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 529 (C.D. Cal. 2004) (holding that in "the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action[s] are favorable to the class members."); *see also Mandujano v. Basic Vegetable Prods., Inc*., 541 F.2d 832, 837-38 (9th Cir. 1976).

Moreover, only 68 Class Members—0.58% of the total Class—opted out of the Settlement.

This overwhelmingly positive reaction by the Class strongly supports final approval of the Settlement.  *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 850 (N.D. Cal. 2010) (finding opt-out rate of 16 of 329 class members (approximately 4.8%) low, and explaining that where exclusions and opt-outs are low, there is presumption of favorable class reaction).

**2.      The Settlement Was Reached Only After the Parties Engaged in Substantial Investigation and Analysis of the Legal Issues.**

The Parties engaged in substantial investigation and analysis of the legal issues in reaching a Settlement in this case.  *Cf. In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (emphasizing that touchstone of analysis is whether "the Parties have sufficient information to make an informed decision about settlement," including formal and informal discovery) (citation omitted).  Before any mediation, Class Counsel propounded written discovery and reviewed documents produced by Centerplate.  (Declaration of Shaun Setareh ISO Motion for Attorney Fees, ECF 82, ¶¶ 40-41.)  The Parties also spent significant time preparing for, and taking part, in mediation.

**3.      Counsel's Endorsement of the Settlement Is Entitled to Great Weight.**

The judgment of experienced counsel regarding the settlement is entitled to great weight.  *Hanlon*, 150 F.3d at 1026; *Boyd*, 485 F. Supp. at 622; *Ellis*, 87 F.R.D. at 18.  Reliance on such recommendations is premised on the fact that "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation."  *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (*quoting In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)).

Here, counsel for both Parties endorse the Settlement as fair, adequate, and reasonable.

Plaintiffs' Counsel and Centerplate's Counsel each have extensive experience in prosecuting and litigating class action wage-and-hour suits like this one.  (Declaration of Shaun Setareh ISO Motion for Attorney Fees, ECF 82, ¶¶ 4-12.)   The fact that qualified and well-informed counsel endorse the Settlement as being fair, reasonable, and adequate heavily favors this Court's approval of the Settlement.

### 4.   The Settlement Is Presumed Fair Because the Parties Engaged in Arm's-Length Negotiations.

As set forth above, a settlement is presumed fair if it was negotiated at arm's length by experienced, competent counsel equipped with enough information to act intelligently.  *See Tijero v. Aaron Bros., Inc.*, 301 F.R.D. 314, 324 (N.D. Cal. 2013) (where settlement reached after parties participated in private mediation, settlement was appropriate for final approval); *Hughes v. Microsoft Corp.*, No. C98-1646C, 2001 U.S. Dist. LEXIS 5976, at *20 (W.D. Wash. Mar. 26, 2001) ("A presumption of correctness is said to attach to a class settlement reached in arm's-length negotiations between experienced capable counsel after meaningful discovery.") (citing *Manual for Complex Litigation (Third)* (Fed. Judicial Center 1995) § 30.42).

The Parties engaged in a full-day mediation. Before the mediation, the Parties submitted mediation briefing, including detailed data analyses and assessments, and substantial evidence.

### 5.   The Settlement Provides Substantial, Certain Benefits and Avoids the Risk, Cost, Delay, and Burden of Further Litigation.

#### a.   The Value of the Settlement Favors Final Approval.

The Settlement is substantial, especially as its adequacy must be judged as "a yielding of absolutes and an abandoning of highest hopes [...]  Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the Parties each give up something they might have won had they proceeded with litigation[.]"  *Officers for Justice*, 688 F.2d at 624 (citations omitted).  Accordingly, the "settlement is not to be judged against a […] speculative measure of what *might* have been achieved."  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (emphasis in original, citation omitted).  In the end, "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion."  *Hanlon*, 150 F.3d at 1027.  In

addition, the Court should consider that the Settlement provides for payment to the Class now, rather than a speculative payment many years down the road.  *See generally City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

Here, the value of the Settlement—$750,000—is a fair and reasonable result, especially in light of the defenses raised by Centerplate.  (Declaration of Shaun Setareh ISO Motion for Attorney Fees, ECF 82, ¶¶ 52-53.  Moreover, the Settlement Share amount represents a reasonable, meaningful recovery for Class Members.  Accordingly, the $750,000 MSA is well within the range of reasonableness.

> **b.**   **Further Litigation Would Involve Risk, Expense, Delay, and Burden on Class Members.**

When a party continues to deny liability, there is an inherent risk in continuing litigation.  In *Thieriot v. Celtic Ins. Co.*, No. C 10-04462 LB, 2011 WL 1522385, at *5 (N.D. Cal. Apr. 21, 2011), the district court approved a settlement agreement in which the defendant specifically denied liability, noting that such denial of liability illustrated the risk to continued litigation.  *See also Mora v. Harley-Davidson Credit Corp.*, No. 1:08-CV-01453-BAM, 2014 WL 29743, at *4 (E.D. Cal. Jan. 3, 2014) (granting final approval to settlement agreement where defendant denied any liability); *Cf. Greko v. Diesel U.S.A., Inc.*, No. 10-cv-02576 NC, 2013 WL 1789602, at *5 (N.D. Cal. Apr. 26, 2013) ("[E]ven with a strong case, further litigation would be time-consuming and expensive …").

Similarly here, Centerplate continues to contest liability and the propriety of class certification.  Centerplate's denial of liability, paired with its diligent opposition to class treatment, spotlight the risks of continued litigation and favor granting final approval to the proposed Settlement.  (Declaration of Shaun Setareh ISO Motion for Attorney Fees, ECF 82, ¶¶ 35-38, 45-51.)

Moreover, this class action involves intricate legal and factual questions.  Litigating these complex claims would require substantial additional discovery and pre-trial motions (including motions for certification and decertification), as well as the consideration, preparation, and presentation of voluminous documentary and testimonial evidence. (Declaration of Shaun Setareh ISO Motion for Attorney Fees, ECF 82, ¶¶ 44, 50.)  Even if the Court granted class certification, prevailing at trial

1    would require further risky litigation.  Centerplate would certainly appeal any verdict favorable to the

2    class, resulting in further delay and the risk that a favorable verdict would be overturned on appeal.  As a

3    result, payments to Class Members, if any, would likely occur only after several years of delay.  (*Id.*)  In

4    contrast, the Settlement will yield a prompt, certain, and substantial recovery for the Class Members.

5    Such a result benefits the Parties and the court system.

6    **VII.    CONCLUSION**

7    For the foregoing reasons, the Parties respectfully request that the Court grant final approval of

8    the Settlement.

9    Dated:  August 13, 2020.                    SHAUN SETAREH
                                                  THOMAS SEGAL
10                                                FARRAH GRANT
                                                  SETAREH LAW GROUP
11

12                                                By:  _____ /s/ *Shaun Setareh*_____
                                                      Attorneys for Plaintiffs
13                                                    Monique Raquedan and
                                                      Ronald Martinez
14

15   Dated:  August 13, 2020.                    JEFFREY D. WOHL
                                                  JANA B. FITZGERALD
16                                                PAUL HASTINGS LLP

17

18                                                By:  _____ /s/ *Jeffrey D. Wohl*_____
                                                      Attorneys for Defendants Volume Services, Inc., and
19                                                    Centerplate of Delaware, Inc.

20

21

22

23

24

25

26

27

28